IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| JENNIFER BATT, MADHU CHANDNANI, KAREN DAVISON, and WILLARD JENKINS, Individually and on Behalf of All Others Similarly Situated, on Behalf of the 3M VOLUNTARY INVESTMENT PLAN AND EMPLOYEE STOCK OWNERSHIP PLAN, and on Behalf of the 3M SAVINGS PLAN, | Case No. |
|          Plaintiffs,<br><br>v.<br><br>3M COMPANY; BOARD OF DIRECTORS OF 3M, and its members; 3M BENEFITS FUND INVESTMENT COMMITTEE, and its members; and 3M INVESTMENT MANAGEMENT CORPORATION,<br><br>         Defendants. | **CLASS ACTION COMPLAINT** |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

NATURE AND SUMMARY OF THE ACTION ..................................................1

JURISDICTION AND VENUE .............................................................................5

THE PARTIES.........................................................................................................5

    I.    Plaintiffs .................................................................................................5

    II.    Defendants ..............................................................................................7

SUBSTANTIVE ALLEGATIONS ........................................................................8

    I.    The Plans ................................................................................................8

    II.    Target Date Funds ...............................................................................10

    III.    Defendants Breached Their Fiduciary Duty of Prudence ....................12

        A.    Fiduciary Duties Under ERISA ...............................................12

            1.    Fiduciary Duties of Prudence and Loyalty ..................12

            2.    Fiduciary Liability Under ERISA .................................14

            3.    Co-fiduciary Liability ....................................................14

        B.    The 3M TDF Series and Meaningful Benchmarks to Compare Their Investment Performance....................................................15

            1.    The 3M TDF Series ........................................................15

            2.    Meaningful Benchmarks to Compare the Investment Performance of the 3M TDF Series ...............................17

        C.    The 3M TDF Series Consistently Underperformed as Compared to the Meaningful Benchmarks ....................................................24

            1.    The 3M 2025 Vintage ....................................................24

            2.    The 3M 2030 Vintage ....................................................27

            3.    The 3M 2035 Vintage ....................................................30

            4.    The 3M 2040 Vintage ....................................................33

            5.    The 3M 2045 Vintage ....................................................36

            6.    The 3M 2050 Vintage ....................................................39

            7.    The 3M 2055 Vintage ....................................................42

        D.    Defendants Violated Their ERISA Fiduciary Duties by Failing to Timely Remove the Consistently Underperforming 3M TDF Series........44

CLASS ACTION ALLEGATIONS ......................................................................47

CAUSES OF ACTION ..........................................................................................50

    COUNT I ..............................................................................................50

    COUNT II .............................................................................................53

PRAYER FOR RELIEF ........................................................................................55

## INTRODUCTION

Plaintiffs Jennifer Batt, Madhu Chandnani, Karen Davison, and Willard Jenkins ("Plaintiffs"), individually, on behalf of the 3M Voluntary Investment Plan and Employee Stock Ownership Plan (the "3M VIP Plan") and the 3M Savings Plan (collectively, the "Plans"), and as representatives of a class of participants and beneficiaries of the Plans, by and through their counsel, bring this Complaint for breach of fiduciary duties and other violations of the Employee Retirement Income Security act of 1974 ("ERISA") against defendants 3M Company ("3M"), the Board of Directors of 3M and its members, the 3M Benefits Fund Investment Committee and its members ("3MIC" or the "Investment Committee"), and the 3M Investment Management Corporation ("3M IMCO") (collectively, the "Defendants").

Plaintiffs believe that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Many of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## NATURE AND SUMMARY OF THE ACTION

1. This is a class action on behalf of the Plans, and a class of participants and beneficiaries of the Plans, against fiduciaries of the Plans arising from their breaches of fiduciary duties under ERISA.

2. ERISA requires fiduciaries of retirement plans to closely monitor investments, remove imprudent investments, and to make investment decisions based solely in the interests of participants in retirement plans. *See* 29 U.S.C § 1104(a)(1). Courts

have described these duties of loyalty and prudence "as the 'highest known to the law.'" *Snyder v. UnitedHealth Grp., Inc.*, No. 21-1049 (JRT/DJF), 2024 U.S. Dist. LEXIS 42952, at *17 (D. Minn. Mar. 12, 2024) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595, 598 (8th Cir. 2009)).

3.      Here, Plaintiffs bring this action under 29 U.S.C. § 1132(a)(2), alleging that Defendants—the Plans' fiduciaries—breached their duties by: (1) retaining underperforming investment options—seven "vintages" of the 3M LifePath Target-Date Fund Series (the "3M TDF Series")[1]—for the Plans between 2019 and 2024, despite more suitable target date funds ("TDFs") having been readily available; and (2) failing to monitor the fiduciaries responsible for administration and management of the Plans' actions in retaining the imprudent 3M TDF Series investments for the Plans.

4.      Defendants' breaches and imprudent investment decisions have resulted in the loss of over one hundred million dollars of assets for the Plans and their participants.

---

[1]      The 3M LifePath Target-Date Fund Series consists of several "vintages" divided into five-year increments representing different "target dates" of anticipated retirement dates ranging from 2025 to 2065, as well as a "3M LifePath Retirement Portfolio" which is designed for individuals who are retired and already withdrawing savings from their retirement plans. This action concerns seven of the available vintages; specifically, the 3M 2025, 2030, 2035, 2040, 2045, 2050, and 2055 TDF vintages. Unless otherwise specified, the term "3M TDF Series" as used herein refers to these seven specific vintages. Plaintiffs exclude the 2060 and 2065 vintages as the funds are too new to include. As to the "retirement" vintage, Plaintiffs have excluded that vintage as it represents a mix of older funds such that there are no straightforward comparisons available to serve as "meaningful benchmarks" as would be necessary to analyze its performance.

5.     The Plans are defined contribution retirement plans under 29 U.S.C. § 1002(34) and are sponsored by 3M.  As evidenced by their tax-deferred qualities, the primary purpose of the Plans is to allow participants to save for retirement.

6.     Defendant 3M is the "sponsor" under 29 U.S.C. § 1002(16)(B) and a "named fiduciary" of the Plans.  3M acts through a Board of Directors.

7.     The Investment Committee is one of the Plans' fiduciaries that designates the investment options available under the Plans.  As part of that process, the Investment Committee selects a default option in which a participant's contributions are invested automatically unless the participant affirmatively elects to invest in a different investment option.

8.     The Investment Committee has delegated day-to-day administration of 3M's employee benefit plans to 3M's "Director, Global Benefits (or his or her successor)" and 3M's human resources department more generally.  The Investment Committee is a body appointed by 3M, and, as a body, performs certain designated fiduciary administrative functions under the Plans.  The Investment Committee is also an "investment advisor" of the 3M TDF Series.

9.     Defendant 3M IMCO is an investment advisor for the Plans selected by the other Defendants to provide investment advice to the Plans' participants on how the Plans' assets should be invested and managed.  It is an "investment manager" of the Plans as defined by 29 U.S.C. § 1002(38) and a functional fiduciary of the Plans pursuant to 29 U.S.C. § 1002(21)(A).

10.    When designating the different investment options for inclusion in the Plans, Defendants were required to independently investigate and regularly monitor each of the Plans' investment options with the care and skill of a prudent investor.  29 U.S.C. § 1104(a)(1)(B).

11.    Rather than acting diligently and prudently, Defendants breached their fiduciary duties by retaining the 3M TDF Series as investment options for the Plans at the beginning of the "Class Period" (August 7, 2019 to the date of judgment) despite the 3M TDF Series having underperformed its peer benchmarks on a trailing-three-years basis for at least eight consecutive years (2016-2023), a trailing-five-years basis for at least six years (2018-2023), a trailing-ten-years basis by 2023, and on a cumulative basis.  The 3M TDF Series suffered from ongoing quantitative deficiencies resulting in massive underperformance relative to that of well-established, prudently managed, comparable target date funds that defendants could have selected for the Plans.

12.    Based on Defendants' conduct, Plaintiffs bring this action on behalf of the Plans, and as representatives of a class of participants and beneficiaries of the Plans, asserting claims for a breach of the fiduciary duty of prudence (Count One), and for failure to monitor fiduciaries (Count Two).  In connection with these claims, Plaintiffs seek to recover all losses to the Plans resulting from Defendants' fiduciary breaches, all profits earned by Defendants in connection with Defendants' breaches, and other appropriate relief.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e)(1) because this action arises under 29 U.S.C. §1132(a).

14.    This district is the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because it is the district where the Plans are administered, at least one of the alleged breaches took place, and where Defendant 3M is headquartered.

## THE PARTIES

### I.    Plaintiffs

15.    Plaintiffs bring this suit individually, on behalf of the Plans, and on behalf of a class of participants and beneficiaries of the Plans affected by the challenged conduct of Defendants.

16.    Plaintiff Jennifer Batt was employed as a Product Taxonomy Architect with 3M from 2017 through 2018.  Batt was a participant in the Plan, as defined in 29 U.S.C. §1002(7), during the Class Period.  Batt suffered individual injury by investing in the Plans' poorly performing 3M TDF Series.  Batt was invested in the 3M 2045 TDF.

17.    Plaintiff Madhu Chandnani was employed as an Integrated Marketer with 3M from 2018 through 2024, and as Activation Marketer with 3M from 2024 through 2025. Chandnani was a participant in the Plan, as defined in 29 U.S.C. §1002(7), during the Class Period.  Chandnani suffered individual injury by investing in the Plan's poorly performing 3M TDF Series.  Chandnani is invested in the 3M 2050 and 2055 TDFs.

18.     Plaintiff Karen Davison was employed in Product Specialization with 3M from 2016 through 2021.  Davison was a participant in the Plan, as defined in 29 U.S.C. §1002(7), during the Class Period.  Davison suffered individual injury by investing in the Plan's poorly performing 3M TDF Series.  Davison is invested in the 3M 2040, 2045, and 2050 TDFs.

19.     Plaintiff Willard Jenkins was a National Director Key Account with 3M from 2020 through 2022.  Jenkins was a participant in the Plan, as defined in 29 U.S.C. §1002(7), during the Class Period.  Jenkins suffered individual injury by investing in the Plan's poorly performing 3M TDF Series.  Jenkins is invested in the 3M 2030 TDF.

20.     As detailed *infra*, the Plans have suffered millions of dollars in losses resulting from the fiduciary breaches at issue and remain vulnerable to continuing harm.  As participants in the Plans, Plaintiffs have standing to bring claims in a representative capacity on behalf of the Plans pursuant to 29 U.S.C. §1132(a)(2), and on behalf of all holders of funds in the 3M TDF Series because they suffered actual injuries to their accounts in which they held a number of vintages from the 3M TDF Series during the Class Period and the alleged harms to holders of the other funds included in the 3M TDF Series can be traced to the same challenged conduct: the participants in the Plans suffered financial harm as a result of the Plans' imprudent investment options and the process Defendants used to monitor and retain the 3M TDF Series.  This singular conduct with respect to the Plans harmed each of the holders of the specific vintages included in the 3M TDF Series at issue in this action.

