# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

JENNIFER BATT, et al.,

             Plaintiffs,

    v.

3M COMPANY, et al.,

             Defendants.

Case No. 25-cv-03149 (ECT/DTCS)

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 3 |
| | A. | The Plans and Alleged Roles | 3 |
| | B. | 3M LifePath Target Date Funds | 5 |
| | | 1. Overview of Target-Date Funds | 5 |
| | | 2. 3M's Custom Target-Date Funds | 6 |
| | C. | Plaintiffs' Allegations | 9 |
| III. | LEGAL STANDARD | 9 |
| IV. | ARGUMENT | 10 |
| | A. | Plaintiffs Fail to Plead a Meaningful Benchmark | 10 |
| | | 1. Courts Have Rejected Plaintiffs' Off-the-Shelf Comparators | 12 |
| | | 2. Morningstar Categories Do Not Salvage the Off-the-Shelf Comparators | 18 |
| | | 3. S&P Target Date Indices Are Not Meaningful Benchmarks | 20 |
| | B. | Plaintiffs' Allegations of Underperformance Do Not State a Claim | 21 |
| | C. | Plaintiffs' Derivative Monitoring Claim Also Fails | 23 |
| V. | CONCLUSION | 24 |

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abel v. CMFG Life Ins. Co.*,
No. 22-cv-449-wmc, 2024 U.S. Dist. LEXIS 14535
(W.D. Wis. Jan. 26, 2024) ............................................................................. 7, 12, 17, 23

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) .................................................................................. 11, 23

*Anderson v. Advance Publications, Inc.*,
No. 22 Civ. 6826 (AT), 2023 U.S. Dist. LEXIS 102243
(S.D.N.Y. June 13, 2023) ............................................................................................. 12

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025) ............................................................................... 11, 13

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
579 F. Supp. 3d 1133 (N.D. Cal. 2022) ......................................................................... 8

*Antoine v. Marsh & McLennan Cos.*,
No. 22 Civ. 6637 (JPC), 2023 U.S. Dist. LEXIS 176561
(S.D.N.Y. Sept. 30, 2023) ..................................................................................... 12, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 9

*Beldock v. Microsoft Corp.*,
No. C22-1082-JLR, 2023 U.S. Dist. LEXIS 71233
(W.D. Wash. Apr. 24, 2023) ............................................................................ 12, 20, 24

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 9

*Bracalente v. Cisco Sys., Inc.*,
No. 22-cv-04417-EJD, 2024 U.S. Dist. LEXIS 90338
(N.D. Cal. May 20, 2024) ...................................................................................... 12, 14

*Davis v. Wash. Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ....................................................... 3, 4, 11, 13, 14, 16, 20

ii

*Dorman v. Charles Schwab Corp.*,
No. 17-cv-00285-CW, 2019 U.S. Dist. LEXIS 34058
(N.D. Cal. Feb. 8, 2019) .............................................................................................. 23

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ...................................................................................................... 9

*Fitzpatrick v. Neb. Methodist Health Sys., Inc.*,
No. 8:23-CV-27, 2023 U.S. Dist. LEXIS 140060
(D. Neb. Aug. 9, 2023) ................................................................................................ 19

*Fritton v. Taylor Corp.*,
No. 22-cv-00415 (ECT/TNL), 2022 U.S. Dist. LEXIS 222996
(D. Minn. Dec. 12, 2022) (Tostrud, J.) ...................................................... 3, 4, 8, 11, 13

*Fritton v. Taylor Corp.*,
No. 22-cv-00415 (ECT/TNL), 2023 U.S. Dist. LEXIS 145940
(D. Minn. Aug. 21, 2023) (Tostrud, J.) ............................................. 1, 9, 11, 17, 19, 22

*Hall v. Capital One Fin. Corp.*,
No. 1:22-cv-00857-MSN-JFA, 2023 U.S. Dist. LEXIS 35391
(E.D. Va. Mar. 1, 2023) ......................................................................................... 12, 20

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022) .................................................................................................... 10

*Johnson v. Parker-Hannifin Corporation*,
122 F.4th 205 (6th Cir. 2024) ..................................................................................... 21

*Kistler v. Stanley Black & Decker, Inc.*,
No. 3:22-cv-966 (SRU), 2024 U.S. Dist. LEXIS 117419
(D. Conn. July 3, 2024) ............................................................................................... 13

*Lard v. Marmon Holdings, Inc.*,
No. 22 cv 04332, 2025 U.S. Dist. LEXIS 90776
(N.D. Ill. May 13, 2025) .............................................................................................. 23

*Locascio v. Fluor Corporation*,
No. 3:22-CV-0154-X, 2023 U.S. Dist. LEXIS 9162
(N.D. Tex. Jan. 18, 2023) ............................................................................................ 13

*Luckett v. Wintrust Fin. Corp.*,
No. 22-cv-03968, 2023 U.S. Dist. LEXIS 121362
(N.D. Ill. July 14, 2023) .................................................................... 7, 12, 14, 16, 17, 23

*Matney v. Barrick Gold of N. Am.*,
  80 F.4th 1136 (10th Cir. 2023) ..................................................................................... 11

*Matousek v. MidAmerican Energy Co.*,
  51 F.4th 274 (8th Cir. 2022) .......................................... 1, 3, 4, 8, 10, 11, 13, 15, 20, 21

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ........................................................... 1, 10, 11, 16, 20, 22

*Meiners v. Wells Fargo & Co.*,
  No. 16-3981 (DSD/FLN), 2017 U.S. Dist. LEXIS 80606
  (D. Minn. May 25, 2017) ............................................................................................. 15

*Miller v. Redwood Toxicology Lab, Inc.*,
  688 F.3d 928 (8th Cir. 2012) ......................................................................................... 3

*Parmer v. Land O'Lakes, Inc.*,
  518 F. Supp. 3d 1293 (D. Minn. 2021) .................................................................. 16, 17

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) .......................................................................................... 10

*Phillips v. Cobham Advanced Elec. Sols., Inc.*,
  No. 23-cv-03785-EKL, 2025 U.S. Dist. LEXIS 184960
  (N.D. Cal. Sept. 19, 2025) ............................................................................................ 20

*Riley v. Olin Corp.*,
  No. 4:21-cv-01328-SRC, 2023 U.S. Dist. LEXIS 11771
  (E.D. Mo. Jan. 24, 2023) ........................................................................... 18, 19, 22, 23

*Rosenkranz v. Altru Health Sys.*,
  No. 3:20-cv-168, 2021 U.S. Dist. LEXIS 237791
  (D.N.D. Dec. 10, 2021) ........................................................................................... 17, 18

