## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

JENNIFER BATT, et al.,

       Plaintiffs,

v.

3M COMPANY, et al.,

       Defendants.

Case No. 25-cv-03149 (ECT/DTCS)

**REPLY IN SUPPORT OF MOTION
TO DISMISS**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ...................................................................................................... 2

    A.  Plaintiffs Fail to Plead a Meaningful Benchmark Under Controlling Eighth Circuit Law ................................................................................................ 2

        1.  Plaintiffs Misstate the Eighth Circuit's Meaningful Benchmark Requirement ................................................................................ 2

        2.  Plaintiffs' Retail Comparators Are Not Meaningful Benchmarks ................ 4

        3.  Morningstar Categories and S&P Target Date Indices Do Not Establish Comparability ............................................................................. 9

    B.  Even If Plaintiffs Had Pleaded a Meaningful Benchmark, Their Underperformance Theory Fails ...................................................................... 12

III.  CONCLUSION ................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abel v. CMFG Life Ins. Co*.,
   2024 U.S. Dist. LEXIS 14535 (W.D. Wis. Jan. 26, 2024) .................................. 3, 5, 13

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   579 F. Supp. 3d 1133 (N.D. Cal. 2022) ........................................................................ 2

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   137 F.4th 1015 (9th Cir. 2025) ............................................................................. 2, 11

*Beldock v. Microsoft Corp.*,
   2023 U.S. Dist. LEXIS 20566 (W.D. Wash. Feb. 7, 2023) ........................................ 10

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ................................................................................. 3, 4

*Brown-Davis v. Walgreen Co*.,
   2020 U.S. Dist. LEXIS 252317 (N.D. Ill. Mar. 16, 2020) .......................................... 10

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020) .......................................................................... 1, 3, 7, 8

*Dionicio v. U.S. Bancorp*,
   2024 U.S. Dist. LEXIS 50097 (D. Minn. Mar. 21, 2024) ............................................ 3

*Dover v. Yanfeng U.S. Auto. Interior Sys. I LLC*,
   563 F. Supp. 3d 678 (E.D. Mich. 2021) .................................................................... 10

*Fitzpatrick v. Neb. Methodist Health Sys., Inc.*,
   2023 U.S. Dist. LEXIS 140060 (D. Neb. Aug. 9, 2023) .................................. 9, 10, 11

*Fritton v. Taylor Corp.*,
   2022 U.S. Dist. LEXIS 222996 (D. Minn. Dec. 12, 2022) ..................................... 1, 14

*Fritton v. Taylor Corp.*,
   2023 U.S. Dist. LEXIS 145940 (D. Minn. Aug. 21, 2023) ..................................... 7, 13

*Hall v. Capital One Fin. Corp*.,
   2023 U.S. Dist. LEXIS 35391 (E.D. Va. Mar. 1, 2023) ............................................. 10

*Hughes v. Nw. Univ.*,
    595 U.S. 170 (2022) ................................................................................. 13

*Johnson v. Parker-Hannifin Corp.*,
    122 F.4th 205 (6th Cir. 2024) .................................................................. 11

*Karg v. Transamerica Corp.*,
    2019 U.S. Dist. LEXIS 140567 (N.D. Iowa Aug. 20, 2019) ....................... 10

*Kistler v. Stanley Black & Decker, Inc.*,
    2024 U.S. Dist. LEXIS 117419 (D. Conn. July 3, 2024) ........................... 11

*Luckett v. Wintrust Fin. Corp.*,
    2023 U.S. Dist. LEXIS 121362 (N.D. Ill. July 14, 2023) .................................. 5, 8, 13

*Matousek v. MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ................................................................. *passim*

*Mattson v. Milliman, Inc.*,
    2022 U.S. Dist. LEXIS 246403 (W.D. Wash. Dec. 13, 2022) ................... 10

*Meiners v. Wells Fargo & Co.*,
    2017 U.S. Dist. LEXIS 80606 (D. Minn. May 25, 2017) ............................ 6

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ................................................................ *passim*

*Parmer v. Land O'Lakes, Inc.*,
    518 F. Supp. 3d 1293, 1303–07 (D. Minn. 2021) ...................................... 8-9

*Payne v. Hormel Foods Corp.*,
    2024 U.S. Dist. LEXIS 168017 (D. Minn. Sept. 18, 2024) .......................... 3

*Phillips v. Cobham Advanced Elec. Sols., Inc.*,
    2025 U.S. Dist. LEXIS 184960 (N.D. Cal. Sept. 19, 2025) .................... 4, 8, 11, 14

