UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jennifer Batt, Madhu Chandnani, Karen Davison, and Willard Jenkins, *individually and on behalf of all others similarly situated, on behalf of the 3M Voluntary Investment Plan and Employee Stock Ownership Plan, and on behalf of the 3M Savings Plan*,

      Plaintiffs,

v.

3M Company; Board of Directors of 3M, *and its members*; 3M Benefits Fund Investment Committee, *and its members*; and 3M Investment Management Corporation,

      Defendants.

File No. 25-cv-3149 (ECT/DTS)

**OPINION AND ORDER**

---

Melinda Nicholson, John Anthony Carriel, and Nicolas Kravitz, Kahn Swick & Foti, LLC, New Orleans, LA; and David W. Asp and Derek C. Waller, Lockridge Grindal Nauen PLLP, Minneapolis, MN, for Plaintiffs Jennifer Batt, Madhu Chandnani, Karen Davison, and Willard Jenkins.

Brian J. Lamb, Thompson Hine LLP, Cleveland, OH; Rajin S. Olson, Thompson Hine LLP, Minneapolis, MN; and Michelle N. Webster and Nathaniel W. Ingraham, Thompson Hine LLP, Washington, DC, for Defendants 3M Company, Board of Directors of 3M, 3M Benefits Fund Investment Committee, and 3M Investment Management Corporation.

---

Plaintiffs are current or former 3M employees who invested in customized 3M "target-date funds" available in 3M retirement plans. Plaintiffs claim the 3M target-date funds underperformed in comparison to target-date-fund indices and other target-date funds. They claim that 3M violated ERISA by continuing to offer its target-date funds as investment options in the 3M retirement plans.

3M seeks the complaint's dismissal under Federal Rule of Civil Procedure 12(b)(6). The motion will be granted. Plaintiffs have not alleged facts plausibly showing that their proffered indices and target-date funds are meaningful benchmarks for the 3M target-date funds. Plaintiffs will be given the opportunity to file an amended complaint.

I

Begin with statutory context. Plaintiffs bring this case under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The core allegation is that Defendants as plan fiduciaries breached their duty of prudence imposed by 29 U.S.C. § 1104(a). *See* Compl. [ECF No. 1] ¶¶ 149–60. The duty of prudence requires a plan fiduciary to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). This duty concerns how a fiduciary "must act." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022). "The process is what ultimately matters, not the results." *Id.*; *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) ("In evaluating whether a fiduciary has acted prudently, we therefore focus on the process by which it makes its decisions rather than the results of those decisions."). "A plaintiff typically clears the pleading bar by alleging enough facts to '*infer* . . . that the process was flawed.'" *Matousek*, 51 F.4th at 278 (quoting *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 482–83 (8th Cir. 2020)). "'[C]ircumstantial allegations about [the fiduciary's] methods' based on the 'investment choices a plan fiduciary made' can be enough." *Davis*, 960 F.3d at 483 (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)). "The

2

key to nudging an inference of imprudence from possible to plausible is providing 'a sound basis for comparison—a meaningful benchmark'—not just alleging that 'costs are too high, or returns are too low.'" *Matousek*, 51 F.4th at 278 (quoting *Davis*, 960 F.3d at 484). The task of determining whether an alleged benchmark is meaningful is case-specific. As the Eighth Circuit has explained, "there is no one-size-fits-all approach"; courts must consider "the totality of the specific allegations." *Id.* at 281 (quoting *Meiners*, 898 F.3d at 822).

II[1]

*Defendants.* Defendant 3M Company is the sponsor, named fiduciary, and administrator of the 3M Voluntary Investment Plan and Employee Stock Ownership Plan ("VIP Plan") and the 3M Savings Plan (collectively, the "Plans"). Compl. at 3; *id.* ¶¶ 6, 21–22; 29 U.S.C. § 1002(16)(B) (defining "plan sponsor"); 29 U.S.C. § 1102(a)(2) (defining "named fiduciary"); 29 U.S.C. § 1002(16)(A) (defining "administrator"). "3M acts through a Board of Directors," Compl. ¶¶ 6, 21, and the Board owes fiduciary duties to the Plans, *id.* ¶ 23. "Defendant 3M Benefits Fund Investment Committee is responsible for designating the investment options available under the Plans." *Id.* ¶ 24. Defendant 3M Investment Management Corporation is a wholly owned subsidiary of 3M Company and "an investment advisor selected by the other 3M Defendants to provide investment advice to the Plans' participants on how the Plans' assets should be invested and managed." *Id.* ¶ 25. Following the parties' lead, Defendants will be referred to collectively as "3M."