## II.    Defendants

21.    Defendant 3M Company, a Delaware corporation headquartered in Saint Paul, Minnesota, is a multinational conglomerate operating in various sectors, including industry, worker safety and consumer goods.  Some of its products include Post-it notes, Scotch tape, as well as a wide range of adhesives, abrasives and film.  Founded in 1902 in Minnesota, 3M continues to make the Fortune 500 list and generated over $32 billion in sales in 2023.  3M is the "sponsor" of the Plans and "named fiduciary" within the meaning of 29 U.S.C. § 1002(16)(B) and 29 U.S.C. § 1102(a).  3M acts through a Board of Directors.

22.    3M, through its Director, Global Benefits and human resources department, is also the "plan administrator," with general oversight responsibilities for the Plans.  As plan administrator, 3M is a fiduciary. *See* 29 C.F.R. § 2509.75-8 at D-3.  It is also a "named fiduciary" pursuant to 29 U.S.C. § 1102(a). Additionally, as the "plan sponsor," "plan administrator," and the entity responsible for appointing and removing members of the 3MIC, 3M had knowledge of the fiduciary breaches committed by the other Defendants, and did not make reasonable efforts under the circumstances to remedy those breaches.

23.    Defendant Board of Directors of 3M is a fiduciary of the Plans responsible for appointing and monitoring the Plans' fiduciaries.

24.    Defendant 3M Benefits Fund Investment Committee is responsible for designating the investment options available under the Plans.  Current and former members of the Investment Committee are fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A) because they exercised discretionary authority and/or discretionary control respecting management of the Plans.  The 3MIC has delegated day-to-day administration of the Plans

to 3M's Director, Global Benefits and 3M's human resources department. The Investment Committee is also listed as an "investment advisor" in the plan documents for each vintage in the 3M TDF Series. Accordingly, 3MIC is also an "investment manager" of the Plans as defined by 29 U.S.C. § 1002(38) and a functional fiduciary of the Plans pursuant to 29 U.S.C. § 1002(21)(A).

25. Defendant 3M Investment Management Corporation is a Delaware Co. registered as an investment advisor based in Saint Paul, Minnesota. 3M IMCO is the $25 billion investment fiduciary for 3M's retirement plans on a global basis. 3M IMCO, a wholly owned subsidiary of Defendant 3M, is an investment advisor selected by the other 3M Defendants to provide investment advice to the Plans' participants on how the Plans' assets should be invested and managed.[2] 3M IMCO receives substantial direct and indirect compensation for providing investment advice and management services to the Plans' participants. 3M IMCO is an "investment manager" of the Plans as defined by 29 U.S.C. § 1002(38) and a functional fiduciary of the Plans pursuant to 29 U.S.C. § 1002(21)(A).

## SUBSTANTIVE ALLEGATIONS

I.   **The Plans**

31. The Plans are defined contribution plans subject to the provisions of ERISA.

32. A "defined contribution" plan is a retirement plan in which an individual account is set up for each participant with benefits based upon the amount contributed to

---

[2]   *See, e.g.*, 3M's Form 11-K for the year ended December 31, 2016, at 22 ("The asset allocation of each fund is by the investment advisor with input from 3M Investment Management Corporation.").

the participant's account (through employee contributions and, if applicable, employer contributions), and "any income, expenses, gains and losses."  29 U.S.C. § 1002(34).

33.     The Plans are established and maintained under written documents as required by 29 U.S.C. § 1102(a).

34.     The Plans pay expenses from the Plans' assets, and administrative expenses are paid by participants as a reduction of investment income.

35.     Defendant 3M is the "sponsor" of the Plans within the meaning of 29 U.S.C. § 1002(16)(B).

36.     Defendants—through 3M's human resource department, the Investment Committee, or 3M IMCO—determined the appropriateness of the Plans' investment offerings and monitored investment performance.

37.     Under the Plans, newly hired 3M employees are "automatically enrolled" in the 3M VIP Plan three months after their hire date.

38.     The Plans are participant-directed defined contribution plans, meaning participants may direct the investment of their contributions into various investment options offered by the Plans.

39.     The Plans provides for retirement income for approximately 58,000 participants, comprised of 3M employees, former employees, and their beneficiaries.

40.     At the choice and discretion of Defendants, various investment options were made available to the Plans' participants.

41.     Poor investment performance can significantly impair the value of a participant's account.  Fiduciary decisions have the potential to dramatically affect the amount of money participants can save for retirement.

42.     In 2023, the Plans had 58,127 participants—specifically, the 3M VIP Plan had 55,591 participants and the 3M Savings Plan had 2,536 participants.  Combined, the Plans had more participants than 99.767% of the defined contribution plans that filed 5500 forms for the 2023 year.

43.     In 2023, the Plans had approximately $12.4 billion in assets entrusted to the care of the Plans' fiduciaries.  Combined, the Plans had more assets than 99.625% of the defined contribution plans that filed 5500 forms for the 2023 year.

44.     As of 2024, approximately $3.78 billion, or 30.5%, of the Plans' total assets, was invested in the 3M TDF Series. The table below displays the approximate value of the assets invested in each of the 3M TDF Series vintages at issue:

| Fund Name | Approximate Value |
|---|---|
| 3M 2025 TDF | $564.5 million |
| 3M 2030 TDF | $758.9 million |
| 3M 2035 TDF | $734.6 million |
| 3M 2040 TDF | $568.4 million |
| 3M 2045 TDF | $464.89 million |
| 3M 2050 TDF | $405.85 million |
| 3M 2055 TDF | $283.3 million |

## II.     Target Date Funds

45.     "Target date funds" are a type of fund designed to achieve certain investment results based on an investor's anticipated retirement date.

46.     A TDF is meant to offer a portfolio of a "diversified mix of several different types of stocks, bonds and other investments which are adjusted over time from a greater concentration of higher-risk investments such as stock funds to lower-risk investments such as bonds." *See* 3M VIP & ESOP Financial Statements and Supp. Schedules, at 30.

47.     TDFs are meant to offer investors dynamic asset allocation that gradually shifts to a more conservative profile so as to minimize risk as time progresses. TDF's asset allocation generally shifts from stock funds to more bond funds over time. These shifts to allocation over time are referred to as a fund's "glide path." A TDF's "glide path" is typically a gradual shift in allocation from stock funds to bond funds. The below illustrates this concept for participants in a hypothetical BlackRock "LifePath" TDF showing how equity exposure in its TDFs may change over time:[3]



---

[3]     *See* https://www.blackrock.com/us/financial-professionals/investments/products/lifepath/lifepath-index-funds.

48.     In this example, equity exposure within a BlackRock LifePath TDF is 100% when the participant is 45-years from retirement and gradually decreases to approximately 40% at retirement and remains there in the years following retirement.

49.     An investment fund can be either passively or actively managed.  Passive funds, such as "index funds," are meant to mirror the performance of an index.  For example, a passive index fund pegged to the S&P 500 would hold securities of the same or similar type matching the composition of the S&P 500 index.  In contrast, actively managed funds are meant to beat the market through superior investment selection and are comprised of individual stocks, bonds, and/or assets selected by a manager or investment advisor.

50.     A manager of a TDF may choose to include actively managed funds and/or passive funds within the TDF itself.  Regardless of whether a TDF includes passively managed investments, all TDFs are actively managed as managers make active decisions when designing a TDF's asset allocation over time.

## III.    Defendants Breached Their Fiduciary Duty of Prudence

### A.      Fiduciary Duties Under ERISA

#### 1.   Fiduciary Duties of Prudence and Loyalty

51.     Under ERISA, in addition to named fiduciaries, any other persons who perform fiduciary functions are treated as fiduciaries.  *See* 29 U.S.C. § 1002(21)(A); 29 U.S.C. § 1102(a)(1).

52.     ERISA imposes strict fiduciary duties of prudence and loyalty upon retirement plan fiduciaries. 29 U.S.C. § 1104(a).  These duties apply to all fiduciary acts, including the Defendants' retention of investment options for the Plans.  ERISA's duty of

prudence requires fiduciaries to discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a)(1)(B).

53.    Importantly, the fact that participants may direct the investment of their contributions in a defined contribution plan account "does not serve to relieve a fiduciary from its duty to prudently select and monitor any . . . designated investment alternative offered under the plan." 29 C.F.R. § 2550.404c-1(d)(2)(iv).

54.    Fiduciaries have "a continuing duty to monitor [Plan] investments and remove imprudent ones" that exist "separate and apart from the [fiduciaries'] duty to exercise prudence in selecting investments." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015).  Prudence requires a review at "regular intervals." *Id.*

55.    "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id.* at 530.  If "fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Hughes v. Nw. Univ.*, 595 U.S. 170, 176 (2022) (citing *Tibble*, 575 U.S. at 529-30).

56.    When considering whether to retain a certain suite of TDFs in a plan, a prudent fiduciary would evaluate the entire universe of TDFs available based on qualitative and quantitative metrics, such as trailing 3, 5 and 10-year performance relative peer benchmarks.

## 2.  Fiduciary Liability Under ERISA

57.     Under 29 U.S.C. § 1109, fiduciaries to the Plans are personally liable to make

good to the Plans any harm caused by their breaches of fiduciary duty. Section 1109(a)

provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

## 3.  Co-fiduciary Liability

58.     ERISA also imposes co-fiduciary liability where a plan fiduciary knowingly

participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under

29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty of another

fiduciary if:

1. he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

2. if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

3. if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

### B.    The 3M TDF Series and Meaningful Benchmarks to Compare Their Investment Performance

1. The 3M TDF Series

59.    The 3M TDF Series is comprised of TDFs modeled after the BlackRock LifePath TDFs.  Since 2006, the 3M TDF Series has been the only target date option on the Plans.  Participants who want to invest in a target date strategy have no choice other than to invest in the 3M TDF Series.  Defendants have included the vintages of the 3M TDF Series subject to this action as part of the Plans since at least 2014.

60.    The 3M TDF Series contain funds divided into five-year increments representing different "target dates" of anticipated retirement dates ranging from 2025 to 2065.

61.    TDFs are generally packaged as a suite or single family—meaning, plans generally cannot select different vintages of TDFs from different managers.  Defendants selected the 3M TDF Series as a single family, or suite, of TDFs, resulting in the simultaneous inclusion of all the vintages of the 3M TDF Series on the Plans.

62.    The 3M TDF Series are the only target date options on the Plans.  Participants who want to pursue a target date investment strategy have no choice other than to invest in the 3M TDF Series.  The 3M TDF Series are advised by the 3MIC, 3M IMCO, and BlackRock Institutional Trust Company.