*Schave v. CentraCare Health Sys.*,
  No. 22-cv-1555 (WMW/LIB), 2023 U.S. Dist. LEXIS 13786
  (D. Minn. Jan. 27, 2023) ............................................................................................. 15

*Singh v. Deloitte LLP*,
  123 F.4th 88 (2d Cir. 2024) ......................................................................................... 11

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) ................................................................. 6, 11, 16, 22, 23

*Snyder v. UnitedHealth Grp., Inc.*,
   No. 21-1049 (JRT/BRT), 2021 U.S. Dist. LEXIS 230878
   (D. Minn. Dec. 2, 2021) ................................................................................................ 19

*Trauernicht v. Genworth Fin., Inc.*,
   No. 3:22-cv-532, 2023 U.S. Dist. LEXIS 162470
   (E.D. Va. Sept. 12, 2023) ............................................................................................. 13

*Tullgren v. Booz Allen Hamilton, Inc.*,
   No. 1:22-cv-00856-MSN-IDD, 2023 U.S. Dist. LEXIS 34462
   (E.D. Va. Mar. 1, 2023) ............................................................................................... 12

*Wehner v. Genentech, Inc.*,
   No. 20-cv-06894-WHO, 2021 U.S. Dist. LEXIS 111341
   (N.D. Cal. June 14, 2021) ........................................................................................ 8, 20

*Wehner v. Genentech, Inc*.,
   No. 24-2630, 2025 U.S. App. LEXIS 22469 (9th Cir. Sept. 2, 2025) .......................... 11

**Statutes**

29 U.S.C. § 1104 ............................................................................................................. 10

## I.    INTRODUCTION

Plaintiffs challenge the prudence of maintaining the 3M LifePath target-date funds as investment options in two retirement plans sponsored by 3M Company. Under well-established law, to survive a motion to dismiss, a complaint alleging imprudence in an ERISA plan's investment lineup must identify "a meaningful benchmark"—a comparator holding similar securities, following a comparable strategy, and reflecting a similar risk profile. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822–23 (8th Cir. 2018); *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278–81 (8th Cir. 2022).

Since the Eighth Circuit established this pleading requirement, courts in this Circuit and nationwide have applied it repeatedly. Indeed, in *Fritton v. Taylor Corporation* ("*Fritton II*"), this Court applied the "meaningful benchmark" standard and dismissed multiple comparator-based theories—including an investment performance claim—because plaintiffs had not pled apt comparators. No. 22-cv-00415 (ECT/TNL), 2023 U.S. Dist. LEXIS 145940, at *4–21, 23–27 (D. Minn. Aug. 21, 2023) (Tostrud, J.). So too here, Plaintiffs have failed to satisfy the meaningful benchmark standard. The comparisons they proffer in their Complaint are simply too different from the 3M TDFs in multiple respects—any one of which is independently sufficient to warrant dismissal on its own—to clear the bar established in *Meiners* and *Matousek* and correctly applied by this Court in *Fritton*.

Namely, Plaintiffs' Complaint fails to satisfy the meaningful benchmark standard because it compares the 3M LifePath funds to fundamentally different target-date suites offered by other providers and to non-investable composite indices. None qualifies as a

1

meaningful benchmark under *Meiners* and *Matousek*. The so-called comparators selected by Plaintiffs have different structures, management styles, and glide paths than the 3M funds—differences that foreclose the kind of like-for-like comparison the law requires. The indices fare no better: they are not investable securities like the 3M funds but composites of *divergent* strategies and risk profiles.

These differences matter because target-date funds are lifecycle funds. They are designed to evolve over decades, shifting allocations to meet the changing needs of participants. In the early years of a participant's career, they emphasize growth through heavier equity exposure. As retirement approaches, they prioritize protection by gradually de-risking into bonds and other conservative assets. At the target date, the funds are structured to support sustainable withdrawals for retirement income. Because these design choices vary broadly, target-date funds are not interchangeable, and differences in glide path and management style directly affect performance and risk. Comparisons across such divergent approaches are not meaningful benchmarks under *Meiners* and *Matousek*.

Beyond the wrong comparators, Plaintiffs also rely on hindsight-driven performance critiques. Their allegations rest on trailing-return charts that ignore the funds' long-term design and say nothing about fiduciary process, rendering them insufficient under the law.

The Complaint also makes key admissions that undermine Plaintiffs' claims. Plaintiffs acknowledge that the 3M funds were modeled on BlackRock's LifePath Index series—one of the most widely used target-date strategies nationwide and a fund family

2

consistently recognized by Morningstar with its highest "Gold" rating. The Complaint

further acknowledges that the 3M funds met or beat their own custom benchmarks—a

concession that undercuts any inference of imprudence.

In short, Plaintiffs' Complaint fails to state a claim because it relies on

mismatched comparators and hindsight-driven charts, while failing to allege any

deficiencies in fiduciary process. Dismissal with prejudice is the correct outcome.

## II.    BACKGROUND

### A.    The Plans and Alleged Roles

3M Company is a diversified global technology company headquartered in Saint

Paul, Minnesota. *See* About 3M, 3M Company website, https://www.3m.com/3M/en_US/

company-us/about-3m/ (last visited Oct. 3, 2025), attached hereto as Exhibit 1.[1]

The Complaint concerns two different retirement savings plans sponsored by 3M.

The 3M Voluntary Investment Plan and Employee Stock Ownership Plan (the "VIP") is a

defined contribution plan covering substantially all non-union employees of 3M and its

subsidiaries. *See* Ex. 2 (2023 Form 5500, 3M Voluntary Investment Plan & Employee

Stock Ownership Plan), Notes to 2023 Financial Statements, at 8.[2] The 3M Savings Plan

---

[1] Exhibits are attached to the declaration of Rajin S. Olson filed concurrently herewith.

[2] In deciding a motion to dismiss, the Court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012). Consistent with this rule, the Eighth Circuit has held that Form 5500 filings may be considered at the Rule 12(b)(6) stage when, as here, they are referenced in or integral to the complaint. *Matousek*, 51 F.4th at 279 (citing *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 n.3 (8th Cir. 2020)); *see also Fritton v. Taylor Corp.* ("*Fritton I*"), No. 22-cv-00415 (ECT/TNL), 2022 U.S. Dist. LEXIS

(the "Savings Plan") is a collectively-bargained plan created for union employees. *See*

Ex. 3 (2023 Form 5500, 3M Savings Plan), Notes to 2023 Financial Statements, at 8.