*Riley v. Olin Corp.*,
    2023 U.S. Dist. LEXIS 11771 (E.D. Mo. Jan. 24, 2023) ........................ 9, 10

*Schave v. CentraCare Health Sys.*,
    2023 U.S. Dist. LEXIS 13786 (D. Minn. Jan. 27, 2023) ............................. 3

*Singh v. Deloitte LLP*,
    123 F.4th 88 (2d Cir. 2024) .................................................................. 11

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ................................................................. 2, 13

*Snyder v. UnitedHealth Grp., Inc.*,
    2021 U.S. Dist. LEXIS 230878 (D. Minn. Dec. 2, 2021) ........................... 11

*Thomson v. Caesars Holdings Inc.*,
    661 F. Supp. 3d 1043 (D. Nev. 2023) ....................................................... 11

*Wehner v. Genentech, Inc.*,
    2021 U.S. Dist. LEXIS 111341 (N.D. Cal. June 14, 2021) ......................... 11

**Other Authorities**

29 C.F.R. § 2550.404a-5 ............................................................................ 12

75 Fed. Reg. 64,910, 64,916–17 ............................................................... 12

Fed. R. Civ. P. 8 .......................................................................................... 3

Fed. R. Civ. P. 12 .................................................................................... 1, 12

Fed. R. Civ. P. 26 ........................................................................................ 4

D. Minn. LR 15.1(b) .................................................................................. 14

## I.    <u>INTRODUCTION</u>

This case turns on a straightforward application of a settled Eighth Circuit legal standard. Under *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022) and *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018), a plaintiff must plead a meaningful benchmark—a comparator that holds similar securities, follows a similar investment strategy, and reflects a similar risk profile to the challenged fund.

Plaintiffs still have not done so. The retail target-date suites they propose are structurally different from the custom 3M LifePath Target Date Funds ("3M TDFs"). They follow a "through-retirement" rather than a "to-retirement" glide path, include mutual-fund suites rather than collective investment trusts, and use predominantly actively managed rather than index-based strategies. Those mismatches mean the retail suites are not meaningful benchmarks under *Matousek* and *Meiners*.

Nor does Plaintiffs' performance theory salvage their claims. Plaintiffs allege only that the 3M TDFs showed lower returns than certain comparators over selected periods. Even if those allegations sufficed to show underperformance, under Eighth Circuit law, underperformance by itself does not support a reasonable inference of a deficient fiduciary process.

For these reasons, the Complaint should be dismissed with prejudice.[1]

---

[1] Plaintiffs object to Defendants' supporting exhibits as "extraneous material." ECF No. 35 (hereinafter "Opp.") at 1–2 nn. 1–2. But under Eighth Circuit precedent, materials including Form 5500s, participant disclosures, and fund prospectuses are properly before the Court on a Rule 12(b)(6) motion. *See Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482–85 & n.3 (8th Cir. 2020); *Fritton v. Taylor Corp.*, 2022 U.S. Dist. LEXIS 222996 ("*Fritton I*"), at *17–20 (D. Minn. Dec. 12, 2022) (Tostrud, J.). Plaintiffs themselves rely

## II.    ARGUMENT

### A.    Plaintiffs Fail to Plead a Meaningful Benchmark Under Controlling Eighth Circuit Law

#### 1.    Plaintiffs Misstate the Eighth Circuit's Meaningful Benchmark Requirement

Plaintiffs' Opposition misstates and attempts to dilute the meaningful benchmark requirement under *Meiners* and *Matousek*. Although Plaintiffs acknowledge that, under *Meiners* and *Matousek*, meaningful benchmarks must "share similar investment strategies," Opp. at 1–2, they then reduce that standard to high-level "characteristics" such as "size, category, and risks." *Id*. But *Meiners* and *Matousek* make clear that a plaintiff provides a "sound basis for comparison—a meaningful benchmark" only by identifying a comparator that holds similar securities, has a similar investment strategy, and reflects a similar risk profile to the challenged fund. *Matousek*, 51 F.4th at 280–81; *Meiners*, 898 F.3d at 822. Comparators sharing only "some similarities" with the challenged fund do not qualify. *Meiners*, 898 F.3d at 823 (emphasis omitted).[2]