---

[1]    In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn entirely from the Complaint. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

3

*Plaintiffs.*  Plaintiffs are or were 3M employees who participated in the Plans.  *Id.* ¶¶ 16–19; *see* 29 U.S.C. § 1002(7) ("The term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.").

*The 3M Plans.*  The Plans are participant-directed defined-contribution plans.  *Id.* ¶¶ 31–32; *see* 29 U.S.C. § 1002(34) ("[A] 'defined contribution plan' means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account."); *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015).  New 3M employees are automatically enrolled in the VIP Plan three months after their hire date. Compl. ¶ 37.  In 2023, the Plans had a combined 58,127 participants—55,591 in the VIP Plan and 2,536 in the 3M Savings Plan—and about $12.4 billion in assets.  *Id.* ¶¶ 42–43. In 2024, about thirty percent of the Plans' assets—or roughly $3.78 billion—were invested in "3M TDF Series" funds.  *Id.* ¶ 44.  "TDF" is short for "target date fund."  *Id.* ¶ 45.

*Target-date funds generally.*  A target-date fund is "a type of fund designed to achieve certain investment results based on an investor's anticipated retirement date."  *Id.* ¶ 45.  TDFs generally contain a mix of stocks, bonds, and other investments, and they shift asset composition over time, becoming more conservative as the anticipated retirement date approaches.  *Id.* ¶¶ 46–47.  This shift is known as the "glide path."  *Id.* ¶ 47.  Plaintiffs

4

allege that "all TDFs are actively managed" in the sense that "managers make active decisions when designing a TDF's asset allocation over time." *Id.* ¶ 50.

*The 3M TDF Series funds generally.* The 3M TDF Series included funds with target dates in five-year intervals. *Id.* ¶ 44. So, for example, a participant who anticipated retiring in or close to 2045 might elect to invest in the "3M 2045 TDF," while a participant who anticipated retiring in or closer to 2050 might elect to invest in the "3M 2050 TDF." *See id.* The 3M TDF Series funds are "modeled after the BlackRock LifePath TDFs," and the 3M TDF Series funds are the only target-date option available to participants in the Plans. *Id.* ¶ 59. According to 3M, the 3M Series funds may draw from "'any or all of seven major asset classes,' including: (1) U.S. Large-Cap Equities; (2) U.S. Small/Mid-Cap Equities; (3) International Equities; (4) Global Real Estate; (5) Commodities; (6) U.S. Bonds; and (7) U.S. Inflation Linked Bonds." *Id.* ¶ 70. After automatically enrolling a new hire in the VIP Plan, the employee's contributions are invested "100% in the 3M TDF Series vintage closest to the year in which the participant will reach age 65," *id.* ¶ 64 (quotations omitted), unless or until the participant makes a different investment election, *id.* ¶ 65.

*The at-issue 3M TDF Series funds.* Plaintiffs identify seven 3M TDF Series "vintages" at issue in this case and alleged their approximate value as follows:

| Fund Name | Approximate Value |
| --- | --- |
| 3M 2025 TDF | $564.5 million |
| 3M 2030 TDF | $758.9 million |
| 3M 2035 TDF | $734.6 million |
| 3M 2040 TDF | $568.4 million |
| 3M 2045 TDF | $464.89 million |
| 3M 2050 TDF | $405.85 million |
| 3M 2055 TDF | $283.3 million |

*Id.* ¶ 44. Again, each year represents an anticipated retirement date. *Id.* ¶ 60. The four Plaintiffs were invested in five of the seven 3M TDF Series: Jennifer Batt in the 3M 2045 TDF Series; Madhu Chandnani in the 3M 2050 and 2055 TDF Series; Karen Davison in the 3M 2040, 2045, and 2050 TDF Series; and Willard Jenkins in the 3M 2030 TDF Series. *Id.* ¶¶ 16–19. No Plaintiff invested in the 3M 2025 or 2035 TDF Series.

*The alleged benchmarks.* Plaintiffs allege that each challenged vintage of the 3M TDF Series underperformed in comparison to two benchmark sets. The first is the S&P Target Date Indices. *Id.* ¶ 74. Plaintiffs tether each vintage of the 3M TDF Series to a corresponding S&P Index—for example, the comparator for the 3M 2025 TDF is the S&P 2025 Target Date Index. *Id.* The S&P Indices "cover a wide range of the types of investment strategies or characteristics that can exist in the universe of TDFs," and "over 50% of TDFs use the [S&P Indices] as their primary prospectus benchmark to approximate performance." *Id.* ¶¶ 73–74. The second comparator set includes series of TDFs offered by each of four financial services companies—T. Rowe Price, Fidelity, Vanguard, and American Funds. *Id.* ¶¶ 77–79 The following table groups these comparator TDF sets with the associated 3M TDF Series:

| Fund | Comparator TDFs |
|---|---|
| **3M 2025 TDF** | T. Rowe Price Retirement 2025 Trust (Class A) F00000Z2L0 ("T. Rowe 2025 TDF") |
| | Fidelity Freedom 2025 K6 FDTKX ("Freedom 2025 TDF") |
| | Vanguard Target Retire 2025 Trust I FOUSA06R61 ("Vanguard 2025 TDF") |
| | American Funds 2025 Trgt Date Retire R6 RFDTX ("Am. Funds 2025 TDF") |
| **3M 2030 TDF** | T. Rowe Price Retirement 2030 Trust (Class A) F00000Z2L4 ("T. Rowe 2030 TDF") |
| | Fidelity Freedom 2030 K6 FGTKX ("Freedom 2030 TDF") |

| | |
|---|---|
| | Vanguard Target Retire 2030 Trust I FOUSA06R62 ("Vanguard 2030 TDF") |
| | American Funds 2030 Trgt Date Retire R6 RFETX ("Am. Funds 2030 TDF") |
| **3M 2035 TDF** | T. Rowe Price Retirement 2035 Trust (Class A) F00000Z2L8 ("T. Rowe 2030 TDF") |
| | Fidelity Freedom 2035 K6 FWTKX ("Freedom 2035 TDF") |
| | Vanguard Target Retire 2035 Trust I FOUSA06R63 ("Vanguard 2035 TDF") |
| | American Funds 2035 Trgt Date Retire R6 RFFTX ("Am. Funds 2035 TDF") |
| **3M 2040 TDF** | T. Rowe Price Retirement 2040 Trust (Class A) F00000Z2LC ("T. Rowe 2040 TDF") |
| | Fidelity Freedom 2040 K6 FHTKX ("Freedom 2040 TDF") |
| | Vanguard Target Retire 2040 Trust I FOUSA06R64 ("Vanguard 2040 TDF") |
| | American Funds 2040 Trgt Date Retire R6 RFGTX ("Am. Funds 2040 TDF") |
| **3M 2045 TDF** | T. Rowe Price Retirement 2045 Trust (Class A) F00000Z2LG ("T. Rowe 2045 TDF") |
| | Fidelity Freedom 2045 K6 FJTKX ("Freedom 2045 TDF") |
| | Vanguard Target Retire 2045 Trust I FOUSA06R65 ("Vanguard 2045 TDF") |
| | American Funds 2045 Trgt Date Retire R6 RFHTX ("Am. Funds 2045 TDF") |
| **3M 2050 TDF** | T. Rowe Price Retirement 2050 Trust (Class A) F00000Z2LK ("T. Rowe 2050 TDF") |
| | Fidelity Freedom 2050 K6 FZTKX ("Freedom 2050 TDF") |
| | Vanguard Target Retire 2050 Trust I FOUSA06R66 ("Vanguard 2050 TDF") |
| | American Funds 2050 Trgt Date Retire R6 RFITX ("Am. Funds 2050 TDF") |
| **3M 2055 TDF** | T. Rowe Price Retirement 2055 Trust (Class A) F00000Z2LO (T. Rowe 2055 TDF") |
| | Fidelity Freedom 2055 K6 FCTKX ("Freedom 2055 TDF") |
| | Vanguard Target Retire 2055 Trust I F00000LIF0 ("Vanguard 2055 TDF") |
| | American Funds 2055 Trgt Date Retire R6 RFKTX ("Am. Funds 2055 TDF") |

*Id.* ¶ 79.  "Like the 3M TDF Series," each comparator "is a target date fund structured as a fund of funds," is composed "primarily of investments from different market sectors," and "seek[s] to achieve [its] objectives by rebalancing [its] portfolios to become more conservative as the fund approaches / passes the relevant target date."  *Id.* ¶ 80.

*The alleged underperformance.*  From 2014 to 2023, Plaintiffs allege, the 3M TDF Series underperformed the S&P Indices and the Comparator TDFs on annual and trailing 3-, 5-, and 10-year bases, and cumulatively.  *Id.* ¶ 83.  Viewed from a high level over that period, annual underperformance is ascertainable starting in 2014, trailing 3-year underperformance starting in 2016, trailing 5-year underperformance starting in 2018, and trailing 10-year underperformance starting in 2023.  *See, e.g.*, *id.* ¶¶ 91–92 (comparing returns of 3M 2030 TDF Series with S&P Indices and the comparator TDFs).  For example, compared to the S&P Indices and the mean of the comparator TDFs, the 3M TDF Series annually underperformed by 1–2 percentage points, though in some years it overperformed both sets of comparators.  *See id.* ¶¶ 84–85, 91–92, 98–99, 105–106, 112–13, 119–20, 126–27.  The bottom-line allegation is that, had the 3M TDF Series tracked the S&P Indices, or had 3M offered the comparator TDFs instead of the 3M TDF Series, the Plans' gains from 2014 to 2023 would have been higher.