63.    According to Defendants, each of the vintages in the 3M TDF Series is "diversified among broad types of asset classes and the mix is adjusted over time to

gradually become more conservative as the target retirement year approaches."[4]  When the 3M TDF "reaches the target date, it will have reached its most conservative level and will be merged into the 3M LifePath Retirement Portfolio."[5]  That said, as noted, a TDF's allocation of assets and even its glide path is not static—because TDFs are actively managed funds, it is expected that a TDF's portfolio manager will readjust allocation and investment strategies in response to market trends, outlook and evolving analyses.

64.    Under the Plans, after newly hired employees are "automatically enrolled" in the 3M VIP Plan after three months of employment, their contributions are invested "100%" in the 3M TDF Series vintage "closest to the year in which the participant will reach age 65."[6]

65.    Defendants designate a default fund in which to invest participants' contributions if they do not make an investment election.  The Plans' default fund is the 3M TDF Series vintage for the year closest to the year in which the participant will reach age 65.

66.    Based on publicly available documents, in 2024, the Plans invested at least $3,780,560 in the 3M TDF Series.  Defendant 3M's public 5500 filings do not disclose the amount invested in each of the 3M TDF Series, so specific figures on the amounts invested in each fund would only be revealed during discovery.

---

[4]    3M 5500 2019 VIP & ESOP Financial Statements and Supp. Schedules, at 30.

[5]    *Id.*

[6]    *Id.*

### 2. Meaningful Benchmarks to Compare the Investment Performance of the 3M TDF Series

67.     When considering whether to retain a certain suite of TDFs in a plan, a prudent fiduciary would evaluate the TDF's risk and return characteristics as compared to the entire universe of TDFs available based on qualitative and quantitative metrics.

68.     3M utilized a custom 3M benchmark to analyze the performance of the 3M TDF Series.  For example, the benchmark for the 3M TDF 2030 vintage is named, "Blended Benchmark: LifePath 2030 Blend."  Following is a chart from one of 3M's fee disclosure documents demonstrating the names of the custom benchmarks and relative performance to those benchmarks for the various 3M TDF vintages:

| Fund Name/ *Benchmark* | Asset Class | Total Asset-Based Fees[1] | Annual Cost Per $1,000 of Investment | Shareholder-Type Fees and Investment Restrictions | Average Annual Total Return as of 8/31/2023 (Fund and *Benchmark*)[3] | | |
|---|---|---|---|---|---|---|---|
| | | | | | 1 yr. | 5 yr. | 10 yr. / Inception |
| **3M LifePath Portfolios** | | | | | | | |
| 3M LifePath Retirement Portfolio | Premixed | 0.17% | $1.70 | N/A | 4.5% | 4.0% | 4.5% |
| *Blended Benchmark: LifePath Retirement Blend* | | | | | *4.6%* | *3.8%* | *4.4%* |
| 3M LifePath 2025 Portfolio | Premixed | 0. 16% | $1.60 | N/A | 5.5% | 4.6% | 5.5% |
| *Blended Benchmark: LifePath 2025 Blend* | | | | | *5.5%* | *4.4%* | *5.4%* |
| 3M LifePath 2030 Portfolio | Premixed | 0. 14% | $1.40 | N/A | 7.6% | 5.4% | 6.2% |
| *Blended Benchmark: LifePath 2030 Blend* | | | | | *7.5%* | *5.2%* | *6.1%* |
| 3M LifePath 2035 Portfolio | Premixed | 0. 12% | $1.20 | N/A | 9.2% | 5.9% | 6.8% |
| *Blended Benchmark: LifePath 2035 Blend* | | | | | *9.0%* | *5.7%* | *6.6%* |
| 3M LifePath 2040 Portfolio | Premixed | 0. 10% | $1.00 | N/A | 10.6% | 6.3% | 7.2% |
| *Blended Benchmark: LifePath 2040 Blend* | | | | | *10.3%* | *6.1%* | *7.0%* |
| 3M LifePath 2045 Portfolio | Premixed | 0.09% | $0.90 | N/A | 11.6% | 6.5% | 7.5% |
| *Blended Benchmark: LifePath 2045 Blend* | | | | | *11.3%* | *6.4%* | *7.3%* |
| 3M LifePath 2050 Portfolio | Premixed | 0.08% | $0.80 | N/A | 12.3% | 6.7% | 7.7% |
| *Blended Benchmark: LifePath 2050 Blend* | | | | | *12.0%* | *6.6%* | *7.5%* |
| 3M LifePath 2055 Portfolio | Premixed | 0. 08% | $0.80 | N/A | 12.6% | 6.8% | 7.8% |
| *Blended Benchmark: LifePath 2055 Blend* | | | | | *12.3%* | *6.7%* | *7.6%* |
| 3M LifePath 2060 Portfolio[5] | Premixed | 0. 08% | $0.80 | N/A | 12.7% | 6.8% | 7.2% |
| *Blended Benchmark: LifePath 2060 Blend* | | | | | *12.3%* | *6.7%* | *7.0%* |
| 3M LifePath 2065 Portfolio[6] | Premixed | 0. 08% | $0.80 | N/A | 12.7% | N/A | 6.2% |
| *Blended Benchmark: LifePath 2065 Blend* | | | | | *12.3%* | *N/A* | *6.0%* |

69.     3M represents these custom "benchmarks" are a weighted mix of several indices that are representative of the asset classes in which the different vintages in the 3M TDF Series were invested—meaning, the benchmark mirrored the overall strategy of the vintages in the 3M TDF Series.  Stated otherwise, at best, these "benchmarks" merely

compare the 3M TDF Series' managers ability to implement their own strategies rather than compare the series' performance with actual peer comparator / competitor funds. The fact that every vintage in the 3M TDF Series purportedly matched or outperformed these custom "benchmarks" by 0.1-0.4% at the 1-year, 5-year and 10-year marks is telling. Defendants administer these custom benchmarks, which are not used or recognized outside this specific context, and which can be easily manipulated by Defendants to manufacture a performance and measure the benefits the 3M TDF Series purportedly provide.

70.    Importantly, 3M does not disclose the actual composition of the custom blended benchmarks used for vintages in the 3M TDF Series—*i.e.*, which indices are included in the blend or how the mix of indices used is actually weighted.    Rather, 3M only discloses that the 3M TDF Series may draw from "any or all of seven major asset classes," including: (1) U.S. Large-Cap Equities; (2) U.S. Small/Mid-Cap Equities; (3) International Equities; (4) Global Real Estate; (5) Commodities; (6) U.S. Bonds; and (7) U.S. Inflation Linked Bonds. In contrast, 3M's "blended benchmark" for the "Inflation Response Multi-Asset Fund" it also offers as an investment option discloses precisely the blend of its custom benchmark:

**Fund Name/**
*Benchmark*

Inflation Response Multi-Asset Fund[8]
*Blended Benchmark: 45%Bloomberg U.S.*
*TIPS/20%Bloomberg Comdty/15%JPMorgan*
*Emerging Local Markets Index Plus/10%Dow*
*Jones U.S. Select REIT/10% Bloomberg Gold*
*Subindex*

71.     3M's custom benchmark for the 3M TDF Series should not be relied upon.[7] Accordingly, Plaintiffs do not use or refer to the 3M custom benchmarks; rather, as detailed below, Plaintiffs have identified multiple benchmarks and comparator funds as meaningful benchmarks to gauge the performance of the 3M TDF Series.   Each of these benchmarks provides a sound basis for comparison to the 3M TDF Series.

72.     The 3M TDF Series' performance is assessed based on comparable benchmarks for each of its vintages, as well as compared to four peers selected from major market vendors and filtered by similar characteristics, such as size, category, and risk ratio. To determine the characterization of underperformance, as detailed below, Plaintiffs adopt a criterion of consecutive years of trailing 3, 5, and 10-years of underperformance as well as a cumulative basis compounded over time.

a.   *S&P 500 Target Date Indices*

73.     According to Morningstar,[8] over 50% of TDFs use the S&P Target Date Indices ("S&P Indices" or "TDI") as their primary prospectus benchmark to approximate

---

[7]     Indeed, the Department of Labor rejects the use of custom benchmarks as "benchmarks are more likely to be helpful when they are not subject to manipulation and are recognizable and understandable to the average plan participant, as is the case with broad-based indices contemplated by Instruction 5 to Item 27(b)(7) of Form N-1A." *See* Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans, 75 Fed. Reg. 64910, 64916-64917 (Oct. 20, 2010).   For this reason, the Department mandates benchmarks be a "broad-based securities market index" and that such not be "administered by an affiliate of the investment issuer, its investment adviser, or a principal underwriter, unless the index is widely recognized and used." 29 C.F.R. § 2550.404a-5.

[8]     Morningstar is a leading provider of investment research and is commonly relied upon by industry professionals.

performance.[9]   The S&P Indices include a separately calculated index for each target date. Each index "measures the performance of sub-indices selected and weighted to represent a consensus of the opportunity set available in the U.S. universe of target date funds."[10]

74.    As a composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs, the S&P Indices represent an appropriate, meaningful benchmark comparator for the 3M TDF Series.   That is, because each of the vintages in the 3M TDF Series necessarily includes a different mix of asset classes, and that mix evolves as the relevant target dates approach, and the S&P Indices cover a wide range of the types of investment strategies or characteristics that can exist in the universe of TDFs, the S&P Indices are appropriate comparators.   Accordingly, the following S&P Indices are meaningful benchmarks for use in assessing the performance of each vintage within the 3M TDF Series:

| Fund Name | Benchmark |
|---|---|
| 3M 2025 TDF | S&P 2025 Target Date Index |
| 3M 2030 TDF | S&P 2030 Target Date Index |
| 3M 2035 TDF | S&P 2035 Target Date Index |
| 3M 2040 TDF | S&P 2040 Target Date Index |
| 3M 2045 TDF | S&P 2045 Target Date Index |
| 3M 2050 TDF | S&P 2050 Target Date Index |
| 3M 2055 TDF | S&P 2055 Target Date Index |

---

[9]    *See* https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/about-us/erisa-advisory-council/2024-qdia-marinescu-witness-statement-0910.pdf.

[10]    *See* https://www.spglobal.com/spdji/en/documents/methodologies/methodology-sp-target-date.pdf.

b. *Comparator TDFs*

75. All TDFs share similar risks such as allocation risks relating to the fund manager's chosen glide path and asset composition. Additionally, all TDFs seek to achieve its objectives by rebalancing portfolios to become more conservative as time progresses toward the target date.

76. Plaintiffs have identified four comparator TDFs—each of which are offered by major market vendors and were selected based on their similar characteristics to the 3M TDF Series—characteristics such as size, category, and risk ratio.

77. As noted above, the 3M TDF Series is comprised of TDFs modeled after the BlackRock LifePath TDFs. The TDF market is top heavy, with the majority of TDF series being managed as part of one of six TDF indexes—specifically: (1) Vanguard Target Retirement; (2) T. Rowe Price Retirement; (3) BlackRock LifePath Index; (4) American Funds Target Date Retirement; (5) Fidelity Freedom; and (6) Fidelity Freedom Index. Had Defendants opted to replace the 3M TDF Series, it likely would have worked with one of the other non-BlackRock suites listed.