Together, the VIP and the Savings Plan are referred to in the Complaint as the "Plans" or

jointly as "the Plan." Compl. at Introduction and at *¶¶* 16–19.

The assets of both Plans are held in a common master trust. *See* Ex. 4 (2023 Form

5500, 3M VIP & Savings Plan Trust). The Plans provide participants a broad array of

investment options offering varying risk and return profiles, including the at-issue TDFs,

bond funds with diverse investment composition, and several index funds providing

access to a number of markets and indices. *See* Ex. 5 (2023 Participant Fee Disclosure for

3M Voluntary Investment Plan and Employee Stock Ownership Plan and the 3M Savings

Plan) at 1, 4–5.[3]

The Complaint states that 3M is both the sponsor and a named fiduciary of the

Plans. Compl. ¶ 21. Plaintiffs allege that 3M appointed the Benefits Fund Investment

Committee ("BFIC") to oversee the Plans' investment lineup, and that 3M Investment

Management Corporation ("IMC")—a wholly owned subsidiary and registered

investment adviser—acted as investment manager for the 3M target-date funds. Compl.

---

222996, at \*18–20 (D. Minn. Dec. 12, 2022) (Tostrud, J.) (considering Form 5500 filings
on a motion to dismiss). The Complaint likewise references the Plans' Form 5500 filings.
*See* ECF No. 1 (Complaint, hereinafter "Compl.") ¶¶ 42–43, 66.

[3] Participant fee disclosures may likewise be considered at the Rule 12(b)(6) stage when
they are referenced in or integral to the complaint. *Matousek*, 51 F.4th at 279 (citing
*Davis*, 960 F.3d at 484 n.3); *see also Fritton I*, 2022 U.S. Dist. LEXIS 222996, at \*19
(considering participant disclosures on a motion to dismiss). The Complaint references a
participant fee disclosure provided to participants in the VIP and the Savings Plan.
Compl. ¶ 68.

¶¶ 8, 24, 25.[4]

The Complaint alleges Plaintiffs were participants in "the Plan." *Id.* ¶¶ 16–19.[5]

### B.    3M LifePath Target Date Funds

#### 1.    Overview of Target-Date Funds

This case centers on target-date funds ("TDFs"), a type of retirement investment vehicle widely used in defined contribution plans. TDFs are designed to provide participants with a single diversified investment option that automatically rebalances to become more conservative as retirement approaches. Compl. ¶¶ 46–47; *see also* U.S. Dep't of Labor, Target Date Retirement Funds—Tips for ERISA Plan Fiduciaries (Feb. 2013), https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/fact-sheets/target-date-retirement-funds-erisa-plan-fiduciaries-tips.pdf, attached as Ex. 6. The gradual shift in allocation over time is referred to as the fund's "glide path." Compl. ¶ 47.

The U.S. Department of Labor ("DOL") has recognized that "there are considerable differences among TDFs offered by different providers, even among TDFs with the same target date." Ex. 6 at 1. Those differences can include "different

---

[4] The Complaint misstates the fiduciary structure of the Plans during the putative class period in various respects. For purposes of Rule 12(b)(6), however, those misstatements are immaterial. Plaintiffs' theory rests on hindsight performance allegations, not on how fiduciary responsibilities were allocated.

[5] The Complaint does not specify whether Plaintiffs participated in the VIP or the Savings Plan, the latter being a defined contribution plan for union employees. *See* Ex. 3, Notes to 2023 Financial Statements, at 8. The Complaint nowhere alleges that any Plaintiff was a union employee or otherwise eligible to participate in that plan. *See* Compl. ¶¶ 16–19 (listing Plaintiffs' job titles).

investment strategies, glide paths, and investment-related fees." *Id.* Such differences "can significantly affect the way a TDF performs." *Id.*

One of the most important distinctions among TDFs is the design of the fund's glide path. A "to" approach reduces equity exposure over time to its most conservative point at the target date. Ex. 6 at 1. In contrast, a "through" approach reduces equity exposure through (or past) the target date so it does not reach its most conservative point until years later. *Id.*

Target-date funds are also offered in different structures, including mutual funds and collective investment trusts ("CITs"). Ex. 7 (Morningstar 2020 Target-Date Strategy Landscape Report) at 1.[6] CITs are available only to qualified retirement plans and, unlike mutual funds, are regulated under ERISA rather than the Investment Company Act of 1940. *Id.* at 9. Because CITs permit negotiated pricing, they often allow large retirement plans to secure lower fees for participants and offer greater flexibility in structure. *Id.* at 9–10. In addition to structural differences, TDFs may be offered as off-the-shelf products or as a custom series designed for a particular plan. Ex. 6 at 3.

### 2.    3M's Custom Target-Date Funds

The Plans' target-date option is a custom series—the 3M LifePath Target-Date Funds ("3M TDFs")—offered exclusively to participants. They were designed to provide

---

[6] The Complaint states that "Morningstar is a leading provider of investment research and is commonly relied upon by industry professionals." Compl. ¶ 73 n.8. Courts have likewise considered Morningstar's Target-Date Strategy Landscape report at the pleading stage. *See, e.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160 at 1168 (6th Cir. 2022) (citing Morningstar's 2021 Target-Date Strategy Landscape report, attached hereto as Exhibit 8).

a low-cost target-date solution tailored for 3M's retirement plans and their participants—3M's current and former employees.

Plaintiffs allege these funds were "modeled after" the BlackRock LifePath Index Funds (the "BlackRock LifePath TDFs" or the "BlackRock TDFs"). Compl. ¶ 59. The BlackRock LifePath TDFs are a widely used, passively managed series of target-date funds. *See* Ex. 10 (Morningstar, 2025 Target-Date Strategy Landscape Report) at 3 (showing BlackRock was among the top TDF providers by 2024 net inflows); *Luckett v. Wintrust Fin. Corp.*, No. 22-cv-03968, 2023 U.S. Dist. LEXIS 121362, at *10 (N.D. Ill. July 14, 2023) (noting that "[the] BlackRock TDFs are passively-managed").[7]

The BlackRock TDFs employ a "to retirement" glide path, reaching their most conservative allocation at the target date. Compl. ¶¶ 47–48 (illustrating the BlackRock TDF glide path reaching about 40% equity at retirement, consistent with a "to" approach). Morningstar has consistently awarded the LifePath Index series its highest "Gold" rating. *See, e.g.*, Ex. 7 at 23 (Mar. 2020); Ex. 8 at 10 (Mar. 2021); Ex. 9 (Morningstar, 2022 Target-Date Strategy Landscape Report) at 19 (Mar. 2022); Ex. 10 at 28–29 (Mar. 2025); *see also Abel v. CMFG Life Ins. Co.*, No. 22-cv-449-wmc, 2024 U.S. Dist. LEXIS 14535, at *5 & n.2 (W.D. Wis. Jan. 26, 2024) (noting Morningstar's "Gold" rating for the BlackRock TDFs).