---

on the same types of materials: the Complaint cites the Plans' Form 5500s and participant fee disclosures, and the Opposition relies on fact sheets and prospectuses, including the 2025 3M TDF Fact Sheet. *See* ECF No. 1 (hereinafter "Compl.") ¶¶ 42–43, 66, 68–70; Opp. at 26 n.23, 30–37; Nicholson Decl. Ex. A (2025 3M TDF Fact Sheet). Plaintiffs also object to Defendants' citations to the Department of Labor's Target Date Retirement Funds—Tips for ERISA Plan Fiduciaries (the "DOL Tip Sheet") and Morningstar's Target-Date Strategy Landscape Reports (the "Morningstar Reports"). But courts have considered and cited similar regulatory and industry materials as background at the pleading stage, particularly when applying the meaningful benchmark standard. *See, e.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1168 (6th Cir. 2022); *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1145 (N.D. Cal. 2022), *aff'd*, 137 F.4th 1015 (9th Cir. 2025).

[2] Nor can Plaintiffs salvage their comparator theory by equating popularity with prudence, *see* Opp. at 20 (citing Compl. ¶ 77). The retail suites' market share says

Indeed, courts applying the meaningful benchmark standard have consistently confirmed that a "sound basis for comparison" requires comparators with similar holdings, strategies, and risk profiles. *See, e.g.*, *Schave v. CentraCare Health Sys*., 2023 U.S. Dist. LEXIS 13786, at *14–17 (D. Minn. Jan. 27, 2023); *Abel*, 2024 U.S. Dist. LEXIS 14535, at *12–14. Nothing in Plaintiffs' authorities alters that requirement.[3]

Nor does *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), help Plaintiffs. Plaintiffs cite *Braden* for the notion that ERISA plaintiffs "need not plead specific details of a fiduciary's decision-making process" and may instead rely on circumstantial allegations at the pleading stage. Opp. at 14–15 (citing *Braden*, 588 F.3d at 598).[4] The *Braden* language they invoke is nothing more than a statement of the Rule 8

---

nothing about whether those suites share similar holdings, strategies, or risk profiles. *See, e.g., Abel v. CMFG Life Ins. Co*., 2024 U.S. Dist. LEXIS 14535, at *13 (W.D. Wis. Jan. 26, 2024) (rejecting reliance on comparator TDFs alleged to be the "most likely alternatives" based solely on market share, and noting that "[s]everal courts have found this very allegation insufficient").

[3] For example, Plaintiffs attempt to rely on *Payne v. Hormel Foods Corp.*, 2024 U.S. Dist. LEXIS 168017 (D. Minn. Sept. 18, 2024) (Nelson, J.), and *Dionicio v. U.S. Bancorp*, 2024 U.S. Dist. LEXIS 50097 (D. Minn. Mar. 21, 2024) (Schiltz, C.J.). Opp. at 4, 15, 20. *Payne* did not involve target-date funds. Its meaningful-benchmark analysis addressed a stable value fund and accepted at the pleading stage that other stable value funds could serve as comparators because they "provide the same benefits and expectation of returns." 2024 U.S. Dist. LEXIS 168017, at *19–20. In doing so, the court expressly contrasted *Matousek*, *Davis*, and *Meiners* as cases involving "funds that were managed by different investment companies with different objectives and portfolios." *Id*. Similarly, *Dionicio* rejected plaintiffs' attempt to compare managed-account services to target-date funds as "apples and oranges" under *Davis*. 2024 U.S. Dist. LEXIS 50097, at *16 & n.5 (citing *Davis*, 960 F.3d at 485).

[4] Plaintiffs note in the Opposition that they have purportedly served discovery on Defendants, and that "the time to respond has not elapsed." Opp. at 16 n.13. That is an understatement, as the time to respond has not even *started*. Plaintiffs' discovery requests

plausibility standard. *See Braden*, 588 F.3d at 594–98. It says nothing about the meaningful benchmark requirement later articulated in *Meiners* and *Matousek*. *See Meiners*, 898 F.3d at 822–23 (explaining that ERISA plaintiffs can research "facts about the funds themselves" and must still provide a meaningful benchmark).