*Plaintiffs' legal theories.*  Plaintiffs assert two ERISA claims.  Plaintiffs first allege Defendants breached their duty of prudence by failing to remove imprudent investments—the 3M TDF Series funds—from the Plans, in violation of 29 U.S.C. § 1104.  Compl. ¶¶ 149–60 (Count I).  Second, Plaintiffs allege that Defendants failed to monitor the performance of those who owed fiduciary duties to the Plans.  *Id.* ¶¶ 161–66 (Count II).

III

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Considering "matters outside the pleadings" generally transforms a Rule 12(b)(6) motion into one for summary judgment, but not when the relevant materials are "necessarily embraced" by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Materials embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). In ERISA breach-of-fiduciary-duty cases like this one, "the relevant fund prospectuses and plan disclosure documents . . . are embraced by the pleadings." *Davis*, 960 F.3d at 484 n.3 (citation modified); *see Meiners*, 898 F.3d at 823 (finding it "not improper" to "consider[] prospectuses not attached to the Complaint").

9

Here, with one caveat, the parties agree that relevant plan disclosure documents, fund fact sheets,[2] and prospectuses for the 3M TDF Series and the comparator TDFs may be considered in adjudicating Defendants' motion.  The caveat is that some of the prospectuses that 3M included with its motion do not match the funds described in the Complaint.  *See* ECF No. 35 at 32 n.23 (describing the problem); *see also* ECF Nos. 29-13, 29-14, and 29-15 (non-matching prospectuses).  These documents will not be considered.

IV

A

Now consider whether either of the benchmark sets Plaintiffs identify is plausibly meaningful, keeping in mind that this is a context-specific task.  *Meiners*, 898 F.3d at 822.

1

Plaintiffs have not plausibly alleged that the S&P Indices are meaningful benchmarks.  The Complaint's allegations on this question are comparatively high-level.  The Complaint first tries to show the S&P Indices are meaningful benchmarks by pointing to industry acceptance—it alleges that "over 50% of TDFs use the [S&P Indices] as their primary prospectus benchmark to approximate performance."  Compl. ¶ 73.  The Complaint cites this allegation's source.  *See id.* ¶ 73 n.9.  The source—a series of slides summarizing the findings of a study undertaken by Morningstar Investment Management

---

[2]     The lower court in *Davis* considered fact sheets in addition to prospectuses.  *See Davis v. Washington Univ. in St. Louis*, No. 4:17-CV-1641 RLW, 2018 WL 4684244, at *2 (E.D. Mo. Sep. 28, 2018).  The Eighth Circuit did not suggest this was incorrect, though it did not identify "fact sheets" specifically in the list of documents that may be embraced by a complaint in this context.  *See Davis*, 960 F.3d at 484 n.3.

LLC—is more specific.  It reports that 51% of TDFs use the S&P Indices as their primary benchmark.  2024 ERISA Advisory Council, *Evaluating and Benchmarking Target-Date Funds* 6 (Sep. 2024), https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/about-us/ erisa-advisory-council/2024-qdia-marinescu-witness-statement-0910.pdf).  In this context, 51% is not a helpful figure.  The fact that roughly half of the surveyed target-date funds benchmarked against the S&P Indices means roughly half did not.  In other words, this figure does not show TDF-industry acceptance any more than it shows industry reluctance to benchmark against the S&P Indices.  The question is whether there is a plausible basis for putting the 3M TDF Series in that half of TDFs that benchmark against the S&P Indices.  The Complaint does not answer that question directly.

The Complaint next alleges that

> each of the vintages in the 3M TDF Series necessarily includes a different mix of asset classes, and that mix evolves as the relevant target dates approach, and the S&P Indices cover a wide range of the types of investment strategies or characteristics that can exist in the universe of TDFs.

Compl. ¶ 74.  In other words, because the S&P Indices cover TDFs, and the challenged funds are TDFs, the Indices are meaningful benchmarks.  For this allegation to be plausible, more is required.  Either the Complaint must plausibly allege that all TDFs are meaningful benchmarks for all other TDFs, or it must allege that the S&P Indices and 3M TDF Series share like composition.  *See Matousek*, 51 F.4th at 281 (finding no meaningful benchmark when "the composition of the peer groups remains a mystery").  The Complaint does not include either allegation.