78. Additionally, Morningstar has classified the TDFs offered by Fidelity, T. Rowe Price, Vanguard, and American Funds as being in the same "Morningstar Category" as the 3M TDF Series.[11] *See, e.g.*, *Snyder v. UnitedHealth Grp., Inc.*, No. 21-1049

---

[11] A Morningstar Category is assigned by placing funds (*e.g.*, the 3M TDF Series, Fidelity, T. Rowe Price, Vanguard, and American Funds) into peer groups based on their holdings. Funds are placed in a Morningstar Category based on their portfolio statistics and compositions over the prior three years.

(JRT/BRT), 2021 U.S. Dist. LEXIS 230878, at *12 (D. Minn. Dec. 2, 2021) (finding "the Morningstar Comparators constitute meaningful benchmarks because they fall within the same universe, and incorporate similar purposes, asset allocations, and risk exposure as the [] TDFs").

79.    Accordingly, four of the five non-BlackRock suites shown above (the "Comparator TDFs") represent an ideal group for comparison. Specifically, for each vintage of the 3M TDF Series, the Comparator TDF vintages are as follows:

| Fund | Comparator Funds |
|---|---|
| **3M 2025 TDF** | T. Rowe Price Retirement 2025 Trust (Class A) F00000Z2L0 ("T. Rowe 2025 TDF") |
| | Fidelity Freedom 2025 K6 FDTKX ("Freedom 2025 TDF") |
| | Vanguard Target Retire 2025 Trust I FOUSA06R61 ("Vanguard 2025 TDF") |
| | American Funds 2025 Trgt Date Retire R6 RFDTX ("Am. Funds 2025 TDF") |
| **3M 2030 TDF** | T. Rowe Price Retirement 2030 Trust (Class A) F00000Z2L4 ("T. Rowe 2030 TDF") |
| | Fidelity Freedom 2030 K6 FGTKX ("Freedom 2030 TDF") |
| | Vanguard Target Retire 2030 Trust I FOUSA06R62 ("Vanguard 2030 TDF") |
| | American Funds 2030 Trgt Date Retire R6 RFETX ("Am. Funds 2030 TDF") |
| **3M 2035 TDF** | T. Rowe Price Retirement 2035 Trust (Class A) F00000Z2L8 ("T. Rowe 2030 TDF") |
| | Fidelity Freedom 2035 K6 FWTKX ("Freedom 2035 TDF") |
| | Vanguard Target Retire 2035 Trust I FOUSA06R63 ("Vanguard 2035 TDF") |
| | American Funds 2035 Trgt Date Retire R6 RFFTX ("Am. Funds 2035 TDF") |
| | T. Rowe Price Retirement 2040 Trust (Class A) F00000Z2LC ("T. Rowe 2040 TDF") |
| | Fidelity Freedom 2040 K6 FHTKX ("Freedom 2040 TDF") |

| Fund | Comparator Funds |
|------|------------------|
| **3M 2040 TDF** | Vanguard Target Retire 2040 Trust I FOUSA06R64 ("Vanguard 2040 TDF") |
| | American Funds 2040 Trgt Date Retire R6 RFGTX ("Am. Funds 2040 TDF") |
| **3M 2045 TDF** | T. Rowe Price Retirement 2045 Trust (Class A) F00000Z2LG ("T. Rowe 2045 TDF") |
| | Fidelity Freedom 2045 K6 FJTKX ("Freedom 2045 TDF") |
| | Vanguard Target Retire 2045 Trust I FOUSA06R65 ("Vanguard 2045 TDF") |
| | American Funds 2045 Trgt Date Retire R6 RFHTX ("Am. Funds 2045 TDF") |
| **3M 2050 TDF** | T. Rowe Price Retirement 2050 Trust (Class A) F00000Z2LK ("T. Rowe 2050 TDF") |
| | Fidelity Freedom 2050 K6 FZTKX ("Freedom 2050 TDF") |
| | Vanguard Target Retire 2050 Trust I FOUSA06R66 ("Vanguard 2050 TDF") |
| | American Funds 2050 Trgt Date Retire R6 RFITX ("Am. Funds 2050 TDF") |
| **3M 2055 TDF** | T. Rowe Price Retirement 2055 Trust (Class A) F00000Z2LO (T. Rowe 2055 TDF") |
| | Fidelity Freedom 2055 K6 FCTKX ("Freedom 2055 TDF") |
| | Vanguard Target Retire 2055 Trust I F00000LIF0 ("Vanguard 2055 TDF") |
| | American Funds 2055 Trgt Date Retire R6 RFKTX ("Am. Funds 2055 TDF") |

80.    Like the 3M TDF Series, each of the Comparator Funds is a target date fund structured as a fund of funds.  Additionally, the 3M TDF Series and each of the Comparator Funds invests in a diversified portfolio comprised primarily of investments from different market sectors.  Similarly, the Comparator Funds and the 3M TDF Series all seek to achieve their objectives by rebalancing their portfolios to become more conservative as the fund approaches / passes the relevant target date.

81.     Based on the similarities of the Comparator Funds' structures and Morningstar's inclusion of each of the Comparator Funds in the same Morningstar Category, the Comparator Funds represent meaningful comparators to the 3M TDF Series. When combined with the S&P Indices, Plaintiffs have identified meaningful benchmarks that provide a sound basis of comparison to the 3M TDF Series.

82.     As discussed below, when evaluated against the Comparator TDFs, both individually and as a group, the returns of the 3M TDF Series paled in comparison to those of the readily available alternatives.  Accordingly, a prudent fiduciary could not have reasonably concluded that retention of the 3M TDF Series was appropriate for the Plans.

### C.     The 3M TDF Series Consistently Underperformed as Compared to the Meaningful Benchmarks

83.     As detailed below, the vintages of the 3M TDF Series at issue have significantly underperformed both the S&P Indices benchmarks and their peer Comparator Funds on a trailing 3, 5, and 10-years basis and a cumulative basis.

#### 1.     The 3M 2025 Vintage

84.     The 3M 2025 TDF's underperformance has undermined the retirement savings of participants in the Plans since at least 2014.  Table 1.a below illustrates the 2025 3M TDF vintage's performance as compared to the S&P 2025 TDI based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 1.a
3M 2025 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the 2025 TDI

| Fund / TDI | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| 3M 2025 TDF | 4.73% | -1.71% | 6.94% | 14.09% | -5.77% | 19.04% | 13.29% | 9.49% | -14.27% | 12.39% |
| 2025 TDI | 5.56% | -0.25% | 7.82% | 14.55% | -5.02% | 18.38% | 11.22% | 10.67% | -13.13% | 12.99% |
| *Alpha* | -0.83% | -1.46% | -0.88% | -0.46% | -0.75% | 0.66% | 2.07% | -1.18% | -1.14% | -0.6% |
| Trailing 3 years | - | - | -3.17% | -2.8% | -2.09% | -0.55% | 1.98% | 1.55% | -0.25% | -2.92% |
| Trailing 5 years | - | - | - | - | -4.38% | -2.89% | 0.64% | 0.34% | -0.34% | -0.19% |
| Trailing 10 years | - | - | - | - | - | - | - | - | - | -4.57% |

85.     Table 1.b illustrates the 2025 3M TDF's performance as compared to the 2025 vintages of the Comparator TDFs based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 1.b
3M 2025 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the Comparator TDFs

| Fund | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| 3M 2025 TDF | 4.73% | -1.71% | 6.94% | 14.09% | -5.77% | 19.04% | 13.29% | 9.49% | -14.27% | 12.39% |
| T. Rowe 2025 TDF | 5.99% | -0.14% | 7.66% | 17.75% | -5.55% | 21.2% | 14.83% | 11.8% | -15.55% | 14.73% |
| Freedom 2025 TDF | 5.63% | -0.16% | 7.47% | 16.97% | -5.78% | 19.72% | 14.87% | 10.29% | -16.54% | 14.44% |
| Vanguard 2025 TDF | 7.25% | -0.7% | 7.55% | 16.02% | -5.06% | 19.78% | 13.41% | 9.91% | -15.44% | 14.57% |
| Am. Funds 2025 TDF | 6.66% | 0.13% | 7.36% | 15.33% | -3.47% | 17.85% | 13.67% | 11.44% | -12.74% | 11.94% |
| *Delta* | -1.65% | -1.49% | -0.57% | -2.42% | -0.8% | -0.59% | -0.9% | -1.37% | 0.80% | -1.53% |
| Trailing 3 years | - | - | -3.72% | -4.49% | -3.8% | -3.83% | -2.3% | -2.87% | -1.48% | -2.1% |
| Trailing 5 years | - | - | - | - | -6.95% | -5.89% | -5.31% | -6.11% | -2.88% | -3.61% |
| Trailing 10 years | - | - | - | - | - | - | - | - | - | -10.55% |

86.    <u>Table 1.c</u> below illustrates the 2025 3M TDF vintage's cumulative compounded performance as compared to the 2025 vintages of the Comparator Funds and the S&P 2025 TDI:

<u>Table 1.c</u><br>3M 2025 TDF<br>Cumulative Compounded Performance vs. the Comparator TDFs and 2025 TDI

| **Fund /<br>TDI** | **Cumulative Compounded Performance<br>2014 - 2023** | |
|---|---|---|
| | <u>Cumulative Compound<br>Performance</u> | <u>Underperformance vs.<br>Comparator / TDI</u> |
| **3M 2025<br>TDF** | 68.37% | N/A |
| T. Rowe<br>2025 TDF | 91.05% | -22.67% |
| Freedom<br>2025 TDF | 80.95% | -12.57% |
| Vanguard<br>2025 TDF | 82.49% | -14.12% |
| Am. Funds<br>2025 TDF | 86.13% | -17.76% |
| *Delta* | 85.16% | -16.79% |
| 2025 TDI | 76.66% | -8.28% |

87.    As of 2024, the assets in the 3M 2025 TDF had an approximate value of $564.5 million.  Assuming that amount resulted from a cumulative compound growth of 68.37%, the original amount in 2014 would have been approximately $335.27 million.  Had $335.27 million been invested in one of the Comparator Funds, its value in 2024 would have ranged from approximately $606.67 million to $640.53 million (or an increase in value for participants of between approximately $42.17 million and $76.03 million).

88.    The foregoing return, 3, 5, and 10-year trailing return, and cumulative performance information is the information Defendants would have had available had they

conducted a simple analysis evaluating the 2025 3M TDF vintage and compared its performance to the corresponding TDI and vintages of the Comparator TDFs.

89.    A prudent fiduciary monitoring the 2025 3M TDF vintage's performance would have compared the vintage's returns to returns to the S&P 2025 TDI and one or more of the Comparator Funds identified in Table 1.b and Table 1.c.

90.    When considering whether to retain a certain suite of TDFs in a plan, a prudent fiduciary would evaluate the TDF's risk and return characteristics as compared to the entire universe of TDFs available based on qualitative and quantitative. A prudent fiduciary could not have reasonably concluded that retention of the 2025 3M TDF vintage, or the 3M TDF Series as a whole, was appropriate for the Plans.