---

[7] For context, the 3M TDFs are composed of predominantly passive strategies. The Plans' Form 5500 filings reflect that the master trust—from which the 3M TDFs are constructed—holds billions of dollars in index funds. Ex. 4 at 12 (Schedule of Assets) (listing index funds such as the BlackRock Equity Index Fund and MSCI ACWI ex-US IMI Index Fund).

The 3M TDFs share these core features with their BlackRock counterparts. They follow a "to retirement" glide path. *See, e.g.*, Ex. 11 (3M LifePath 2040 Portfolio Fund Fact Sheet) at 1 (showing the 3M TDF glide path reaching about 40% equity and 60% bonds at retirement).[8] They are organized as low-cost CITs, with expense ratios ranging from 0.08% to 0.17%. *See* Ex. 5 at 4 (listing expense ratios); *see also* Ex. 4 at 7 (Form 5500 reporting nearly $9 billion in CITs in the Plans' master trust, which encompasses the 3M TDFs).

The Complaint notes that the performance of each vintage of the 3M TDFs was measured against a disclosed custom benchmark. Compl. ¶ 68; *see also* Ex. 5 at 4 (participant fee disclosure showing each 3M TDF with its custom blended benchmark and performance figures). According to the Complaint, those benchmarks were constructed as weighted blends of market indices designed to mirror the funds' asset allocation strategy. Compl. ¶ 69. Plaintiffs acknowledge that, measured against those benchmarks, the 3M TDFs generally matched or outperformed over one-, five-, and ten-

---

[8] Participants can access the 3M LifePath Fact Sheets either through 3M's intranet site, which links to the Plan's recordkeeper's portal, or directly on the recordkeeper's website. Courts in this Circuit have treated participant-facing plan materials as "embraced by the pleadings" and consider them at the Rule 12(b)(6) stage. *See, e.g.*, *Matousek*, 51 F.4th at 279 (participant fee disclosures "embraced by the pleadings" and considered at 12(b)(6)); *Fritton I*, 2022 U.S. Dist. LEXIS 222996, at *18–20 (considering participant disclosures as documents necessarily embraced by the pleadings). Courts have also considered custom target-date fund fact sheets at the pleadings stage. *See, e.g.*, *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1145–46 (N.D. Cal. 2022) (considering Intel custom TDF fact sheets on a motion to dismiss); *Wehner v. Genentech, Inc.*, No. 20-cv-06894-WHO, 2021 U.S. Dist. LEXIS 111341, at *9–10 (N.D. Cal. June 14, 2021) (considering Roche custom TDF fact sheets under incorporation-by-reference doctrine).

year periods. *Id.*

### C.   Plaintiffs' Allegations

The Complaint does not include allegations about the fiduciary process for selecting or monitoring the Plans' TDFs. Instead, Plaintiffs rely on backward-looking performance comparisons covering only seven vintages (2025–2055) to attempt to establish that plan fiduciaries breached the duty of prudence. Compl. ¶¶ 83–131.[9]

Plaintiffs' theory relies on three sets of comparisons. First, they compare the 3M TDFs' performance to that of four off-the-shelf suites—Vanguard, Fidelity, T. Rowe Price, and American Funds. Compl. ¶ 79. Second, they cite Morningstar categories to reinforce their off-the-shelf comparisons by grouping those funds as peers. *Id.* ¶ 78. Third, they make performance comparisons to the S&P Target Date Indices. *Id.* ¶ 74. Plaintiffs also criticize the Plans' use of custom blended benchmarks, contending that those benchmarks "should not be relied upon." *Id.* ¶ 71.

## III.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must satisfy the pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *Accord Fritton II*, 2023 U.S. Dist. LEXIS 145940, at \*4 (reciting and applying *Twombly/Iqbal* to a Rule 12(b)(6) motion to dismiss an ERISA complaint). At the pleading stage, the Supreme Court has directed judges to apply "careful, context-sensitive scrutiny" to "weed out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*,

---

[9] Plaintiffs omit other vintages such as the Retirement, 2020, 2060, and 2065 vintages. Compl. ¶ 3 n.1.

9

573 U.S. 409, 425 (2014); *see also Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (observing that "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous," creating pressure to settle regardless of merit).

ERISA's duty of prudence requires that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Consistent with that text, courts emphasize that prudence is judged by process, not by results. *Matousek*, 51 F.4th at 278. And the Supreme Court has confirmed that ERISA fiduciaries operate within a "range of reasonable judgments," to which courts must give "due regard." *Hughes v. Nw. Univ.*, 595 U.S. 170, 176–77 (2022).

## IV.    ARGUMENT

### A.    Plaintiffs Fail to Plead a Meaningful Benchmark

At the pleading stage, the Eighth Circuit requires ERISA plaintiffs to identify "a sound basis for comparison—a meaningful benchmark." The foundational case is *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018). In *Meiners*, the plaintiff challenged Wells Fargo's TDFs by comparing them to a Vanguard suite with a different strategy. The Eighth Circuit affirmed dismissal, concluding that such a mismatch could not support a prudence claim. *Id.* at 822–23.[10]

---

[10] Most courts of appeals nationwide have embraced the same principle *Meiners* articulated, rejecting claims that rely on mismatched comparators at the pleading stage.

The Eighth Circuit has reinforced this rule in multiple decisions. In *Matousek v. MidAmerican Energy Company*, 51 F.4th at 281, the court held that a valid benchmark must involve funds that "hold similar securities, have similar investment strategies, and reflect a similar risk profile." Likewise, in *Davis v. Washington University in St. Louis*, 960 F.3d at 484–85, the court, applying *Meiners*, rejected claims resting only on fees or relative performance without a meaningful comparator. Consistent with this framework, this Court has likewise dismissed claims premised on mismatched comparators pursuant to Rule 12(b)(6). *See Fritton I*, 2022 U.S. Dist. LEXIS 222996, at *18–27 (dismissing recordkeeping-fee claim for lack of meaningful benchmark); *Fritton II*, 2023 U.S. Dist. LEXIS 145940, at *4–21, *23–27 (rejecting recordkeeping fee, investment fee, and performance comparators as mismatched benchmarks).