### 2.    Plaintiffs' Retail Comparators Are Not Meaningful Benchmarks

#### a.    *Different Glide Paths ("To" vs. "Through")*

Plaintiffs' own allegations and exhibits confirm a threshold mismatch: the 3M TDFs follow a "to-retirement" glide path, while the retail suites they offer as comparators are "through-retirement" funds. At the target date, the 3M TDFs are designed to hold about 40% equity and 60% fixed income and then maintain that conservative mix, whereas the Vanguard, T. Rowe Price, Fidelity, and American Funds suites sit at roughly 50–55% equity and then continue de-risking. *See* ECF No. 28 (hereinafter "Defs.' Mem.") at 14-15; ECF No. 36 (hereinafter cited only as "Nicholson Decl."), Ex. A at 2, Ex. B at 1, Ex. D at 4, Ex. E at 1.[5] Because to- and through-retirement glide paths "reflect different investment and risk-mitigation strategies," *see Phillips v. Cobham Advanced Elec. Sols., Inc.*, 2025 U.S. Dist. LEXIS 184960, at *20–21 (N.D. Cal. Sept. 19, 2025), Plaintiffs' through-retirement suites are "poor benchmarks" for the 3M TDFs. *See id.*;

_____

are premature because the parties have not yet met and conferred pursuant to Rule 26(f). *See* Fed. R. Civ. P. 26(d)(1).

[5] Plaintiffs challenge certain of Defendants' prospectus exhibits on the ground that they are summary prospectuses for different share classes or vehicles than the comparator funds alleged in the Complaint. Opp. at 26–27 & n.23. None of those objections changes the fact that Plaintiffs' comparators are through-retirement funds and the 3M series is to-retirement.

Defs.' Mem. at 13-14.

Plaintiffs offer two responses, but neither cures that defect. First, they place the 3M 2040 glide-path chart alongside the 2040 Vanguard 2040 fund and assert that the two glide paths are "highly similar." Opp. at 31. Labeling apples and oranges as "highly similar" does not make it so, when courts have found the differences between "to" and "through" glide paths to be legally dispositive. *See, e.g.*, *Abel*, 2024 U.S. Dist. LEXIS 14535, at *14; *Luckett v. Wintrust Fin. Corp*., 2023 U.S. Dist. LEXIS 121362, at *10–11 (N.D. Ill. July 14, 2023).

Second, Plaintiffs point to a prospectus disclaimer for one retail comparator stating that the fund "will invest its assets within a range that deviates no more than 10%" from its stated target allocations. Opp. at 36 n.30 (citing ECF No. 29 (hereinafter cited only as "Olson Decl."), Ex. 12 at 3). They then extrapolate from that disclaimer to suggest that a fund with a 50% target-equity allocation could hypothetically overlap with the 3M series at the target date. *Id.* at 36. But that conjecture does not support a like-for-like comparison, when swings in the opposite direction are equally possible.

**b.** *Underlying Allocations and Securities*

Plaintiffs still have not plausibly alleged that the 3M TDFs and their proposed comparators share comparable allocations, as *Matousek* and *Meiners* require. *See Matousek*, 51 F.4th at 281–82; *Meiners*, 898 F.3d at 823–24. Echoing their glide-path theory, Plaintiffs' Opposition focuses on a handful of 2040-vintage comparisons between the 3M 2040 fund and the comparator suites and then claims that the "allocations for all of the Comparators prior to retirement are also highly similar" to the 3M series. Opp. at

31–32. The parties differ on how different the pre-retirement allocations are, but there can be no disputing that post-retirement, the allocations are, by design, significantly different. "Kind of similar for a time" is not the same as like-for-like.

*Meiners* explains why such allocation and strategy differences matter, and the Opposition never addresses that holding. In *Meiners*, the district court dismissed a challenge to Wells Fargo's target-date funds, explaining that because the funds had a higher bond allocation and a different strategy than the Vanguard benchmark, "one would expect [them] to perform differently." *Meiners v. Wells Fargo & Co.*, 2017 U.S. Dist. LEXIS 80606, at *5–6 (D. Minn. May 25, 2017), *aff'd*, 898 F.3d 820. Under that framework, Plaintiffs' proposed comparators, which differ from the 3M TDFs in bond weightings, cannot serve as meaningful benchmarks. *See also* Defs.' Mem. at 14-16.

### c.    *Different Investment Vehicles (CITs vs. Mutual Funds)*

Plaintiffs do not dispute that the 3M TDFs are collective investment trusts (CITs).[6] Nor do they dispute that two of their key comparators—American Funds and Fidelity— are instead mutual-fund suites. *See* Compl. ¶ 79. That distinction is dispositive under *Fritton II*, in which this Court held that "a collective investment trust is not a plausible

---

[6] Plaintiffs argue that Defendants' Form 5500 citations merely show that "the Plans' assets are held in a master trust" and do not support that the 3M TDFs are collective trusts. Opp. at 34–35. That misstates what the filings show. The page they cite is the Form 5500 for a single Plan. That filing reports the Plan's interest in the 3M master trust on one line labeled "master trust investment accounts" and, separately, a direct position in a common/collective trust. *See* Olson Decl. Ex. 2 at 21. By contrast, the master trust's own Form 5500—cited in Defendants' opening memorandum—breaks out the trust's underlying holdings and reports nearly $9 billion in common/collective trusts, which include the 3M TDFs. *See* Defs.' Mem. at 8 (citing Olson Decl. Ex. 4 at 7). Plaintiffs identify no filing suggesting that the 3M TDFs are anything other than CITs.