11

Of course, it is true that "market indices" may furnish a meaningful benchmark when the challenged funds "were designed to track" the index. *Braden*, 588 F.3d at 596. But that important allegation is missing here; Plaintiffs do not claim the 3M TDF Series are designed to track the S&P Indices.

Persuasive precedents support the conclusion that, on the Complaint's allegations, the S&P Indices are not plausibly meaningful benchmarks. In *Wehner v. Genentech, Inc.*, for example, the court rejected the S&P Indices as meaningful benchmarks for TDFs because the plaintiff failed to make more than conclusory allegations about similarities between "the products' styles and strategies." No. 20-cv-06894-WHO, 2021 WL 2417098, at *8 (N.D. Cal. June 14, 2021). And another court addressing this same question reasoned that, "because they reflect disparate investment strategies and styles, the S&P Indices are not meaningful benchmarks against which the Court can assess the performance of the BlackRock TDFs." *Hall v. Cap. One Fin. Corp.*, No. 1:22-cv-00857-MSN-JFA, 2023 WL 2333304, at *7 (E.D. Va. Mar. 1, 2023).

Plaintiffs cite several cases to support the conclusion that the S&P Indices are meaningful benchmarks for the 3M TDF Series. *See* ECF No. 35 at 30 & n.19 (first citing *Gaines v. BDO USA, LLP*, 663 F. Supp. 3d 821, 830 (N.D. Ill. 2023); then citing *Snyder v. UnitedHealth Grp., Inc.*, No. 21-cv-1049 (JRT/BRT), 2021 WL 5745852, at *3–5 (D. Minn. Dec. 2, 2021); then citing *Kistler v. Stanley Black & Decker, Inc.*, No. 3:22-cv-966 (SRU), 2024 WL 3292543, at *11–12 (D. Conn. July 3, 2024); then citing *Brown-Davis v. Walgreen Co.*, No. 1:19-cv-05392, 2020 WL 8921399, at *1 (N.D. Ill. Mar. 16, 2020); then citing *Thomson v. Caesars Holdings Inc.*, 661 F. Supp. 3d 1043,

12

1057–58 (D. Nev. 2023); then citing *Moler v. Univ. of Md. Med. Sys.*, No. 1:21-cv-01824-JRR, 2022 WL 2756290, at *4 n.7 (D. Md. July 13, 2022); and then citing *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 217–20 (6th Cir. 2024), *petition for cert. filed*, No. 24-1030 (U.S. Mar. 26, 2025)).

These cases are distinguishable.  *Gaines* and *Moler* do not discuss the S&P Indices. *See Gaines*, 663 F. Supp. 3d at 829–30; *Moler*, 2022 WL 2756290, at *4 n.7.  *Synder* found that the S&P Index was a plausibly-alleged meaningful benchmark because "Defendants used the Indices as benchmarks themselves."  2021 WL 5745852, at *4.  We don't have that allegation here.   And, as 3M noted, *Snyder* predates *Matousek* and therefore (understandably) does not engage in the composition-based comparison *Matousek* requires. ECF No. 37 at 16; *see Fitzpatrick v. Neb. Methodist Health Sys., Inc.*, No. 8:23CV27, 2023 WL 5105362, at *7 n.8 (D. Neb. Aug. 9, 2023)  (questioning *Snyder*'s persuasiveness after *Matousek* "provide[d] a more-detailed analysis").  *Kistler* and *Brown-Davis* applied a more lenient pleading standard than the Eighth Circuit requires.  *See Kistler*, 2024 WL 3292543, at *9 ("It is, however, 'the overwhelming trend with district courts in [the Second] Circuit . . . to defer deciding the question of whether two funds are proper comparators until after discovery." (quoting *In re Omnicom ERISA Litig.*, No. 20-cv-4141 (CM), 2021 WL 3292487, at *13 (S.D.N.Y. Aug. 2, 2021))); *Brown-Davis*, 2020 WL 8921399, at *2 ("[W]hether a particular investment choice was imprudent is a particularly fact-sensitive inquiry that would not be appropriate to resolve on a motion to dismiss.").  *Thomson* concluded the S&P Indices were appropriate comparators without explaining whether the Indices were comparable to the challenged plan.  661 F. Supp. 3d at 1057–58.  And the

13

*Parker-Hannifin* plaintiff alleged more facts about the similarities between the challenged funds and the S&P Indices. He asserted that the challenged funds were "comprised primarily of index or passive strategies," which meant that "the portfolio manager [was] attempting to mimic the performance of a relevant benchmark return" and "model[ed] the fund based on the asset allocation of the indices." *Parker-Hannifin*, 122 F.4th at 217. Again, we don't have anything like that here.