### 2.    The 3M 2030 Vintage

91.    The 3M 2030 TDF's underperformance has undermined the retirement savings of participants in the Plans since at least 2014. Table 2.a below illustrates the 2030 3M TDF vintage's performance as compared to the S&P 2030 TDI based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023.

Table 2.a
3M 2030 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the 2030 TDI

| Fund / TDI | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| **3M 2030 TDF** | 4.57% | -2% | 7.32% | 16.37% | -6.79% | 21.04% | 13.97% | 12.03% | -15.41% | 14.84% |
| 2030 TDI | 5.64% | -0.3% | 8.35% | 16.19% | -5.99% | 20.38% | 11.91% | 12.61% | -13.96% | 14.8% |
| *Alpha* | -1.07% | -1.7% | -1.03% | 0.18% | -0.8% | 0.66% | 2.06% | -0.58% | -1.45% | 0.04% |

| Fund / TDI | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| Trailing 3 years | - | - | -3.8% | -2.55% | -1.65% | 0.04% | 1.92% | 2.14% | 0.03% | -1.99% |
| Trailing 5 years | - | - | - | - | -4.42% | -2.69% | 1.07% | 1.52% | -0.11% | 0.73% |
| Trailing 10 years | - | - | - | - | - | - | - | - | - | -3.69% |

92.    Table 2.b illustrates the 2030 3M TDF's performance as compared to the 2030 vintages of the Comparator TDFs based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 2.b
3M 2030 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the Comparator TDFs

| Fund | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| 3M 2030 TDF | 4.57% | -2% | 7.32% | 16.37% | -6.79% | 21.04% | 13.97% | 12.03% | -15.41% | 14.84% |
| T. Rowe 2030 TDF | 6.2% | 0.13% | 7.77% | 19.58% | -6.13% | 22.7% | 16.06% | 13.45% | -16.83% | 16.56% |
| Freedom 2030 TDF | 5.67% | -0.16% | 8.13% | 20% | -6.83% | 22.06% | 15.84% | 11.69% | -16.77% | 15.72% |
| Vanguard 2030 TDF | 7.28% | -0.91% | 7.93% | 17.61% | -5.77% | 21.18% | 14.19% | 11.48% | -16.15% | 16.04% |
| Am. Funds 2030 TDF | 7.06% | 0.47% | 7.71% | 18.4% | -4.16% | 20.06% | 15.16% | 13.16% | -14.5% | 14.52% |
| *Delta* | -1.98% | -1.88% | -0.56% | -2.52% | -1.07% | -0.46% | -1.34% | -0.42% | 0.65% | -0.87% |
| Trailing 3 years | - | - | -4.43% | -4.98% | -4.16% | -4.06% | -2.87% | -2.22% | -1.11% | -0.63% |
| Trailing 5 years | - | - | - | - | -8.02% | -6.50% | -5.96% | -5.81% | -2.63% | -2.43% |
| Trailing 10 years | - | - | - | - | - | - | - | - | - | -10.46% |

93.    Table 2.c below illustrates the 2030 3M TDF vintage's cumulative compounded performance as compared to the 2030 vintages of the Comparator Funds and the S&P 2030 TDI:

Table 2.c
3M 2030 TDF
Cumulative Compounded Performance vs. the Comparator TDFs and 2030 TDI

| Fund / TDI | Cumulative Compounded Performance 2014 - 2023 | |
|---|---|---|
| | Cumulative Compound Performance | Underperformance vs. Comparator / TDI |
| **3M 2030 TDF** | 79.09% | N/A |
| T. Rowe 2030 TDF | 101.47% | -22.37% |
| Freedom 2030 TDF | 93.99% | -14.9% |
| Vanguard 2030 TDF | 90.84% | -11.75% |
| Am. Funds 2030 TDF | 101.4% | -22.3% |
| *Delta* | 96.93% | -17.83% |
| 2030 TDI | 86.78% | -7.69% |

94.     As of 2024, the assets in the 3M 2030 TDF had an approximate value of $758.9 million.  Assuming that amount resulted from a cumulative compound growth of 79.09%, the original amount in 2014 would have been approximately $423.75 million.  Had $423.75 million been invested in one of the Comparator Funds, its value in 2024 would have ranged from approximately $808.68 million to $853.72 million (or an increase in value for participants of between approximately $49.78 million and $94.85 million).

95.     The foregoing return, 3, 5, and 10-year trailing return, and cumulative performance information is the information Defendants would have had available had they conducted a simple analysis evaluating the 2030 3M TDF vintage and compared its performance to the corresponding TDI and vintages of the Comparator TDFs.

96.    A prudent fiduciary monitoring the 2030 3M TDF vintage's performance would have compared the vintage's returns to returns to the S&P 2030 TDI and one or more of the Comparator Funds identified in Table 2.b and Table 2.c.

97.    When considering whether to retain a certain suite of TDFs in a plan, a prudent fiduciary would evaluate the TDF's risk and return characteristics as compared to the entire universe of TDFs available based on qualitative and quantitative.  A prudent fiduciary could not have reasonably concluded that retention of the 2030 3M TDF vintage, or the 3M TDF Series as a whole, was appropriate for the Plans.

### 3.    The 3M 2035 Vintage

98.    The 3M 2035 TDF's underperformance has undermined the retirement savings of participants in the Plans since at least 2014.  Table 3.a below illustrates the 2035 3M TDF vintage's performance as compared to the S&P 2035 TDI based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 3.a
3M 2035 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the 2035 TDI

| Fund / TDI | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| 3M 2035 TDF | 4.37% | -2.19% | 7.72% | 18.41% | -7.63% | 22.69% | 14.33% | 14.02% | -16.37% | 16.82% |
| 2035 TDI | 5.69% | -0.35% | 8.85% | 17.78% | -6.88% | 22.18% | 12.79% | 14.93% | -14.99% | 16.63% |
| *Alpha* | -1.32% | -1.84% | -1.13% | 0.63% | -0.75% | 0.51% | 1.54% | -0.91% | -1.38% | 0.19% |
| Trailing 3 years | - | - | -4.29% | -2.34% | -1.25% | 0.39% | 1.3% | 1.14% | -0.75% | -2.1% |
| Trailing 5 years | - | - | - | - | -4.41% | -2.58% | 0.8% | 1.02% | -0.99% | -0.05% |
| Trailing 10 years | - | - | - | - | - | - | - | - | - | -4.46% |

99.    Table 3.b illustrates the 2035 3M TDF's performance as compared to the 2035 vintages of the Comparator TDFs based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 3.b
3M 2035 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the Comparator TDFs

| Fund | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| **3M 2035 TDF** | 4.37% | -2.19% | 7.72% | 18.41% | -7.63% | 22.69% | 14.33% | 14.02% | -16.37% | 16.82% |
| T. Rowe 2035 TDF | 6.22% | 0.26% | 7.81% | 21% | -6.69% | 23.99% | 17.22% | 15.02% | -17.77% | 18.43% |
| Freedom 2035 TDF | 5.75% | -0.21% | 8.63% | 22.2% | -8.15% | 24.74% | 17.41% | 14.56% | -17.51% | 18.06% |
| Vanguard 2035 TDF | 7.26% | -1.09% | 8.35% | 19.22% | -6.52% | 22.58% | 14.93% | 13.08% | -16.52% | 17.22% |
| Am. Funds 2035 TDF | 7.02% | 0.59% | 8% | 21.04% | -5.14% | 23.29% | 17.55% | 15.54% | -16.24% | 16.9% |
| *Delta* | -2.19% | -2.08% | -0.48% | -2.46% | -1.01% | -0.96% | -2.45% | -0.53% | 0.64% | -0.83% |
| **Trailing 3 years** | - | - | -4.75% | -5.01% | -3.93% | -4.42% | -4.41% | -3.94% | -2.34 | -0.72% |
| **Trailing 5 years** | - | - | - | - | -8.21% | -6.97% | -7.34% | -7.4% | -4.3% | -4.13% |
| **Trailing 10 years** | - | - | - | - | - | - | - | - | - | -12.33% |

100.    Table 3.c below illustrates the 2035 3M TDF vintage's cumulative compounded performance as compared to the 2035 vintages of the Comparator Funds and the S&P 2035 TDI:

Table 3.c
3M 2035 TDF
Cumulative Compounded Performance vs. the Comparator TDFs and 2035 TDI

| Fund / TDI | Cumulative Compounded Performance 2014 - 2023 | |
| --- | --- | --- |
| | Cumulative Compound Performance | Underperformance vs. Comparator / TDI |
| **3M 2035 TDF** | 87.93% | N/A |
| T. Rowe 2035 TDF | 111.03% | -23.1% |
| Freedom 2035 TDF | 110.24% | -22.3% |
| Vanguard 2035 TDF | 99.71% | -11.77% |
| Am. Funds 2035 TDF | 118.87% | -30.94% |
| *Delta* | 109.96% | -22.03% |
| 2035 TDI | 97.44% | -9.5% |

101.    As of 2024, the assets in the 3M 2035 TDF had an approximate value of $734.6 million. Assuming that amount resulted from a cumulative compounded growth of 87.93%, the original amount in 2014 would have been approximately $390.9 million. Had $390.9 million been invested in one of the Comparator Funds, its value in 2024 would have ranged from approximately $780.66 million to $855.57 million (or an increase in value for participants of between approximately $46.06 million and $120.97 million).

102.    The foregoing return, 3, 5, and 10-year trailing return, and cumulative performance information is the information Defendants would have had available had they conducted a simple analysis evaluating the 2035 3M TDF vintage and compared its performance to the corresponding TDI and vintages of the Comparator TDFs.

103.    A prudent fiduciary monitoring the 2035 3M TDF vintage's performance would have compared the vintage's returns to returns to the S&P 2035 TDI and one or more of the Comparator Funds identified in Table 3.b. and Table 3.c.

104.    When considering whether to retain a certain suite of TDFs in a plan, a prudent fiduciary would evaluate the TDF's risk and return characteristics as compared to the entire universe of TDFs available based on qualitative and quantitative.  A prudent fiduciary could not have reasonably concluded that retention of the 2035 3M TDF vintage, or the 3M TDF Series as a whole, was appropriate for the Plans.