Accordingly, it is well settled that plaintiffs who challenge investment performance must identify a like-for-like comparator—genuinely similar in holdings, strategy, and risk profile. Under that settled rule, consistent with *Meiners*, *Matousek*, and

---

*See, e.g.*, *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1022 (9th Cir. 2025) (affirming dismissal of TDF imprudence claims where plaintiff failed to provide a "sound basis for comparison") (quoting *Meiners*, 898 F.3d at 822); *Wehner v. Genentech, Inc.*, No. 24-2630, 2025 U.S. App. LEXIS 22469, at *3 (9th Cir. Sept. 2, 2025) (affirming dismissal of custom TDF claims for lack of a meaningful benchmark); *Smith*, 37 F.4th at 1167 (citing *Meiners* and explaining that underperformance may support imprudence only when measured against a "meaningful benchmark," not a fund with a "different investment strategy"); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581–82 (7th Cir. 2022) (underperformance and fee allegations failed absent meaningful benchmark); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148–49 (10th Cir. 2023) (adopting *Meiners* and affirming dismissal of imprudence claims based on fee and performance disparities); *Singh v. Deloitte LLP*, 123 F.4th 88, 93–98 (2d Cir. 2024) (affirming dismissal where plaintiffs failed to allege fees were excessive relative to the services rendered).

*Fritton*, Plaintiffs' comparators fail as meaningful benchmarks.

### 1. Courts Have Rejected Plaintiffs' Off-the-Shelf Comparators

Courts have repeatedly rejected claims premised on comparisons between BlackRock's LifePath TDFs and the same four suite families Plaintiffs invoke here—Vanguard, Fidelity, T. Rowe Price, and American Funds. *See, e.g.*, *Luckett*, 2023 U.S. Dist. LEXIS 121362, at \*10–11 (dismissing prudence claim where plaintiffs compared BlackRock TDFs to American Funds, Vanguard, Fidelity Freedom Index, and T. Rowe Price suites); *Abel*, 2024 U.S. Dist. LEXIS 14535, at \*13–14 (holding that comparisons to American Funds, Vanguard, Fidelity Freedom Index, and T. Rowe Price suites did not provide a meaningful benchmark for BlackRock TDFs); *Bracalente v. Cisco Sys., Inc.*, No. 22-cv-04417-EJD, 2024 U.S. Dist. LEXIS 90338, at \*26–30 (N.D. Cal. May 20, 2024) (holding that comparisons to the same four TDF suites did not provide a meaningful benchmark); *Antoine v. Marsh & McLennan Cos.*, No. 22 Civ. 6637 (JPC), 2023 U.S. Dist. LEXIS 176561, at \*28–33 (S.D.N.Y. Sept. 30, 2023) (same); *Hall v. Capital One Fin. Corp.*, No. 1:22-cv-00857-MSN-JFA, 2023 U.S. Dist. LEXIS 35391, at \*20–24 (E.D. Va. Mar. 1, 2023) (same); *Tullgren v. Booz Allen Hamilton, Inc.*, No. 1:22-cv-00856-MSN-IDD, 2023 U.S. Dist. LEXIS 34462, at \*15–20 (E.D. Va. Mar. 1, 2023) (same); *Beldock v. Microsoft Corp.*, No. NO. C22-1082-JLR, 2023 U.S. Dist. LEXIS 71233, at \*8–9 (W.D. Wash. Apr. 24, 2023) (same); *Anderson v. Advance Publications, Inc.*, No. 22 Civ. 6826 (AT), 2023 U.S. Dist. LEXIS 102243, at \*8–10 (S.D.N.Y. June

13, 2023) (same).[11]

The dismissals in these BlackRock TDF cases turned on fundamental differences in glide paths, equity allocations, and investment strategies that made the proposed comparators inapt. The contrast is even starker here because the 3M TDFs are custom, plan-specific funds rather than off-the-shelf products. Courts have dismissed claims against custom TDFs when plaintiffs failed to allege genuine similarity. *See, e.g.*, *Locascio v. Fluor Corporation*, No. 3:22-CV-0154-X, 2023 U.S. Dist. LEXIS 9162, at *17–18 (N.D. Tex. Jan. 18, 2023) (dismissing a closely analogous challenge to custom BlackRock-managed TDFs because plaintiffs "simply label[ed] funds as 'comparable' or 'a peer,'" without allegations of like strategies or risk profiles); *Anderson*, 137 F. 4th at 1023–25 (affirming dismissal where equity-heavy retail funds pursued "different aims, different risks, and different potential rewards") (quoting *Davis*, 960 F.3d at 485). As in these cases, Plaintiffs' off-the-shelf comparators diverge from the 3M TDFs in fundamental respects that prevent them from serving as a meaningful benchmark.

### a. *Different Glide Paths ("To" vs. "Through")*

The 3M TDFs employ a "to retirement" glide path, reaching their most

---

[11] *But see Kistler v. Stanley Black & Decker, Inc.*, No. 3:22-cv-966 (SRU), 2024 U.S. Dist. LEXIS 117419, at *26–29 (D. Conn. July 3, 2024) (declining to assess the suitability of comparators at the pleading stage and allowing a BlackRock TDF imprudence claim to proceed past dismissal); *Trauernicht v. Genworth Fin., Inc.*, No. 3:22-cv-532, 2023 U.S. Dist. LEXIS 162470, at *38–40 (E.D. Va. Sept. 12, 2023) (similar). These outlier decisions are inconsistent with Eighth Circuit law requiring plaintiffs to plead a meaningful benchmark *at the motion-to-dismiss stage*. *See, e.g.*, *Fritton I*, 2022 U.S. Dist. LEXIS 222996, at 3–4 (explaining that to survive dismissal, the key is providing "a sound basis for comparison—a meaningful benchmark") (citing *Matousek*, 51 F.4th at 278; *Davis*, 960 F.3d at 484).

conservative allocation at the target date. Ex. 11; *see* Compl. ¶¶ 47–48 (describing the

BlackRock LifePath glide path, which the 3M TDFs were modeled after, reaching its

most conservative allocation at the target date). By contrast, all four of Plaintiffs'

proposed comparators follow "through retirement" glide paths, maintaining higher equity

exposure well past the target date.[12] That design feature reflects a fundamentally different

investment strategy and risk profile. Courts addressing similar claims have held that such

"to" versus "through" mismatches preclude a meaningful benchmark. *See, e.g.*, *Luckett*,

2023 U.S. Dist. LEXIS 121362, at *10–11 (rejecting Vanguard and Fidelity as inapt

comparators because they used "through retirement" glide paths while BlackRock used

"to retirement"); *Bracalente*, 2024 U.S. Dist. LEXIS 90338, at *28–30, 36 (noting that

comparators used "through retirement" glide paths whereas BlackRock used a "to

retirement" glide path, and holding plaintiffs failed to show those funds were meaningful

benchmarks).