benchmark for a mutual fund" because the two operate under distinct regulatory and disclosure regimes. *Fritton II*, 2023 U.S. Dist. LEXIS 145940, at *3, 15–19 (D. Minn. Aug. 21, 2023) (Tostrud, J.). This Court further explained that these are "legal . . . , not factual" distinctions—and thus appropriate to consider at the pleading stage. *Id.* at *18.

Plaintiffs do not grapple with that holding. Instead, they assert that *Fritton II* and other authorities are distinguishable because they "involved allegations relating to excessive fees and/or expense ratios," not performance claims. Opp. at 35–36. But the *Fritton* Court was applying the meaningful benchmark requirement, which indisputably is not cabined to "fee" cases. *See Meiners*, 898 F.3d at 822 (explaining that the meaningful benchmark requirement applies to challenges based on a fund's performance or cost). Plaintiffs cannot meet the meaningful benchmark standard by comparing the 3M TDFs (CITs) to mutual funds.

### d. _Different Management Strategies (Active vs. Passive)_

Plaintiffs' comparators also fail to satisfy the meaningful benchmark standard because unlike the 3M TDFs, three of the four suites are actively managed. *Davis* holds that actively managed funds and passively managed funds "have different aims, different risks, and different potential rewards" and therefore are not meaningful benchmarks for each other. *Davis*, 960 F.3d at 485. Plaintiffs attempt to sidestep that rule by redefining "active management" so broadly that, in their view, all TDFs are actively managed simply because "managers make active decisions when designing a TDF's asset allocation over time." Opp. at 7 (citing Compl. ¶¶ 49–50). That is not the rule.

Rather, courts addressing similar claims focus on how target-date suites are

7

implemented—whether they use index building blocks or actively managed underlying funds—not on Plaintiffs' abstract label that all TDFs involve "active" decisions over time. *See Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1303–07 (D. Minn. 2021) (rejecting "apples to oranges" comparisons between T. Rowe Price target-date funds that use a blended active and passive strategy and comparator suites that are wholly passive or wholly active). Even if one took Plaintiffs' premise at face value, that still does not transform every TDF into a meaningful comparator. *See Phillips*, 2025 U.S. Dist. LEXIS 184960, at *19–21 (holding that allegations that "every target-date manager makes active decisions in building a glide path and selecting asset classes" merely repackaged the theory that comparators are meaningful "because they are all target date funds").

Plaintiffs cannot escape their own allegation that the 3M TDFs are modeled on the BlackRock LifePath Funds, a passively managed TDF suite. *See* Compl. ¶ 59; *Luckett*, 2023 U.S. Dist. LEXIS 121362, at *10.[7] By contrast, the suites Plaintiffs propose as comparators sit on the opposite side of that divide. The American Funds suite is wholly active; T. Rowe Price employs a predominantly active blended strategy; and Fidelity Freedom is actively managed. *See Parmer*, 518 F. Supp. 3d at 1306; *Smith*, 47 F.4th at 1164. Those are the very kinds of active implementations that *Davis* and *Parmer* treat as materially different from index-implemented funds and thus not meaningful benchmarks.

---

[7] Plaintiffs alleged the 3M TDFs were "modeled after" the BlackRock LifePath TDFs. Compl. ¶ 59. The Opposition now attempts to recast the 3M funds as only "initially modeled" on BlackRock. Opp. at 8. That inconsistency does not change the Complaint's allegation that the 3M series is modeled on an index LifePath suite.

*See Davis*, 960 F.3d at 485; *Parmer*, 518 F. Supp. 3d at 1306–07.[8]

### 3. Morningstar Categories and S&P Target Date Indices Do Not Establish Comparability

Plaintiffs' fallback to Morningstar categories and the S&P Target Date Indices does not provide the meaningful benchmark that *Meiners* and *Matousek* require.