2

Nor have Plaintiffs plausibly alleged that the proffered comparator target-date fund suites are meaningful benchmarks. As with the S&P Indices, the Complaint's allegations on this question are high-level. The Complaint first alleges that all TDFs are alike in the sense that they "seek to achieve [their] objectives by rebalancing portfolios to become more conservative as time progresses toward the target date." Compl. ¶ 75. Again, this allegation seems the same thing as saying any one TDF is a meaningful benchmark for all other TDFs. But the Complaint does not allege facts plausibly establishing that point. And in *Meiners*, the Eighth Circuit seems to have rejected that idea, certainly as a general rule. There, the court explained that a Vanguard TDF was not a meaningful benchmark for Wells Fargo TDFs because the Wells Fargo funds employed "a different investment strategy" that included a "higher allocation of bonds." *Meiners*, 898 F.3d at 823 & n.2 (citation modified).

The Complaint next alleges that the 3M TDFs and the comparator TDFs share "characteristics such as size, category, and risk ratio." Compl. ¶ 76. Shared size—whether measured by assets in the fund, the number of persons investing in the fund, or some

14

combination of the two—is a fair starting point, but that's about it. The meaningful-benchmark analysis requires much more. Saying that the 3M TDFs and the comparator TDFs are in the same unspecified "category" seems the same thing as saying they are all TDFs. As explained in the preceding paragraph, that allegation is not helpful. Alleging that the funds share the same "risk ratio" implies they have comparable asset allocations. If plausibly alleged, that fact would go a long way toward showing that the comparator TDFs are meaningful benchmarks for the 3M TDFs.

But I conclude the same-risk-ratio allegation is not plausibly alleged. The Complaint does not expand on the allegation—it does not identify a risk ratio or asset allocation shared by the 3M TDFs and comparator TDFs. No doubt that kind of information appears in prospectuses and facts sheets, but we have those documents for just two of the seven 3M TDF Series, ECF No. 36-1 (3M 2025 TDF); ECF No. 29-11 (3M 2040 TDF), and for just three of the twenty-eight comparator TDFs, ECF No. 29-12 (Am. Funds 2025 TDF); ECF No. 36-2 (Vanguard 2040 TDF); ECF No. 36-4 (Freedom 2040 TDF).[3] These documents show material dissimilarities regarding risk ratio and asset allocation. For example, the funds have different glide paths. The 3M 2025 and 2040 TDF Series feature "to" retirement glide paths, meaning these funds reach their most conservative composition at a hypothetical participant's anticipated retirement date and maintain a static

---

[3]     Neither party filed a prospectus or fact sheet for any of the T. Rowe Price TDFs. Plaintiffs provided a brochure on T. Rowe Price collective investment trusts, and that exhibit mentions a Comparator TDF, but it does not provide information helpful for the meaningful-benchmark determination. *See* ECF No. 36-3 at 20 (showing the F00000Z2LC fund). 3M filed a prospectus for a T. Rowe Price mutual fund, but Plaintiffs did not identify that fund as a comparator. ECF No. 29-14; *see* ECF No. 35 at 33 n.23.

allocation afterward.  *See* ECF No. 36-1 at 3; ECF No. 29-11 at 2.  The American Funds 2025 TDF and the Vanguard 2040 TDF feature "through" retirement glide paths—they continue to vary composition to some date after a participant's anticipated retirement date. ECF No. 29-12 at 4; ECF No. 36-2 at 2; *see Abel v. CMFG Life Ins. Co.*, No. 22-cv-449-wmc, 2024 WL 307489, at *5 (W.D. Wis. Jan. 26, 2024); *Luckett v. Wintrust Fin. Corp.*, No. 22-cv-03968, 2023 WL 4549620, at *3 (N.D. Ill. July 14, 2023).  And the funds have different or incomparable asset compositions.  *See Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1306 (D. Minn. 2021) (finding no meaningful benchmark where "each fund's prospectus confirms that each fund holds different concentrations of bonds, has varying numbers of underlying funds, and uses various glide path strategies"); *Meiners v. Wells Fargo & Co.*, No. 16-cv-3981 (DSD/FLN), 2017 WL 2303968, at *3 (D. Minn. May 25, 2017) (finding no meaningful benchmark where "Wells Fargo funds have a higher allocation of bond than Vanguard funds"), *aff'd*, *Meiners*, 898 F.3d at 820; *see also Matousek*, 51 F.4th at 281 (explaining the "main reason" a fund was not a meaningful benchmark was that "the composition of the peer group remains a mystery").  The 3M 2040 TDF Series and the Vanguard 2040 TDF have different asset allocations.  From 50 to 40 years to retirement, the 3M 2040 TDF Series has 1% bonds and about 45% non-U.S. stocks; the Vanguard 2040 TDF holds about 10% bonds and 35% non-U.S. stocks over the same time frame.  *See* ECF No. 36-2 at 2; ECF No. 29-11 at 2.  To the extent funds describe their asset composition using only broad terminology, it's not realistic to translate those terms to the 3M TDF Series' glossology.  *Contrast* ECF No. 29-12 at 4 (using "Fixed income funds," "Balanced funds," "Equity-income funds," "Growth-and-income funds," and