### 4.    The 3M 2040 Vintage

105.    The 3M 2040 TDF's underperformance has undermined the retirement savings of participants in the Plans since at least 2014.  Table 4.a below illustrates the 2040 3M TDF vintage's performance as compared to the S&P 2040 TDI based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 4.a
3M 2040 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the 2040 TDI

| Fund / TDI | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| 3M 2040 TDF | 4.2% | -2.49% | 8.09% | 19.93% | -8.31% | 23.97% | 14.51% | 15.67% | -17.15% | 18.42% |
| 2040 TDI | 5.69% | -0.4% | 9.23% | 18.87% | -7.41% | 23.37% | 13.37% | 16.55% | -15.56% | 18.16% |
| *Alpha* | -1.49% | -2.09% | -1.14% | 1.06% | -0.9% | 0.6% | 1.14% | -0.88% | -1.59% | 0.26% |
| Trailing 3 years | - | - | -4.72% | -2.17% | -0.98% | 0.76% | 0.84% | 0.86% | -1.33% | -2.21% |
| Trailing 5 years | - | - | - | - | -4.56% | -2.47% | 0.76% | 1.02% | -1.63% | -0.47% |
| Trailing 10 years | - | - | - | - | - | - | - | - | - | -5.03% |

106.    Table 4.b illustrates the 2040 3M TDF's performance as compared to the 2040 vintages of the Comparator TDFs based on: (i) yearly returns for the years 2014-

2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 4.b
3M 2040 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the Comparator TDFs

| Fund | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| 3M 2040 TDF | 4.2% | -2.49% | 8.09% | 19.93% | -8.31% | 23.97% | 14.51% | 15.67% | -17.15% | 18.42% |
| T. Rowe 2040 TDF | 6.36% | 0.26% | 7.85% | 22.13% | -7.04% | 24.95% | 18.31% | 16.3% | -18.55% | 19.93% |
| Freedom 2040 TDF | 5.71% | -0.18% | 8.6% | 22.42% | -8.75% | 25.7% | 18.53% | 16.7% | -18.06% | 20.26% |
| Vanguard 2040 TDF | 7.29% | -1.44% | 8.8% | 20.82% | -7.27% | 23.97% | 15.59% | 14.7% | -16.95% | 18.38% |
| Am. Funds 2040 TDF | 6.96% | 0.58% | 8.17% | 21.98% | -5.52% | 24.4% | 18.77% | 16.83% | -17.55% | 19.33% |
| *Delta* | -2.38% | -2.29% | -0.27% | -1.91% | -1.17% | -0.79% | -3.29% | -0.46% | 0.63% | -1.05% |
| Trailing 3 years | - | - | -4.94% | -4.47% | -3.34% | -3.86% | -5.24% | -4.54% | -3.13% | -0.89% |
| Trailing 5 years | - | - | - | - | -8.01% | -6.41% | -7.41% | -7.61% | -5.07% | -4.96% |
| Trailing 10 years | - | - | - | - | - | - | - | - | - | -12.98% |

107.  Table 4.c below illustrates the 2040 3M TDF vintage's cumulative compounded performance as compared to the 2040 vintages of the Comparator Funds and the S&P 2040 TDI:

Table 4.c
3M 2040 TDF
Cumulative Compounded Performance vs. the Comparator TDFs and 2040 TDI

| Fund / TDI | Cumulative Compounded Performance 2014 - 2023 | |
|---|---|---|
| | Cumulative Compound Performance | Underperformance vs. Comparator / TDI |
| 3M 2040 TDF | 94.55% | N/A |
| T. Rowe 2040 TDF | 119.28% | -24.73% |

| Fund / TDI | Cumulative Compounded Performance 2014 - 2023 | |
|---|---|---|
| | Cumulative Compound Performance | Underperformance vs. Comparator / TDI |
| Freedom 2040 TDF | 119.33% | -24.78% |
| Vanguard 2040 TDF | 108.29% | -13.74% |
| Am. Funds 2040 TDF | 127.76% | -33.21% |
| *Delta* | 118.67% | -21.84% |
| 2040 TDI | 105.83% | -11.28% |

108.    As of 2024, the assets in the 3M 2040 TDF had an approximate value of $568.4 million.  Assuming that amount resulted from a cumulative compound growth of 94.55%, the original amount in 2014 would have been approximately $292.16 million.  Had $292.16 million been invested in one of the Comparator Funds, its value in 2024 would have ranged from approximately $608.54 million to $665.42 million (or an increase in value for participants of between approximately $40.14 million and $97.02 million).

109.    The foregoing return, 3, 5, and 10-year trailing return, and cumulative performance information is the information Defendants would have had available had they conducted a simple analysis evaluating the 2040 3M TDF vintage and compared its performance to the corresponding TDI and vintages of the Comparator TDFs.

110.    A prudent fiduciary monitoring the 2040 3M TDF vintage's performance would have compared the vintage's returns to returns to the S&P 2040 TDI and one or more of the Comparator Funds identified in Table 4.b. and Table 4.c.

111.    When considering whether to retain a certain suite of TDFs in a plan, a prudent fiduciary would evaluate the TDF's risk and return characteristics as compared to

the entire universe of TDFs available based on qualitative and quantitative.  A prudent fiduciary could not have reasonably concluded that retention of the 2040 3M TDF vintage, or the 3M TDF Series as a whole, was appropriate for the Plans.

### 5.  The 3M 2045 Vintage

112.    The 3M 2045 TDF's underperformance has undermined the retirement savings of participants in the Plans since at least 2014.  Table 5.a below illustrates the 2045 3M TDF vintage's performance as compared to the S&P 2045 TDI based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 5.a
3M 2045 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the 2045 TDI

| Fund / TDI | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| 3M 2045 TDF | 4.12% | -2.66% | 8.32% | 20.94% | -8.89% | 25% | 14.63% | 16.8% | -17.77% | 19.64% |
| 2045 TDI | 5.67% | -0.46% | 9.54% | 19.56% | -7.74% | 24.02% | 13.66% | 17.51% | -15.84% | 19.14% |
| *Alpha* | -1.55% | -2.2% | -1.22% | 1.38% | -1.15% | 0.98% | 0.97% | -0.71% | -1.93% | 0.5% |
| Trailing 3 years | - | - | -4.97% | -2.04% | -0.99% | 1.21% | 0.8% | 1.24% | -1.67% | -2.14% |
| Trailing 5 years | - | - | - | - | -4.74% | -2.21% | 0.96% | 1.47% | -1.84% | -0.19% |
| Trailing 10 years | - | - | - | - | - | - | - | - | - | -4.93% |

113.    Table 5.b illustrates the 2045 3M TDF's performance as compared to the 2045 vintages of the Comparator TDFs based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 5.b
3M 2045 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the Comparator TDFs

| Fund | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| 3M 2045 TDF | 4.12% | -2.66% | 8.32% | 20.94% | -8.89% | 25% | 14.63% | 16.8% | -17.77% | 19.64% |
| T. Rowe 2045 TDF | 6.44% | 0.26% | 7.91% | 22.54% | -7.26% | 25.59% | 18.82% | 17.22% | -18.74% | 20.83% |
| Freedom 2045 TDF | 5.79% | -0.16% | 8.57% | 22.5% | -8.74% | 25.76% | 18.46% | 16.78% | -18.12% | 20.91% |
| Vanguard 2045 TDF | 7.29% | -1.47% | 8.94% | 21.52% | -7.86% | 25.1% | 16.26% | 16.34% | -17.33% | 19.55% |
| Am. Funds 2045 TDF | 7.09% | 0.64% | 8.27% | 22.44% | -5.58% | 24.68% | 19.21% | 17.18% | -18.18% | 20.15% |
| *Delta* | -2.53% | -2.47% | -0.10% | -1.31% | -1.53% | -0.28% | -3.56% | -0.08% | 0.32% | -0.72% |
| Trailing 3 years | - | - | -5.11% | -3.89% | -2.94% | -3.12% | -5.37% | -3.92% | -3.31% | -0.48% |
| Trailing 5 years | - | - | - | - | -7.95% | -5.70% | -6.78% | -6.76% | -5.12% | -4.31% |
| Trailing 10 years | - | - | - | - | - | - | - | - | - | -12.27% |

114.    Table 5.c below illustrates the 2045 3M TDF vintage's cumulative compounded performance as compared to the 2045 vintages of the Comparator Funds and the S&P 2045 TDI:

Table 5.c
3M 2045 TDF
Cumulative Compounded Performance vs. the Comparator TDFs and 2045 TDI

| Fund / TDI | Cumulative Compounded Performance 2014 - 2023 | |
|---|---|---|
| | Cumulative Compound Performance | Underperformance vs. Comparator / TDI |
| 3M 2045 TDF | 99.17% | N/A |
| T. Rowe 2045 TDF | 124.77% | -25.6% |
| Freedom 2045 TDF | 120.8% | -21.63% |
| Vanguard 2045 TDF | 115.63% | -16.46% |

| Fund / TDI | Cumulative Compounded Performance 2014 - 2023 | |
|---|---|---|
| | Cumulative Compound Performance | Underperformance vs. Comparator / TDI |
| Am. Funds 2045 TDF | 130.97% | -31.8% |
| *Delta* | 123.04% | -23.87% |
| 2045 TDI | 111.08% | -11.91% |

115.   As of 2024, the assets in the 3M 2045 TDF had an approximate value of $464.89 million.  Assuming that amount resulted from a cumulative compound growth of 99.17%, the original amount in 2014 would have been approximately $233.41 million.  Had $233.41 million been invested in one of the Comparator Funds, its value in 2024 would have ranged from approximately $503.32 million to $539.11 million (or an increase in value for participants of between approximately $38.43 million and $74.22 million).

116.   The foregoing return, 3, 5, and 10-year trailing return, and cumulative performance information is the information Defendants would have had available had they conducted a simple analysis evaluating the 2045 3M TDF vintage and compared its performance to the corresponding TDI and vintages of the Comparator TDFs.

117.   A prudent fiduciary monitoring the 2045 3M TDF vintage's performance would have compared the vintage's returns to returns to the S&P 2045 TDI and one or more of the Comparator Funds identified in Table 5.b and Table 5.c.

118.   When considering whether to retain a certain suite of TDFs in a plan, a prudent fiduciary would evaluate the TDF's risk and return characteristics as compared to the entire universe of TDFs available based on qualitative and quantitative.  A prudent

fiduciary could not have reasonably concluded that retention of the 2045 3M TDF vintage, or the 3M TDF Series as a whole, was appropriate for the Plans.