### b. *Underlying Allocations and Securities*

Further, Plaintiffs have not alleged the 3M TDFs and their proposed comparators

---

[12] *See* Ex. 12 (American Funds 2025 Target Date Retirement Fund Summary Prospectus) at 2 ("[T]he fund will continue to provide equity and fixed income exposure in varying amounts after the target date."); Ex. 13 (Fidelity Freedom 2040 Fund Summary Prospectus) at 3 (stating that the fund "allocate[s] assets according to a neutral asset allocation strategy that adjusts over time until it reaches an allocation similar to that of the Fidelity Freedom Income Fund, approximately 10 to 19 years after the year 2040"); Ex. 14 (T. Rowe Price Retirement 2040 Fund Prospectus) at 4 ("The fund's overall exposure to equity will continue to decline until approximately 30 years after its target date… ."); Ex. 15 (Vanguard Target Retirement 2040 Fund Prospectus) at 3 ("Within seven years after 2040, the Fund's asset allocation should become similar to that of Vanguard Target Retirement Income Fund.").

share comparable allocations or risk characteristics. *Matousek* makes clear that a meaningful benchmark must involve funds that "hold similar securities." 51 F.4th at 281. Because the Complaint is silent on whether the off-the-shelf suites share the 3M TDFs' allocation mix, the purported comparison fails on its face. *See Schave v. CentraCare Health Sys.*, 2023 U.S. Dist. LEXIS 13786, at \*16–17 (D. Minn. Jan. 27, 2023) (dismissing imprudence claims where plaintiffs did not allege "any facts pertaining to the composition of the alternative funds" and thus failed to show they "hold similar securities, employ similar strategies or carry similar risks").

In fact, judicially noticeable fund disclosures confirm the opposite: the 3M TDFs hold roughly 40% equities at retirement, while Vanguard, Fidelity, T. Rowe Price, and American Funds each maintain equity exposures of 50% or more at the target date. Ex. 11 at 1 (3M 2040 Fact Sheet showing about 40% equity at retirement); Ex. 12 at 3 (American Funds glide path showing about 55% equity at retirement); Ex. 13 at 3 (Fidelity 2040 vintage showing about 50% equity at retirement); Ex. 14 at 3 (T. Rowe Price 2040 vintage showing about 55% equity at retirement); Vanguard Target Date Retirement Funds Information Page at https://institutional.vanguard.com/investment/ solutions/target-date-funds.html?cmpgn (Vanguard glide path showing about 55% equity at retirement) (last visited Oct. 3, 2025), attached as Ex. 16.

The Eighth Circuit has recognized that allocation mismatches defeat comparability. In *Meiners*, the court affirmed dismissal where "Wells Fargo funds [had] a higher allocation of bond[s] than Vanguard funds," making them materially different in strategy and risk. *Meiners v. Wells Fargo & Co.*, No. 16-3981 (DSD/FLN), 2017 U.S.

15

Dist. LEXIS 80606, at *6 (D. Minn. May 25, 2017), *aff'd*, 898 F.3d at 823 n.2

(referencing district court holding on fund allocation). The same is true here: funds with

materially different equity allocations cannot be meaningfully compared. *See Parmer v.*

*Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1306 (D. Minn. 2021) (holding that

comparators with "different concentration of bonds" did not provide meaningful

benchmarks).

### c.   *Different Management Strategy (Active vs. Passive)*

Equally problematic, Plaintiffs ignore the fundamental divide between passive and

active management. Plaintiffs allege that the 3M TDFs were "modeled after" the

BlackRock LifePath TDFs. Compl. ¶ 59. Those funds are passively managed. *Luckett*,

2023 U.S. Dist. LEXIS 121362; *see also supra* note 7. Yet Plaintiffs simultaneously

compare the 3M TDFs to suites—including American Funds, Fidelity Freedom Funds,

and T. Rowe Price—that are either actively managed or blended with an active strategy.

*See Parmer*, 518 F. Supp. 3d at 1306 (noting that American Funds TDFs are "wholly

active" and that T. Rowe Price TDFs "use a blended strategy of primarily active

management"); *Smith*, 37 F.4th at 1164 (noting that the Fidelity Freedom TDFs are

"actively managed").

The Eighth Circuit has squarely rejected such mismatched comparisons. As the

court explained in *Davis v. Washington University in St. Louis*, active and passive funds

"have different aims, different risks, and different potential rewards that cater to different

investors," and "[c]omparing apples and oranges is not a way to show that one is better or

worse than the other." 960 F.3d at 485. Courts have consistently held that comparing

funds with materially different management styles—active, passive, or blended—cannot support an inference of imprudence. *See, e.g.*, *Parmer*, 518 F. Supp. 3d at 1306–07 (rejecting comparisons between blended/active TDFs and wholly passive or wholly active suites because differing strategies, aims, and risks foreclose a meaningful benchmark); *Rosenkranz v. Altru Health Sys.*, No. 3:20-cv-168, 2021 U.S. Dist. LEXIS 237791, at *26–27 (D.N.D. Dec. 10, 2021) (finding that comparisons between actively managed, passively managed, and blended TDFs are not meaningful benchmarks); *Fritton II*, 2023 U.S. Dist. LEXIS 145940, at *16–20, *24–27 (citing *Parmer* and requiring like-for-like comparators under *Meiners and Matousek*); *Luckett*, 2023 U.S. Dist. LEXIS 121362, at *10–11 (rejecting American Funds and T. Rowe Price as comparators for index-based BlackRock TDFs); *Abel*, 2024 U.S. Dist. LEXIS 14535, at *13–14 (finding that active-passive management differences reflect "significantly different management styles, risks and potential returns," undermining any meaningful benchmark comparison).