**Morningstar categories**. Plaintiffs attempt to narrow *Matousek* by contending that it rejected only opaque Investment Company Institute ("ICI") peer groups with undisclosed composition. Opp. at 21–22. They further argue that Morningstar is different because it publishes its methodology and assigns categories based on "portfolio statistics and compositions over the prior three years." Opp. at 22 (citing Compl. ¶ 78.) But *Matousek*'s point is broader: peer-group averages—whatever the label—do not provide a "sound basis for comparison" where "the composition of the peer groups remains a mystery" and "there is no explanation of what types of funds are in each group, much less the criteria used to sort them." 51 F.4th at 281–82. Consistent with that rule, district courts in this Circuit have applied *Matousek* to reject comparisons based on Morningstar categories. *See Fitzpatrick v. Neb. Methodist Health Sys., Inc.*, 2023 U.S. Dist. LEXIS 140060, at *18–21 (D. Neb. Aug. 9, 2023); *Riley v. Olin Corp.*, 2023 U.S. Dist. LEXIS

---

[8] Plaintiffs point to the 3M 2040 fact sheet's "Principal Risks" section and highlight the phrase "Active Management," arguing this makes the 3M TDFs "actively managed" like their comparator suites. Opp. at 28 (quoting Olson Decl., Ex. 11 at 5). That inference is unsupported and incorrect. "Active Management" appears among dozens of generic principal risks listed in the 3M 2040 fact sheet; it does not classify the fund's investment style. *See* Olson Decl., Ex. 11 at 5. As explained in Defendants' opening memorandum, the 3M TDFs are implemented primarily through index funds. *See* Defs.' Mem. at 7 n.7 (describing 3M TDFs as "composed of predominantly passive strategies" and citing Olson Decl., Ex. 4 at 12 (Schedule of Assets)).

11771, at *10–13 (E.D. Mo. Jan. 24, 2023).[9]

**S&P Target Date Indices**. Plaintiffs' S&P theory fares no better. They insist that the S&P Indices are "appropriate meaningful benchmarks," pointing to Morningstar's statement that "over 50% of TDFs use the S&P Indices as their primary prospectus benchmark to approximate performance." Opp. at 10 (citing Compl. ¶ 73). But the fact that many funds list an index as a prospectus benchmark does not make that index a meaningful benchmark. Each S&P Target Date Index is defined as a composite of "sub-indices selected and weighted to represent a consensus of the opportunity set available in the U.S. universe of target date funds," Compl. ¶ 73, not as a proxy for any particular fund's holdings, glide path, or risk profile. By design, these composites blend together "disparate strategies and styles" across the entire TDF universe. *Hall v. Capital One Fin. Corp.*, 2023 U.S. Dist. LEXIS 35391, at *22 (E.D. Va. Mar. 1, 2023). Courts have therefore declined to treat them as meaningful benchmarks for comparison to a *particular* TDF, including BlackRock TDFs. *See, e.g.*, *Beldock v. Microsoft Corp.*, 2023 U.S. Dist.

---

[9] Plaintiffs rely on *Karg v. Transamerica Corp.*, 2019 U.S. Dist. LEXIS 140567 (N.D. Iowa Aug. 20, 2019), but that decision pre-dates *Matousek* and does not apply the comparator analysis that *Matousek* requires. *See Matousek*, 51 F.4th at 281–82; *see also Fitzpatrick*, 2023 U.S. Dist. LEXIS 140060, at *18–21. The remaining Morningstar cases Plaintiffs cite are out-of-circuit district-court decisions, and several do not even involve Morningstar categories. *See, e.g.*, *Dover v. Yanfeng U.S. Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 688 (E.D. Mich. 2021) (referencing "Morningstar indexes" in discussing performance, without addressing category labels as standalone benchmarks); *Mattson v. Milliman, Inc.*, 2022 U.S. Dist. LEXIS 246403, at *5-6 (W.D. Wash. Dec. 13, 2022) (discussing Morningstar Target Risk Indexes, not categories); *Brown-Davis v. Walgreen Co.*, 2020 U.S. Dist. LEXIS 252317, at *10 (N.D. Ill. Mar. 16, 2020) (using the Morningstar Lifetime Moderate Index as a performance benchmark, not a category label).

LEXIS 20566, at *18–24 (W.D. Wash. Feb. 7, 2023); *Wehner v. Genentech, Inc.*, 2021 U.S. Dist. LEXIS 111341, at *26–27 (N.D. Cal. June 14, 2021); *Phillips*, 2025 U.S. Dist. LEXIS 184960, at *17–18.