"Growth funds"), *and* ECF No. 36-4 at 5 (using "U.S. Equity Funds," "Bond Funds," "International Equity Funds," and "Short-Term Funds"), *with* ECF No. 36-1 at 3, ECF No. 29-11 at 2, *and* ECF No. 36-2 at 2 (all using "Bonds," "U.S. Stocks," "Non-U.S. Stocks," "Cash," and "Other").

The Complaint next alleges that, had 3M chosen to replace the 3M TDF Series, it would have done so with one of the proffered comparator fund series because "[t]he TDF market is top heavy" and "the majority of TDF series [are] managed as part of one of six TDF Series," including the four comparators. Compl. ¶ 77. Without more, this allegation seems speculative. For example, if 3M decided to cease offering the 3M TDF Series as investment options, it seems just as plausible that it might cease offering target-date funds altogether. This concern aside, it is difficult to understand how a decision to replace one thing with another shows the new thing is comparable to the old. People sometimes replace motorcycles with pickup trucks.

Finally, Plaintiffs allege that the comparator TDFs belong to "the same 'Morningstar Category' as the 3M TDF Series." *Id.* ¶ 78. "A Morningstar Category is assigned by placing funds . . . into peer groups based on their holdings." *Id.* ¶ 78 n.11; *see id.* ¶ 73 n.8 ("Morningstar is a leading provider of investment research and is commonly relied upon by industry professionals."). True, some courts have found that sharing a Morningstar category is an indicator of a meaningful benchmark. *Gaines*, 663 F. Supp. 3d at 830; *Moler*, 2022 WL 2756290, at *4 n.7 ("Plaintiffs have provided comparator funds in the same Morningstar category that use the same benchmark index as the funds at issue. The court is satisfied that the requirement of a meaningful benchmark has been met at the

17

motion to dismiss stage."). But courts applying the *Matousek*'s "stringent meaningful-benchmark analysis" have been reluctant to do so. *Riley v. Olin Corp.*, No. 4:21-cv-01328-SRC, 2023 WL 371872, at *4 (E.D. Mo. Jan. 24, 2023); *see Fitzpatrick*, 2023 WL 5105362, at *7 ("While some courts have found the use of Morningstar categories to be a proper consideration, the Eighth Circuit has not addressed these indicators or deemed them an appropriate benchmark." (footnote omitted)). Without more, the fact that Morningstar categorized the 3M TDF Series together with the comparator TDF series does not plausibly show what the meaningful-benchmark standard requires.

B

Had Plaintiffs plausibly alleged a meaningful benchmark, their alleged performance metrics plausibly show it was imprudent for a fiduciary to continue investing in the 3M TDF Series. "[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." *Braden*, 588 F.3d at 596 n.7 (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009), *abrogated on other grounds as recognized by*, *Hughes v. Nw. Univ.*, 63 F.4th 615, 625 (7th Cir. 2023) (expressly noting that the principle remains "untouched"). Courts will not find liability where a plaintiff alleges only modest underperformance. *See Antoine v. Marsh & McLennan Cos.*, No. 22 Civ. 6637 (JPC), 2023 WL 6386005, at *11 (S.D.N.Y. Sep. 30, 2023) (finding no liability where "the lowest underperformance Plaintiffs cite is around 2.5 percent"); *Abel*, 2024 WL 307489, at *5 (reasoning that underperformance ranging from 0.2 percent to 5 percent, alongside some overperformance, failed to state a claim for breach of fiduciary duty). However, where plaintiffs have demonstrated "consistent, ten-year underperformance" that is "substantial,"