### 6. The 3M 2050 Vintage

119. The 3M 2050 TDF's underperformance has undermined the retirement savings of participants in the Plans since at least 2014. Table 6.a below illustrates the 2050 3M TDF vintage's performance as compared to the S&P 2050 TDI based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 6.a
3M 2050 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the 2050 TDI

| Fund / TDI | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| 3M 2050 TDF | 4.09% | -2.73% | 8.38% | 21.34% | -9.21% | 25.62% | 14.74% | 17.54% | -18.16% | 20.49% |
| 2050 TDI | 5.69% | -0.47% | 9.74% | 20.18% | -7.94% | 24.35% | 13.86% | 17.99% | -15.97% | 19.58% |
| *Alpha* | -1.6% | -2.26% | -1.36% | 1.16% | -1.27% | 1.27% | 0.88% | -0.45% | -2.19% | 0.91% |
| Trailing 3 years | - | - | -5.22% | -2.46% | -1.47% | 1.16% | 0.88% | 1.7% | -1.76% | -1.73% |
| Trailing 5 years | - | - | - | - | -5.33% | -2.46% | 0.68% | 1.59% | -1.76% | 0.42% |
| Trailing 10 years | - | - | - | - | - | - | - | - | - | -4.91% |

120. Table 6.b illustrates the 2050 3M TDF's performance as compared to the 2050 vintages of the Comparator TDFs based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 6.b
3M 2050 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the Comparator TDFs

| Fund | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| 3M 2050 TDF | 4.09% | -2.73% | 8.38% | 21.34% | -9.21% | 25.62% | 14.74% | 17.54% | -18.16% | 20.49% |
| T. Rowe 2050 TDF | 6.36% | 0.26% | 7.91% | 22.54% | -7.36% | 25.67% | 18.74% | 17.35% | -18.83% | 21.12% |
| Freedom 2050 TDF | 5.78% | -0.24% | 8.63% | 22.57% | -8.74% | 25.65% | 18.48% | 16.79% | -18.1% | 20.87% |
| Vanguard 2050 TDF | 7.29% | -1.53% | 8.96% | 21.48% | -7.82% | 25.07% | 16.45% | 16.6% | -17.44% | 20.25% |
| Am. Funds 2050 TDF | 7.02% | 0.65% | 8.33% | 22.61% | -5.61% | 25.04% | 19.42% | 17.27% | -18.89% | 20.83% |
| *Delta* | -2.52% | -2.51% | -0.08% | -0.96% | -1.83% | 0.26% | -3.53% | 0.53% | 0.15% | -0.28% |
| Trailing 3 years | - | - | -5.11% | -3.55% | -2.87% | -2.52% | -5.09% | -2.73% | -2.84% | 0.4% |
| Trailing 5 years | - | - | - | - | -7.9% | -5.12% | -6.13% | -5.52% | -4.4% | -2.86% |
| Trailing 10 years | - | - | - | - | - | - | - | - | - | -10.76% |

121. <u>Table 6.c</u> below illustrates the 2050 3M TDF vintage's cumulative compounded performance as compared to the 2050 vintages of the Comparator Funds and the S&P 2050 TDI:

Table 6.c<br>3M 2050 TDF<br>Cumulative Compounded Performance vs. the Comparator TDFs and 2050 TDI

| Fund / TDI | Cumulative Compounded Performance 2014 - 2023 | |
|---|---|---|
| | Cumulative Compound Performance | Underperformance vs. Comparator / TDI |
| 3M 2050 TDF | 101.95% | N/A |
| T. Rowe 2050 TDF | 124.89% | -22.94% |
| Freedom 2050 TDF | 120.69% | -18.74% |
| Vanguard 2050 TDF | 117.33% | -15.38% |
| Am. Funds 2050 TDF | 131.76% | -29.81% |
| *Delta* | 123.67% | -21.72% |

| Fund / TDI | Cumulative Compounded Performance 2014 - 2023 | |
| | Cumulative Compound Performance | Underperformance vs. Comparator / TDI |
| 2050 TDI | 114.39% | -12.44% |

122.    As of 2024, the assets in the 3M 2050 TDF had an approximate value of $405.85 million.  Assuming that amount resulted from a cumulative compound growth of 101.95%, the original amount in 2014 would have been approximately $200.96 million. Had $200.96 million been invested in one of the Comparator Funds, its value in 2024 would have ranged from approximately $436.75 million to $465.74 million (or an increase in value for participants of between approximately $30.9 million and $59.89 million).

123.    The foregoing return, 3, 5, and 10-year trailing return, and cumulative performance information is the information Defendants would have had available had they conducted a simple analysis evaluating the 2050 3M TDF vintage and compared its performance to the corresponding TDI and vintages of the Comparator TDFs.

124.    A prudent fiduciary monitoring the 2050 3M TDF vintage's performance would have compared the vintage's returns to returns to the S&P 2050 TDI and one or more of the Comparator Funds identified in Table 6.b and Table 6.c.

125.    When considering whether to retain a certain suite of TDFs in a plan, a prudent fiduciary would evaluate the TDF's risk and return characteristics as compared to the entire universe of TDFs available based on qualitative and quantitative.  A prudent fiduciary could not have reasonably concluded that retention of the 2050 3M TDF vintage, or the 3M TDF Series as a whole, was appropriate for the Plans.

7.  The 3M 2055 Vintage

126.    The 3M 2055 TDF's underperformance has undermined the retirement savings of participants in the Plans since at least 2014.  Table 7.a below illustrates the 2055 3M TDF vintage's performance as compared to the S&P 2055 TDI based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 7.a
3M 2055 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the 2055 TDI

| Fund / TDI | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | **2014** | **2015** | **2016** | **2017** | **2018** | **2019** | **2020** | **2021** | **2022** | **2023** |
| **3M 2055 TDF** | 3.99% | -2.72% | 8.34% | 21.39% | -9.3% | 25.82% | 14.94% | 17.77% | -18.3% | 20.88% |
| 2055 TDI | 5.64% | -0.54% | 9.94% | 20.48% | -7.97% | 24.48% | 13.86% | 18.19% | -15.97% | 19.62% |
| *Alpha* | -1.65% | -2.18% | -1.6% | 0.91% | -1.33% | 1.34% | 1.08% | -0.42% | -2.33% | 1.26% |
| **Trailing 3 years** | - | - | -5.43% | -2.87% | -2.02% | 0.92% | 1.09% | 2% | -1.67% | -1.49% |
| **Trailing 5 years** | - | - | - | - | -5.85% | -2.86% | 0.4% | 1.58% | -1.66% | 0.93% |
| **Trailing 10 years** | - | - | - | - | - | - | - | - | - | -4.92% |

127.    Table 7.b illustrates the 2055 3M TDF's performance as compared to the 2055 vintages of the Comparator TDFs based on: (i) yearly returns for the years 2014-2023; (ii) 3-year trailing returns for the years 2016-2023; (iii) 5-year trailing returns for the years 2015-2023; and (iv) 10-year trailing return for 2023:

Table 7.b
3M 2055 TDF
Annual and 3-Year, 5-Year, and 10-Year Trailing Returns vs. the Comparator TDFs

| Fund | Annual Performance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| **3M 2055 TDF** | 4.09% | -2.73% | 8.38% | 21.34% | -9.21% | 25.62% | 14.74% | 17.54% | -18.16% | 20.49% |
| T. Rowe 2055 TDF | 6.38% | 0.33% | 7.86% | 22.64% | -7.36% | 25.65% | 18.73% | 17.37% | -18.92% | 21.2% |
| Freedom 2055 TDF | 5.75% | -0.2% | 8.56% | 22.4% | -8.68% | 25.67% | 18.46% | 16.77% | -18.07% | 20.85% |
| Vanguard 2055 TDF | 7.27% | -1.63% | 8.98% | 21.48% | -7.83% | 25.09% | 16.42% | 16.61% | -17.43% | 20.23% |
| Am. Funds 2055 TDF | 7.01% | 0.63% | 8.3% | 22.63% | -5.65% | 25.09% | 19.39% | 17.28% | -19.5% | 21.4% |
| *Delta* | -2.61% | -2.5% | -0.09% | -0.9% | -1.92% | 0.45% | -3.31% | 0.76% | 0.18% | -0.04% |
| **Trailing 3 years** | - | - | -5.2% | -3.49% | -2.91% | -2.37% | -4.78% | -2.1% | -2.37% | 0.9% |
| **Trailing 5 years** | - | - | - | - | -8.02% | -4.96% | -5.77% | -4.92% | -3.84% | -1.96% |
| **Trailing 10 years** | - | - | - | - | - | - | - | - | - | -9.98% |

128.    Table 7.c below illustrates the 2055 3M TDF vintage's cumulative compounded performance as compared to the 2055 vintages of the Comparator Funds and the S&P 2055 TDI:

Table 7.c
3M 2055 TDF
Cumulative Compounded Performance vs. the Comparator TDFs and 2055 TDI

| Fund / TDI | Cumulative Compounded Performance 2014 – 2023 | |
|---|---|---|
| | Cumulative Compound Performance | Underperformance vs. Comparator / TDI |
| **3M 2055 TDF** | 102.96% | N/A |
| T. Rowe 2055 TDF | 125.05% | -22.09% |
| Freedom 2055 TDF | 120.42% | -17.46% |
| Vanguard 2055 TDF | 117.07% | -14.11% |
| Am. Funds 2055 TDF | 130.96% | -28% |
| *Delta* | 123.37% | -20.41% |
| 2055 TDI | 115.66% | -12.7% |

129.    As of 2024, the assets in the 3M 2055 TDF had an approximate value of $283.3 million.  Assuming that amount resulted from a cumulative compound growth of 102.96%, the original amount in 2014 would have been approximately $139.58 million. Had $139.58 million been invested in one of the Comparator Funds, its value in 2024 would have ranged from approximately $314.12 million to $322.37 million (or an increase in value for participants of between approximately $30.82 million and $39.07 million).

130.    The foregoing return, 3, 5, and 10-year trailing return, and cumulative performance information is the information Defendants would have had available had they conducted a simple analysis evaluating the 2055 3M TDF vintage and compared its performance to the corresponding TDI and vintages of the Comparator TDFs.

131.    A prudent fiduciary monitoring the 2055 3M TDF vintage's performance would have compared the vintage's returns to returns to the S&P 2055 TDI and one or more of the Comparator Funds identified in Table 7.b and Table 7.c.

132.    When considering whether to retain a certain suite of TDFs in a plan, a prudent fiduciary would evaluate the TDF's risk and return characteristics as compared to the entire universe of TDFs available based on qualitative and quantitative.  A prudent fiduciary could not have reasonably concluded that retention of the 2055 3M TDF vintage, or the 3M TDF Series as a whole, was appropriate for the Plans.

### D.    Defendants Violated Their ERISA Fiduciary Duties by Failing to Timely Remove the Consistently Underperforming 3M TDF Series

133.    Each of the Defendants is, or during the Class Period was, a fiduciary of the Plans under ERISA.    Accordingly, Defendants were obligated to vigorously and

independently investigate the merits of each of the investment options available to the Plans, using prudent methods in conducting such investigation. 29 U.S.C. §1104(a)(1)(B).

134.    Defendants selected the 3M TDF Series as the only target date option on the Plans in approximately 2006. Since then, participants who wanted to invest in a target date strategy have had no choice other than to invest in the 3M TDF Series. Post-selection, as fiduciaries of the Plans, Defendants were responsible for monitoring the 3M TDF Series performance with the skill of a prudent expert to determine whether its investment performance was in line with a meaningful investment index and funds within a recognized peer universe.