### d.   *Different Investment Vehicles (CITs vs. Mutual Funds)*

Investment structure provides yet another dividing line in Plaintiffs' comparator theory. The 3M TDFs are structured as CITs, *see* Ex. 4 at 7, whereas two of Plaintiffs' proposed comparators—the American Funds and Fidelity suites—are mutual funds. *See* Compl. ¶ 79 (listing ticker symbols for American Funds and Fidelity suites, but identifying the T. Rowe Price and Vanguard comparators as "Trusts"). Courts have made clear that CITs and mutual funds operate under distinct regulatory regimes and disclosure requirements and cannot be assumed to be comparable vehicles. *See Fritton II*, 2023 U.S. Dist. LEXIS 145940, at *15–19 (rejecting mutual-fund comparators to CITs as

implausible benchmarks); *Riley v. Olin Corp.*, No. 4:21-cv-01328-SRC, 2023 U.S. Dist. LEXIS 11771, at *16–18 (E.D. Mo. Jan. 24, 2023) (holding that "mutual funds and collective trusts are not typical comparators or meaningful benchmarks" because they operate under distinct regulatory regimes and disclosure requirements); *Rosenkranz*, 2021 U.S. Dist. LEXIS 237791, at *21–22 (holding that collective trusts and mutual funds cannot serve as meaningful benchmarks). Because Plaintiffs' comparators include different investment vehicles altogether, they fail as a matter of law under *Meiners* and *Matousek*.

Taken together, the differences in glide path, allocations, management style, and investment vehicle underscore why Plaintiffs' comparators are not meaningful. The following chart summarizes how the 3M TDFs and Plaintiffs' comparators differ:

| Comparability Factors | 3M LifePath TDFs | TDF Comparators |
|---|---|---|
| Glide Path | "To" Retirement | "Through" Retirement |
| Equity at Retirement | ~40% | 50-55% |
| Style | Predominately passive | Predominately active |
| Vehicle | CIT | Mutual funds / CIT mix |

Each of these distinctions is independently sufficient to defeat compatibility, and collectively they foreclose any plausible inference of imprudence. Accordingly, Plaintiffs' comparators cannot support a plausible imprudence claim.

### 2. Morningstar Categories Do Not Salvage the Deficient Off-the-Shelf Comparators

Plaintiffs next invoke Morningstar's broad "peer groupings" in an effort to rehabilitate their TDF comparators. Compl. ¶¶ 73–82. But those categories are nothing

more than generalized labels; they say nothing about whether funds hold similar securities, follow comparable strategies, or reflect a similar risk profile.

For this reason, in recent decisions, courts in this Circuit have rejected reliance on Morningstar categories. *See, e.g.*, *Riley*, 2023 U.S. Dist. LEXIS 11771, at \*10–13 (explaining that the Eighth Circuit "has not upheld the use of Morningstar categories as an indicator of a meaningful benchmark"); *Fitzpatrick v. Neb. Methodist Health Sys., Inc.*, No. 8:23-CV-27, 2023 U.S. Dist. LEXIS 140060, at \*18–21 (D. Neb. Aug. 9, 2023) (same); *see also Fritton II*, 2023 U.S. Dist. LEXIS 145940, at \*25–26 (rejecting imprudence claim where plaintiffs relied on Investment Company Institute (ICI) median expense ratios, which lumped together various funds with materially different management styles).

Plaintiffs cite *Snyder v. UnitedHealth Grp., Inc.*, No. 21-1049 (JRT/BRT), 2021 U.S. Dist. LEXIS 230878 (D. Minn. Dec. 2, 2021), to argue that Morningstar categories can serve as meaningful benchmarks. Compl. ¶ 78. But *Snyder* predated the Eighth Circuit's decision in *Matousek*, which requires a rigorous, like-for-like benchmark analysis. A more recent decision in the District of Nebraska expressly declined to follow *Snyder*, deeming it unpersuasive after *Matousek*. *See Fitzpatrick*, 2023 U.S. Dist. LEXIS 140060, at \*19–21 & n.8 (dismissing claims relying on Morningstar categories because they did not allege comparability in holdings, strategies, or risk). Accordingly, Plaintiffs' reliance on Morningstar categories and *Snyder* cannot satisfy the rigorous, like-for-like benchmark analysis that *Matousek* requires.

### 3.    S&P Target Date Indices Are Not Meaningful Benchmarks.

Besides the off-the-shelf comparators, Plaintiffs also incorrectly rely on the S&P Target Date Indices ("S&P Indices") to allege underperformance. Compl. ¶¶ 73–82. But the S&P Indices are not investment options; they are non-investable composites of target-date funds with differing holdings, glide paths, and risk profiles. Such amalgams cannot provide the like-for-like comparison that *Meiners* and *Matousek* require. *See Matousek*, 51 F.4th at 281–82 (rejecting reliance on peer-group averages as not providing a "sound basis for comparison" and "fail[ing] 'to connect the dots in a way that creates an inference of imprudence'") (citing *Meiners*, 898 F.3d at 822; *Davis*, 960 F.3d at 486).

Courts addressing similar allegations have rejected reliance on the S&P Indices. *See, e.g.*, *Hall*, 2023 U.S. Dist. LEXIS 35391, at *23–24 (explaining that the S&P Indices are "not an actual fund" but "a composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs," and thus not a meaningful benchmark); *Wehner*, 2021 U.S. Dist. LEXIS 111341, at *26 (rejecting reliance on S&P Indices because plaintiffs did not allege they shared comparable styles or strategies with the challenged funds), *aff'd*, 2025 U.S. App. LEXIS 22469 (9th Cir. Sept. 2, 2025); *Phillips v. Cobham Advanced Elec. Sols., Inc.*, No. 23-cv-03785-EKL, 2025 U.S. Dist. LEXIS 184960, at *17–18 (N.D. Cal. Sept. 19, 2025) (holding that the S&P Index, which measures a group of TDFs with differing allocations and glide paths, was not a meaningful benchmark); *Beldock*, 2023 U.S. Dist. LEXIS 71233, at *8–9 (holding that comparisons to the S&P Indices and Sharpe ratios were "merely additional measurements

of investment performance" and failed to provide a meaningful benchmark).[13]

Accordingly, Plaintiffs' reliance on the S&P Indices cannot satisfy the meaningful benchmark requirement under ERISA.

### B.    Plaintiffs' Allegations of Underperformance Do Not State a Claim

Even setting aside the comparator defect, Plaintiffs' underperformance allegations independently fail to state an imprudence claim. Plaintiffs' performance allegations consist of trailing return charts comparing seven vintages of the 3M TDFs against the four off-the-shelf suites (Vanguard, Fidelity, T. Rowe Price, and American Funds) and to the S&P Indices. Compl. ¶¶ 84–131. The charts omit other vintages in the lineup, including the Retirement, 2020, 2060, and 2065 funds.

At the threshold, Plaintiffs' charts fall short. They present bare trailing-return figures with no disclosure of how those numbers were calculated or what assumptions underlie them, and they provide no disclosure of the methodology or data sources used.