Plaintiffs cite no authority that rehabilitates their composite-index theory. *Snyder v. UnitedHealth Grp., Inc.*, 2021 U.S. Dist. LEXIS 230878 (D. Minn. Dec. 2, 2021), predated and has since been deemed unpersuasive in light of *Matousek*. *See Fitzpatrick*, 2023 U.S. Dist. LEXIS 140060, at *19–21 & n.8. Both *Thomson v. Caesars Holdings Inc.*, 661 F. Supp. 3d 1043 (D. Nev. 2023), and *Kistler v. Stanley Black & Decker, Inc.*, 2024 U.S. Dist. LEXIS 117419 (D. Conn. July 3, 2024), are out-of-circuit district-court decisions that predate respective controlling circuit opinions *Anderson* and *Singh*, which apply the meaningful benchmark requirement to dismiss ERISA prudence claims at the pleading stage. *See, e.g.*, *Anderson*, 137 F.4th at 1022 (affirming dismissal of TDF imprudence claims where plaintiff failed to provide a "sound basis for comparison") (quoting *Meiners*, 898 F.3d at 822); *Singh v. Deloitte LLP*, 123 F.4th 88, 96–98 (2d Cir. 2024) (affirming dismissal where plaintiffs failed to allege service details or other context sufficient to move their recordkeeping claim "from possible to plausible," citing *Matousek*, 51 F.4th at 278). Finally, *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 217–18 (6th Cir. 2024), involved "through" TDFs expressly benchmarked to an S&P Index. Plaintiffs never explain how the majority holding in that split decision helps them with custom to-retirement CITs not designed—or alleged—to track any S&P Index.[10]

---

[10] Plaintiffs also challenge the Plan's disclosed custom blended benchmarks as "easily manipulated" and inconsistent with DOL guidance. Opp. at 18. That detour does not

11

B.    **Even If Plaintiffs Had Pleaded a Meaningful Benchmark, Their Underperformance Theory Fails**

Even if Plaintiffs had alleged a meaningful benchmark—which they have not—their underperformance theory still would not state a plausible prudence claim. The Opposition confirms that their theory rests entirely on tables of trailing investment returns. *See, e.g.*, Opp. at 3–4, 38–43 (relying on the Complaint's trailing-return tables, *see* Compl. ¶¶ 83–140). But those tables say nothing about what the fiduciaries actually did or allegedly failed to do. That is not enough under Eighth Circuit precedent, which evaluates prudence by process, not results. *See Matousek*, 51 F.4th at 278–79; *Meiners*, 898 F.3d at 823–24. Plaintiffs have not pled any factual allegations tying their results-based charts to a flawed process or to a valid like-for-like comparator.

Plaintiffs selectively present the numbers to cherry-pick allegedly poor results. Plaintiffs exclude four vintages—Retirement, 2020, 2060, and 2065—on the ground they were "too new" or "merged," trimming off both ends of the glide path while still claiming a series-wide trend. *See* Opp. at 38 n.32. And they are almost exclusively relying on short three- and five-year trailing windows—the kind of short-horizon performance slices courts have found inadequate for funds designed to span decades. *See, e.g., Luckett*, 2023

---

rescue their claim. At the Rule 12(b)(6) stage, the question is whether the Complaint pleads a meaningful comparator under *Meiners* and *Matousek*, not whether the Plans' participant-level disclosures used a particular type of index. Even if the custom blended benchmarks were set aside entirely, Plaintiffs still would not have alleged a meaningful comparator under *Meiners* and *Matousek*. The Department of Labor regulations Plaintiffs invoke govern benchmarks used in participant disclosures, not fiduciaries' investment selections. *See* 29 C.F.R. § 2550.404a-5; 75 Fed. Reg. 64,910, 64,916–17. Those rules do not transform the use of a custom blended benchmark into a plausible claim of imprudence, and Plaintiffs do not allege any violation of them.

U.S. Dist. LEXIS 121362, at *10–12; *Abel*, 2024 U.S. Dist. LEXIS 14535, at *15–17. Even in the single instance where they purport to rely on a ten-year figure, that is still just an annualized return calculated as of one date—an inherently moving figure that will change as new performance data comes in, a snapshot for a fund that is "supposed to grow for fifty years." *Smith*, 37 F.4th at 1166 (describing a five-year performance window for such a fund as a mere "snapshot").

Plaintiffs attempt to distinguish this Court's decision in *Fritton II*, which rejected a similar attempt to plead imprudence based on bare performance figures. Plaintiffs contend that, unlike the "net expense ratios" at issue there, their trailing-return tables are derived from "public information applied to basic, industry-standard calculations." Opp. at 40 & n.35. But *Fritton II* did not turn on the choice of metric; it faulted the plaintiffs for offering figures "devoid of any context or explanation regarding the methods by which these figures were calculated," which "render[ed] any meaningful comparison impossible." 2023 U.S. Dist. LEXIS 145940, at *25–26. The same flaw is present here. The Complaint does not identify any concrete source for the annual-return data or any accepted methodology for computing the trailing-return figures; it simply presents the results in tables. *See* Compl. ¶¶ 83–128.