18

courts in this District and elsewhere have found sufficient allegations to support a breach-of-fiduciary-duty claim. *Patterson v. Morgan Stanley*, No. 16-cv-6568 (RJS), 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019); *see Snyder*, 2021 WL 5745852, at *3 (declining to dismiss a claim when the challenged fund's "cumulative compound performance ranged from -6.62% to -19.68% less than the other comparators"); *Payne v. Hormel Foods Corp.*, No. 24-cv-545 (SRN/DTS), 2024 WL 4228613, at *2, *8 (D. Minn. Sep. 18, 2024) (denying motion to dismiss claim where challenged plan's crediting rate was 0.71 percent to 4.00 percent lower than comparators' crediting rates). Outperforming a comparator is evidence against breach, but if it is minimal and brief, it will not be dispositive. *See Antoine*, 2023 WL 6386005, at *11 ("Further undercutting Plaintiffs' underperformance-based theory is the fact that the TDFs did not consistently underperform relative to the Comparators throughout the Class Period. Indeed, the TDFs appear to have been on somewhat of an upswing in rankings among the Comparators toward the end of the Class Period, often ranking anywhere from third to first out of the five in 2021 and 2022."); *cf. Snyder*, 2021 WL 5745852, at *3 ("Outperformance by the Wells Fargo TDFs in one year alone does not preclude Snyder from arguing that Defendants acted imprudently in retaining the funds based upon their cumulative underperformance.").

Here, Plaintiffs have plausibly alleged that the 3M TDF Series underperformed the Comparator TDFs. In the trailing 10-year analysis, the 3M TDF Series' returns trailed those of the Comparator TDFs by the following percentage points: -10.55, -10.46, -12.33, -12.98, -12.27, -10.76, -9.98. Compl. ¶¶ 85, 92, 99, 106, 113, 120, 127. These figures bear the hallmark of a successful underperformance claim: non-trivial, cumulative loss over a

long timeframe. *See Snyder*, 2021 WL 5745852, at *3. The 3M TDF Series' occasional overperformance does not undermine the plausibility of Plaintiffs' claim.

Whether they have plausibly alleged the 3M TDF Series underperformed the S&P Indices is a closer call, and the better answer is they have not. In the trailing 10-year analysis, the 3M TDF Series underperformed the S&P Indices by the following percentage points: -4.57, -3.69, -4.46, -5.03, -4.93, -4.91, -4.92. *Id.* ¶¶ 84, 91, 98, 105, 112, 119, 126. Those figures exceed the plausibly alleged underperformance in *Payne*, for instance. *See* 2024 WL 4228613, at *2. But complicating the picture is that the 3M TDF Series generally did better in more recent years, outperforming the S&P Indices over the trailing 3-year and 5-year snapshots in 38 of the 98 instances measured. *See* Compl. ¶¶ 84, 91, 98, 105, 112, 119, 126. This moderate and inconsistent underperformance does not plausibly state a claim for relief under persuasive precedent. *See Antoine*, 2023 WL 6386005, at *11.[4]

V

3M requests dismissal with prejudice. ECF No. 28 at 9, 30; ECF No. 37 at 6, 19. It points out that Plaintiffs have not filed a motion for leave to amend "or identified any additional facts that could cure defects in their Complaint." ECF No. 37 at 19 n.11. Plaintiffs ask that, if their Complaint is dismissed, "the court stay its dismissal order by thirty days, allowing [them] to consider whether any shortcomings can be cured, and

---

[4] "The parties agree that the monitoring claim is derivative of the duty of prudence claim." ECF No. 35 at 50; *see* ECF No. 28 at 29 ("Under ERISA, a monitoring claim is derivative: it cannot survive without a plausible underlying breach of prudence." (citing *Riley*, 2023 WL 371872, at *7)). Plaintiffs' failure to plausibly allege breach of fiduciary duty means their monitoring claim will also be dismissed. *See Dionicio v. U.S. Bancorp*, No. 23-cv-26 (PJS/DLM), 2024 WL 1216519, at *6 (D. Minn. Mar. 21, 2024).

submit a motion for leave to amend in accordance with [Local Rule] 15.1(b)." ECF No. 35 at 50 n.45.

Courts have discretion to decide between a with-prejudice and without-prejudice dismissal. *See Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019). A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. County of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sep. 26, 2013); *see Reinholdson v. Minnesota*, 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting R. & R.), or when the record makes clear that any amendment would be futile, *see Paisley Park*, 361 F. Supp. 3d at 880 n.7. On the other hand, when a plaintiff's claims "might conceivably be repleaded with success," dismissal without prejudice may be justified. *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *R. & R. adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).

Because the complaint will be dismissed for failure to allege a meaningful benchmark, a without-prejudice dismissal is appropriate. Plaintiffs could conceivably plead facts making it plausible that the proffered comparator TDFs are meaningful benchmarks.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    Defendants' Motion to Dismiss [ECF No. 26] is **GRANTED**.

2.    Plaintiffs' Class Action Complaint [ECF No. 1] is **DISMISSED** without prejudice.

3.    On or before **March 31, 2026**, Plaintiffs may file an amended complaint.  If no amended complaint is filed by that deadline, judgment will be entered dismissing the Complaint with prejudice.

Dated: March 10, 2026                    s/Eric C. Tostrud
                                                      Eric C. Tostrud
                                                      United States District Court