135.    As demonstrated, the 3M TDF Series have consistently underperformed its peer benchmarks on a trailing-three-years basis for at least eight consecutive years (2016-2023), on a trailing five-years-basis for at least five consecutive years (2018-2023), on a trailing ten-years-basis by 2023, and on a cumulative compounded basis. Indeed, if participants had invested their funds in one of the Comparator Funds in 2014, by 2024, those same amounts would have made, on average, approximately $416 million more than those same funds made invested in the 3M TDF Series.[12] Had Defendants fulfilled their duty with the care and skill of a prudent fiduciary, they would have seen in real-time that

---

[12]    This calculation uses the 2014 estimated original investment amounts in each of the vintages, *see supra* ¶¶ 87, 94, 101, 108, 115, 122, and 129, calculates how those original amounts would have grown using the Comparator Funds' average performance data (*delta*) exhibited in Tables 1.c, 2.c, 3.c, 4.c, 5.c, 6.c, and 7.c ($4.196 billion), and subtracts the approximate value of the funds in the 3M TDF Series as of 2024 from that amount ($4.196 billion - $3.78 billion = $416 million).

the 3M TDF Series underperformed its benchmarks. *See, e.g.*, *Snyder*, 2021 U.S. Dist. LEXIS 230878, at *12-13 (finding analyses as to indices and comparable benchmarks "bolster the plausible allegations of imprudence because they increase the likelihood that Defendants were aware, prior to and during the Class Period, that their funds were significantly inferior to other readily available investments in the marketplace").

136.    Despite years of underperformance and a marketplace teeming with hundreds of better performing investment options, Defendants did not remove the 3M TDF Series from the Plans.

137.    The Defendants' decision to retain the 3M TDF Series was as imprudent as it was injurious to the Plans and their participants.  Eight years of underperformance in comparison to peer benchmarks is difficult, if not impossible, to justify.

138.    Defendants breached their fiduciary duty of prudence by retaining the 3M TDF Series—resulting in a devastating impact on Plaintiffs' and their fellow participants' retirement accounts, simultaneously impairing the Plans' overall investment performance and wasting millions in retirement savings.

139.    Any fiduciary would have seen that the poor performance of the 3M TDF Series warranted the selection of a new target date option—particularly given that such underperformance was sustained for nearly a decade.  However, 3M appears to have had an additional interest in keeping these investment options in the Plans—its Investment Committee and/or subsidiary, 3M IMCO, served as an "investment advisor" to the 3M TDF Series funds and consequently receives substantial direct and indirect compensation for providing investment advice and management services to the Plans' participants.

140.    The Defendants' breaches have had a profound adverse effect on the Plans and their participants.    The overall breadth and depth of the 3M TDF Series' underperformance raises a plausible inference that 3M's selection and monitoring process was tainted by a lack of competency and/or complete failure of effort.

## CLASS ACTION ALLEGATIONS

141.    Plaintiffs bring this action as a class action on behalf of all participants and beneficiaries of the Plans pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2) and/or (b)(3).  Specifically, Plaintiffs bring this action on behalf of:

> All participants and beneficiaries of the Plans who, from August 7, 2019 through the date of judgment, invested in one or more of the following seven vintages of the 3M TDF Series: (1) 3M LifePath 2025; (2) 3M LifePath 2030 Portfolio; (3) 3M LifePath 2035 Portfolio; (4) 3M LifePath 2040 Portfolio; (5) 3M LifePath 2045 Portfolio; (6) 3M LifePath 2050 Portfolio; or (7) 3M LifePath 2055 Portfolio.  The Class excludes Defendants, any officers and directors of 3M, at all relevant times or employees with responsibility for the Plans' investment or administrative functions, and members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

142.    This action may be certified as a Class under Rule 23(a)(1) as a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the 3M Defendants in respect to the discharge of their fiduciary duties to the Plans and personal liability to the Plans under 29 U.S.C. § 1109(a).  Moreover, adjudications by individual participants and beneficiaries

regarding the alleged breaches of fiduciary duties, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

143. Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Plaintiffs seek reformation of the Plans to make them more viable retirement investment options, which will benefit them and other participants in the Plans.

144. Additionally, or in the alternative, this action may be certified as a Class under Rule 23(b)(3). The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are approximately 58,000 members of the proposed Class. Members of the Class may be identified from records maintained by 3M and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

145. Plaintiffs' claims are typical of the claims of the members of the Class as Plaintiffs were each participants during the Class Period and all participants in the Plans were harmed by Defendants' misconduct.

146.    Plaintiffs will fairly and adequately protect the interests of the members of the Class as they each participated in the Plans during the Class Period, are committed to vigorous representation of the Class, and have retained counsel competent and experienced in class litigation.  Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

147.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class because Defendants owed the same fiduciary duties to the Plans and all participants and beneficiaries and took a common course of actions and omissions as alleged herein as to the Plans, and not as to any individual participant, that affected all Class members through their participation in the Plans in the same way.  Among the questions of law and fact common to the Class are:

(a)    whether each of the Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a);

(b)    whether the fiduciaries of the Plans breached their fiduciary duties to the Plans by employing an imprudent process for monitoring and evaluating Plans' investment options;

(c)    whether Plaintiffs' claims of an imprudent process require similar inquiries and proof of the claims and therefore implicate the same set of concerns for all proposed members of the Class;

(d)    what are the losses to the Plans resulting from each breach of fiduciary duty;

(e)    what Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duties; and

(f)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

148.    Additionally, or in the alternative, this action may be certified as a Class under Rule 23(b)(3).  A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and it is impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no Class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action.

## CAUSES OF ACTION

## COUNT I

**Breach of Duty of Prudence for Failing to Remove Imprudent Investments from the Plans Within a Reasonable Time**
**(Violation of ERISA, 29 U.S.C. § 1104)**
**(Against All Defendants)**

149.    All allegations set forth in the Complaint are realleged and incorporated herein by reference.

150.    3M used the Plans as a strategic and financial benefit to recruit and retain workers.

151.    In joining 3M and subsequently enrolling in the Plans, employees trusted and relied on 3M's resources and expertise to construct and maintain a state-of-the-art retirement plan.

152.    At all relevant times during the Class Period, Defendants acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) by exercising authority and control with respect to the management of the Plans and their assets.

153.    29 U.S.C. § 1104(a)(1)(B) requires a plan fiduciary to act with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

154.    Thus, the scope of the fiduciary duties and responsibilities of Defendants include administering the Plans with the care, skill, diligence, and prudence required by ERISA.  Defendants are responsible for evaluating and monitoring the Plans' investment options on an ongoing basis, eliminating imprudent investments, and taking all necessary steps to ensure the Plans' assets are invested prudently.

155.    Defendants breached their fiduciary duties by adopting an imprudent process for evaluating and monitoring investment options in the Plans.  The faulty process resulted in the Plans' inclusion of a suite of target date funds—the 3M TDF Series—that has exhibited chronic poor performance for nearly a decade.  Defendants failed to remove the 3M TDF Series despite historical underperformance relative to meaningful benchmarks and relevant benchmark indices.

156.    By failing to adequately consider better-performing investment products for the Plans, Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

157.    Defendants' breach of fiduciary duty has substantially impaired the Plans' use, their values, and their investment performance for all Class Members.

158.    As a direct and proximate result of Defendants' breaches of fiduciary duty, the Plans and their participants who invested in the 3M TDF Series have suffered tens of millions of dollars of damages and lost-opportunity costs which continue to accrue and for which Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a).

159.    Each of the Defendants is liable to make good to the Plans the losses resulting from the aforementioned breaches, to restore to the Plans any profits resulting from the breaches of fiduciary duties alleged in this Count, and are subject to other equitable or remedial relief as appropriate.

160.    Each Defendant also participated in the breach of the other 3M Defendants, knowing that such acts were a breach, and enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties. Each Defendant knew of the breach by the other Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach.  Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary duties under 29 U.S.C. § 1105(a).

## COUNT II

### Failure to Monitor
### (Against All Defendants)

161.    All allegations set forth in the Complaint are realleged and incorporated herein by reference.

162.    Defendants had a duty to monitor the performance of each individual to whom they delegated any fiduciary responsibilities.  A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of the Plans' assets, and must take prompt and effective action to protect the Plans and participants when they are not.

163.    To the extent any Defendant's fiduciary responsibilities were delegated to another fiduciary, such Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

164.    Defendants breached their fiduciary monitoring duties by, among other things:

(a)    failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plans suffered enormous losses as a result of their appointees' imprudent actions and omissions with respect to the Plans;

(b)    failing to monitor their appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

(c)    failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that the investment options were prudent; and

(d)    failing to remove appointees whose performance was inadequate in that they continued to allow imprudent investment options to remain in the Plans to the detriment of Plans' participants' retirement savings.

165.    Each fiduciary who delegated its fiduciary responsibilities likewise breached its fiduciary monitoring duty by, among other things:

(a)    failing to monitor its appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plans suffered enormous losses as a result of its appointees' imprudent actions and omissions with respect to the Plan;

(b)    failing to monitor its appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

(c)    failing to implement a process to ensure that the appointees monitored the performance of Plan investments; and

(d)    failing to remove appointees whose performance was inadequate in that they continued to allow imprudent investment options to remain in the Plans, all to the detriment of Plan participants' retirement savings.

166.    As a direct result of these breaches of the fiduciary duty to monitor, the Plans suffered substantial losses. Had 3M and the other delegating fiduciaries prudently

discharged their fiduciary monitoring duties; the Plans would not have suffered these losses.

## **PRAYER FOR RELIEF**

For these reasons, Plaintiffs, on behalf of the Plans and all similarly situated Plan Participants and beneficiaries, respectfully request that the Court:

i)      find and adjudge that Defendants have breached their fiduciary duties, as described above;

ii)     find and adjudge that Defendants are personally liable to make good to the Plans the losses to the Plans resulting from each breach of fiduciary duty, and to otherwise restore the Plans to the positions they would have occupied but for the breaches of fiduciary duty;

iii)    find and adjudge that Defendants are liable to the Plans for appropriate equitable relief, including but not limited to restitution and disgorgement;

iv)     determine the method by which the Plans' losses under 29 U.S.C. § 1109(a) should be calculated;

v)      order Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plans under 29 U.S.C.§ 1109(a);

vi)     remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

vii)    impose surcharge against Defendants and in favor of the Plans all amounts involved in any transactions which such accounting reveals were improper, excessive, and/or in violation of ERISA;

viii)   reform the Plans to include only prudent investments;

ix)   certify the Class, appoint Plaintiffs as class representatives, and appoint Kahn Swick & Foti, LLC as Class Counsel;

x)   award to the Plaintiffs and the Class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

xi)   order Defendants to pay interest to the extent allowed by law; and

xii)   grant such other equitable or remedial relief as the Court deems appropriate.

Dated:  August 7, 2025

*/s/ David W. Asp*
David W. Asp
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4091
Facsimile: (612) 339-0981
Email: dwasp@locklaw.com

- AND -

Melinda A. Nicholson
Nicolas Kravitz
John A. Carriel
**KAHN SWICK & FOTI, LLC**
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 648-1842
Facsimile: (504) 455-1498
Email: melinda.nicholson@ksfcounsel.com
Email: nicolas.kravitz@ksfcounsel.com
Email: john.carriel@ksfcounsel.com

*Attorneys for Plaintiffs, the Plans, and the Proposed Class*