---

[13] Plaintiffs may attempt to rely on *Johnson v. Parker-Hannifin Corporation*, 122 F.4th 205, 217–19 (6th Cir. 2024), where the Sixth Circuit allowed claims past dismissal based on allegations that the S&P Target Date Indices were a meaningful comparator. But *Johnson* is readily distinguishable. That case turned on the complaint's allegation that the Northern Trust Focus Funds were "through" TDFs expressly designed to meet industry-recognized benchmarks, and that the S&P Indices served as such a benchmark for "through" funds. *Id.* at 217–18. The 3M TDFs are different: they are custom "to" retirement trusts with their own custom benchmarks, not index-tracking funds. *See* Ex. 11; *see also* Compl. ¶¶ 47–48, 68. And even in *Johnson*, the dissent warned that treating the S&P composite as a comparator "break[s] new ground" and emphasized that the complaint failed to allege the comparators' "objectives and risk profiles." *Id.* at 231–33 (Murphy, J., dissenting). Judge Murphy cautioned that this approach risked inconsistency with *Matousek*, since the Eighth Circuit rejected reliance on peer-group averages "because of the lack of information about both the challenged funds and 'the funds in each peer group.'" *Id.* at 233 (citing *Matousek*, 51 F.4th at 281). Under *Matousek*, the S&P Indices are not meaningful benchmarks for the 3M TDFs.

Allegations in that form provide no meaningful basis for comparison and warrant dismissal. In *Fritton II,* this Court reached a similar conclusion, holding that allegations limited to "net expense ratios and average annual returns, devoid of any context or explanation regarding the methods by which these figures were calculated . . . renders any meaningful comparison impossible." 2023 U.S. Dist. LEXIS 145940, at \*25–26.

Plaintiffs' allegations fail for an additional reason: the Eighth Circuit makes clear that relative performance alone cannot establish imprudence. The duty of prudence concerns ***fiduciary process***, not selecting the "best performing" fund in hindsight. *Meiners*, 898 F.3d at 823–24 ("No authority requires a fiduciary to pick the best performing fund.") This is especially true for target-date funds, which are designed to be judged over decades rather than years. As the Sixth Circuit explained in *Smith v. CommonSpirit Health*, "[m]erely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry." 37 F.4th at 1166–67; *see also Riley*, 2023 U.S. Dist. LEXIS 11771, at \*10–15 (citing *Smith* and rejecting claims resting on short-term performance comparisons); *Antoine*, 2023 U.S. Dist. LEXIS 176561, at \*30–31 (same).

Indeed, Plaintiffs' performance comparisons are drawn almost entirely from three- and five-year trailing returns. Compl. ¶¶ 83–131.[14] Courts have consistently held that

---

[14] Plaintiffs cite only one ten-year trailing return (as of 2023), which they present in isolation without any broader context. Compl. ¶¶ 84–126. This is nothing more than a bare performance allegation, and this Court has explained such figures cannot "render[]

such short-term snapshots are inadequate for funds designed to span decades. *See, e.g.*, *Lard v. Marmon Holdings, Inc.*, No. 22 cv 04332, 2025 U.S. Dist. LEXIS 90776, at *8–11 (N.D. Ill. May 13, 2025) (collecting cases rejecting claims based on three- to five-year returns); *Luckett*, 2023 U.S. Dist. LEXIS 121362, at *10–12 (citing *Meiners* and rejecting claims based on three- and five-year returns, emphasizing that courts do not "infer imprudence every time a fiduciary retains a fund that fails to turn in best-in-class performance for any specific period"); *Smith*, 37 F.4th at 1166–67 (holding that five-year snapshot underperformance in a decades-long TDF horizon is insufficient to plead imprudence); *Dorman v. Charles Schwab Corp.*, No. 17-cv-00285-CW, 2019 U.S. Dist. LEXIS 34058, at *21 (N.D. Cal. Feb. 8, 2019) (three to five years "relatively short"); *Abel*, U.S. Dist. LEXIS 14535, at *15–17 (emphasizing that "TDFs are generally intended to grow for decades" and that three- and five-year snapshots do not plausibly show imprudence).

Accordingly, Plaintiffs' allegations of underperformance—even crediting their figures—do not plausibly support an inference of a flawed fiduciary process.

### C.    Plaintiffs' Derivative Monitoring Claim Also Fails

Under ERISA, a monitoring claim is derivative: it cannot survive without a plausible underlying breach of prudence. *See, e.g.*, *Riley*, 2023 U.S. Dist. LEXIS 11771, at *19 (dismissing failure-to-monitor claim where prudence claim failed); *Albert*, 47 F.4th at 583 (affirming dismissal of failure-to-monitor claim because underlying breach

---

any meaningful comparison" absent explanation or methodology. *Fritton II*, 2023 U.S. Dist. LEXIS 145940, at *25.

failed); *Beldock*, 2023 U.S. Dist. LEXIS 71233, at \*10 (same). Count II asserts a monitoring claim against 3M, its Board, the BFIC, and IMC. Compl. ¶¶ 161–166. But Count II merely reiterates the prudence allegations and adds no independent facts about any alleged failures of oversight. Because Plaintiffs have not pled a viable prudence claim, their derivative monitoring claim necessarily fails as well.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

DATED: October 3, 2025

*/s/ Rajin S. Olson*
Rajin S. Olson (#0398489)
**THOMPSON HINE LLP**
US Bancorp Center
800 Nicollet Avenue, Suite 2925
Minneapolis, MN 55402
Telephone: (612) 605-5900
Facsimile: (612) 605-5901
Rajin.Olson@ThompsonHine.com

Brian J. Lamb (*admitted pro hac vice*)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
Brian.Lamb@ThompsonHine.com

Michelle N. Webster (*admitted pro hac vice*)
Nathaniel W. Ingraham (*admitted pro hac vice*)
**THOMPSON HINE LLP**
1919 M. Street, N.W., Suite 700
Washington, D.C. 20036
Telephone: (202) 331-8800
Facsimile: (202) 331-8330
Michelle.Webster@ThompsonHine.com
Nate.Ingraham@ThompsonHine.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

JENNIFER BATT, et al.,

               Plaintiffs,

v.

3M COMPANY, et al.,

               Defendants.

Case No. 25-cv-03149 (ECT/DTCS)

**CERTIFICATE OF WORD COUNT**
**COMPLIANCE**

This brief complies with the limits in Local Rule 7.1(f) and with the type-size limit of Local Rule 7.1(h). This brief was prepared in proportionally spaced typeface in 13-point font, using Microsoft Word Office 365. The text of the brief, including headings, footnotes, and quotations, contains 6,475 words as determined by the word-count function of Microsoft Word Office 365.