At most, Plaintiffs' underperformance allegations amount to a complaint that the Plans' fiduciaries did not select the particular target-date lineup Plaintiffs now prefer in hindsight. The Supreme Court has instructed courts to give "due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). Consistent with that instruction, courts

13

have made clear that such post-hoc disagreements do not state a breach of the duty of prudence: plaintiffs may not "replace the Committee's own judgment with Plaintiffs' personal investment preferences." *Phillips*, 2025 U.S. Dist. LEXIS 184960, at *21–22.

## III.   CONCLUSION

For the reasons above and those set forth in Defendants' opening memorandum, Plaintiffs have not met their burden to plead a meaningful benchmark or facts suggesting a flawed fiduciary process. Amendment would be futile because Plaintiffs' comparator theories rest on structural mismatches in glide path, investment vehicle, and implementation that fail as a matter of law under *Meiners* and *Matousek*. The Court should grant Defendants' motion and dismiss the Complaint with prejudice.[11]


DATED: November 25, 2025                    Respectfully submitted,


                                           /s/ Rajin S. Olson
                                           Rajin S. Olson (#0398489)
                                           **THOMPSON HINE LLP**
                                           US Bancorp Center
                                           800 Nicollet Avenue, Suite 2925
                                           Minneapolis, MN 55402
                                           Telephone: (612) 605-5900
                                           Facsimile: (612) 605-5901
                                           Rajin.Olson@ThompsonHine.com

---

[11] Dismissal with prejudice is appropriate. Plaintiffs have not filed a motion for leave to amend under Local Rule 15.1(b) or identified any additional facts that could cure the defects in their Complaint. *See Fritton I*, at *33 n.6; *Matousek*, 51 F.4th at 282–83 (noting that parties must "follow [the] proper procedures" to seek leave to amend and that district courts need not "invite a motion for leave to amend if the plaintiff does not file one").

Brian J. Lamb (*admitted pro hac vice*)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
Brian.Lamb@ThompsonHine.com

Michelle N. Webster (*admitted pro hac vice*)
Nathaniel W. Ingraham (*admitted pro hac vice*)
**THOMPSON HINE LLP**
1919 M. Street, N.W., Suite 700
Washington, D.C. 20036
Telephone: (202) 331-8800
Facsimile: (202) 331-8330
Michelle.Webster@ThompsonHine.com
Nate.Ingraham@ThompsonHine.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

JENNIFER BATT, et al.,

                Plaintiffs,             Case No. 25-cv-03149 (ECT/DTCS)

    v.

                             **CERTIFICATE OF WORD COUNT**
                                  **COMPLIANCE**

3M COMPANY, et al.,

                Defendants.

This brief complies with the limits in Local Rule 7.1(f) and with the type-size limit of Local Rule 7.1(h). This brief was prepared in proportionally spaced typeface in 13-point font, using Microsoft Word Office 365. The text of this brief, including headings, footnotes, and quotations, contains 4,244 words as determined by the word-count function of Microsoft Word Office 365. Cumulatively, the text of this reply brief and Defendants' opening brief (ECF No. 28), including headings, footnotes, and quotations, contains 10,719 words as determined by the word-count function of Microsoft Word Office 365.

DATED: November 25, 2025         Respectfully submitted,

                            */s/ Rajin S. Olson*
                            Rajin S. Olson (#0398489)
                            **THOMPSON HINE LLP**
                            US Bancorp Center
                            800 Nicollet Avenue, Suite 2925
                            Minneapolis, MN 55402

Telephone: (612) 605-5900
Facsimile: (612) 605-5901
Rajin.Olson@ThompsonHine.com

Brian J. Lamb (*admitted pro hac vice*)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
Brian.Lamb@ThompsonHine.com

Michelle N. Webster (*admitted pro hac vice*)
Nathaniel W. Ingraham (*admitted pro hac vice*)
**THOMPSON HINE LLP**
1919 M. Street, N.W., Suite 700
Washington, D.C. 20036
Telephone: (202) 331-8800
Facsimile: (202) 331-8330
Michelle.Webster@ThompsonHine.com
Nate.Ingraham@ThompsonHine.com

*Attorneys for Defendants*