**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

JENNIFER BATT, et al.,

                  Plaintiffs,

      v.

3M COMPANY, et al.,

                  Defendants.

Case No. 25-cv-03149 (ECT/DTS)

**REPLY IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED
COMPLAINT**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   ARGUMENT .................................................................................................. 2

    A.   Plaintiffs Still Have Not Pleaded a Meaningful Benchmark for the 3M TDFs .. 2

        1.   Plaintiffs' "Dual Comparator" Theory Confirms the Glide-Path Comparability Defect ................................................................................. 2

        2.   Plaintiffs Cannot Average Away Composition Differences ....................... 4

        3.   Plaintiffs' Active Management Label Does Not Make Their Comparators Meaningful ................................................................................. 6

        4.   Plaintiffs Cannot Dismiss the CIT Versus Mutual Fund Distinction as a Mere Wrapper ................................................................................. 6

        5.   The LifePath Index Is Not a Meaningful Benchmark ............................... 7

        6.   Plaintiffs' Risk Metrics Do Not Supply the Missing Comparability .......... 9

    B.   Plaintiffs' Fact Sheet Allegations Do Not Support a Freestanding Imprudence Claim ................................................................................................. 9

    C.   Plaintiffs' Reconstructed Glide Path Does Not State a Claim for Breach of the Duty to Follow Plan Documents ................................................................ 11

    D.   Plaintiffs' Performance Allegations Still Do Not Support an Inference of Imprudence ...................................................................................... 13

    E.   Plaintiffs Have Failed to Adequately Plead Their Prohibited Transaction Claims ............................................................................................. 14

        1.   Plaintiffs Have Not Plausibly Pled a Transaction Between the Plans and IMC ................................................................................................. 14

        2.   Plaintiffs Have Not Plausibly Pled Their Self-Dealing Claim ................. 15

        3.   Plaintiffs Fail to Plead a Concrete Injury Traceable to Their Prohibited Transaction Claims ............................................................................ 17

    F.   Dismissal Should Be With Prejudice ............................................................. 18

III.  CONCLUSION .............................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. CMFG Life Ins. Co.*,
  No. 22-cv-449-wmc, 2024 U.S. Dist. LEXIS 14535 (W.D. Wis. Jan. 26,
  2024) ........................................................................................................... 3

*Al-Saadoon v. Barr*,
  973 F.3d 794 (8th Cir. 2020) ................................................................... 17

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
  579 F. Supp. 3d 1133 (N.D. Cal. 2022) .................................................. 11

*Bannister v. Delo*,
  100 F.3d 610 (8th Cir. 1996) ..................................................................... 8

*Barrett v. O'Reilly Auto., Inc.*,
  112 F.4th 1135 (8th Cir. 2024) ............................................................ 1, 10

*Batt v. 3M Co.*,
  No. 25-cv-3149, 2026 U.S. Dist. LEXIS 48639 (D. Minn. Mar. 10,
  2026) ................................................................................................. *passim*

*Becker v. Wells Fargo & Co.*,
  No. 20-2016, 2021 U.S. Dist. LEXIS 90207 (D. Minn. May 12, 2021)..................... 16

*Beldock v. Microsoft Corp.*,
  No. C22-1082-JLR, 2023 U.S. Dist. LEXIS 71233 (W.D. Wash. Apr.
  24, 2023) ..................................................................................................... 9

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ................................................................... 15

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco
  Managed Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005)..................................................................... 17

*Christensen v. Qwest Pension Plan*,
  462 F.3d 913 (8th Cir. 2006) ................................................................... 10

*Collins v. Ne. Grocery, Inc.*,
  149 F.4th 163 (2d Cir. 2025) ................................................................... 18

*Collins v. Ne. Grocery, Inc.*,
No. 24-2339-cv, 2025 U.S. App. LEXIS 20979 (2d Cir. Aug. 18, 2025) .................. 15

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025) ...................................................................................... 15, 16

*Davis v. Washington Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ............................................................................ 3, 4

*Doll v. Evergy, Inc.*,
No. 25-00043-CV-W-SRB, 2025 U.S. Dist. LEXIS 271639 (W.D. Mo.
Sept. 10, 2025) ................................................................................................... 12

*Fritton v. Taylor Corp.*,
No. 22-cv-00415, 2022 U.S. Dist. LEXIS 222996 (D. Minn. Dec. 12,
2022) ............................................................................................................ 13, 18

*Fritton v. Taylor Corp.*,
No. 22-cv-00415, 2023 U.S. Dist. LEXIS 145940 (D. Minn. Aug. 21,
2023) ............................................................................................................... 4, 7

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) ........................................................................................... 15

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) ............................................................................ 7

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) ............................................................................... 8

*McDonough v. Anoka Cnty.*,
799 F.3d 931 (8th Cir. 2015) ............................................................................. 16

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ........................................................................... 3, 9

*Parmer v. Land O'Lakes, Inc.*,
518 F. Supp. 3d 1293 (D. Minn. 2021) ............................................................... 6

*Peeler v. Bayada Home Health Care, Inc.*,
No. 1:24-cv-00231-MR, 2026 U.S. Dist. LEXIS 14223 (W.D.N.C. Jan.
27, 2026) ........................................................................................................ 15, 17

iii

*Phillips v. Cobham Advanced Elec. Sols., Inc.*,
    No. 23-cv-03785-EKL, 2025 U.S. Dist. LEXIS 184960 (N.D. Cal. Sept.
    19, 2025) ........................................................................................................ 6

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ...................................................................... 4

*Snyder v. UnitedHealth Grp., Inc.*,
    No. 21-1049 (JRT/BRT), 2021 U.S. Dist. LEXIS 230878 (D. Minn.
    Dec. 2, 2021) ............................................................................................... 13

*Stallings v. Hussmann Corp.*,
    447 F.3d 1041 (8th Cir. 2006) ...................................................................... 8

*Taylor v. BDO USA, P.C.*,
    No. 25-10128, 2025 U.S. Dist. LEXIS 162505 (D. Mass. Aug. 21, 2025) ................. 17

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538 (2020) .................................................................................... 18

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ............................................................... 10, 13

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) .................................................................................... 10

*Wright v. Medtronic, Inc.*,
    No. 09-CV-0443, 2011 U.S. Dist. LEXIS 923 (D. Minn. Jan. 5, 2011) ...................... 11

**Statutes**

29 U.S.C. § 1104(a)(1)(D) .................................................................................. 11

29 U.S.C. § 1106 ...................................................................................... 15, 17

29 U.S.C. § 1108 ............................................................................................ 16

29 U.S.C. § 1109 ...................................................................................... 11, 18

## I.    <u>INTRODUCTION</u>

As the Court aptly recognized when it dismissed Plaintiffs' initial Complaint, the meaningful benchmark test requires a like-for-like, apples-to-apples comparison. The First Amended Complaint (ECF No. 53, "FAC") fails to identify other suitable benchmark investments that have the same investment characteristics as the 3M TDFs: passive, CIT-based, and to-retirement glide path allocations targeting 40% equities at retirement. Instead, Plaintiffs select a number of different investments—none of which are passive, CIT-based, and to-retirement TDFs targeting 40% equities at retirement—that share some singular attribute, but not all attributes, of the 3M TDFs. They put those various fruits and vegetables in a basket, or in some cases a blender, and say when aggregated these other fruits and vegetables are, on average, like a 3M TDF. *See Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135, 1139–40 (8th Cir. 2024). In the end, Plaintiffs are simply arguing that, with the benefit of hindsight, they could have made more money if the fiduciaries had made different investment options available. That is insufficient to make any of Plaintiffs' alleged comparators an apple for purposes of pleading imprudence under ERISA.

Plaintiffs' opposition confirms the FAC's central problem: more tables do not make a meaningful benchmark. The FAC still rests on an index the 3M TDFs do not track, comparator families selected under shifting premises, and Plaintiffs' own comparator average, which masks material differences among the comparators. That is repackaging, not a cure.

The FAC's remaining theories do not save it. The alleged Fact Sheet errors are untethered to any fiduciary decision or loss, and the glide-path theory mistakenly converts

1

descriptive investment materials and Plaintiffs' own approximation into binding Plan terms. Count II likewise alleges neither a transfer of Plan assets to the former 3M Investment Management Corporation ("IMC") nor an injury traceable to one.

Plaintiffs had their chance to address the benchmark defect. They did not, and the claims they added fail at the threshold. The FAC should be dismissed with prejudice.

## II.   ARGUMENT

### A.   Plaintiffs Still Have Not Pleaded a Meaningful Benchmark for the 3M TDFs

The FAC still lacks the meaningful benchmark this Court found missing. The following chart summarizes how the 3M TDFs and the FAC's comparators differ:[1]

|  | Comparability Factors | | |
|---|---|---|---|
|  | **Glide Path** | **Style** | **Vehicle** |
| **3M LifePath TDFs** | "To" Retirement | Predominantly Passive | CIT |
| **BlackRock Dynamic** | "To" Retirement | Active | Mutual Funds |
| **Putnam** | "To" Retirement | Active | CIT |
| **Voya** | "To" Retirement | Blended Active / Passive | Mutual Funds |
| **T. Rowe** | "Through" Retirement | Predominantly Active | CIT |
| **Fidelity** | "Through" Retirement | Active | Mutual Funds |

#### 1.   Plaintiffs' "Dual Comparator" Theory Confirms the Glide-Path Comparability Defect

This Court properly treated glide-path differences as material when assessing target-date-fund comparability. *Batt v. 3M Co.*, No. 25-cv-3149 (ECT/DTS), 2026 U.S.

---

[1] *See* FAC ¶¶ 136–41 (fund identifiers and comparator groupings); ECF No. 61 (Defendants' Memorandum in Support of Motion to Dismiss FAC, hereinafter "Mot.") at 6–7, 9–11 & nn.3–4 (glide path, management style, and vehicle distinctions); Opp. at 24 n.14 (identifying Putnam XA as a CIT).

Dist. LEXIS 48639, at *18–20 (D. Minn. Mar. 10, 2026). The Opposition confirms that the FAC uses two different glide-path premises: three comparator families tied to the 3M TDFs' to-retirement design, and two tied to Plaintiffs' reconstructed "actual" path. ECF No. 66 (Plaintiffs' Opposition, hereinafter "Opp.") at 22–25; FAC ¶¶ 104–10, 136–40. That split asks the Court to evaluate the same challenged funds under different strategy descriptions depending on which comparator set Plaintiffs invoke.

The defect is clearest with T. Rowe and Fidelity. Unlike the 3M TDFs, neither uses a "to-retirement" glide path. Plaintiffs offer them as comparators only by constructing a supposed "actual" glide path from point-in-time allocations of different vintages. FAC ¶¶ 104–10, 136–40. That is not a historical glide path; it does not trace how any vintage changed over time. Plaintiffs' made-for-litigation construct cannot recharacterize the 3M TDFs' to-retirement strategy; a comparator with "different aims, different risks, and different potential rewards" is not a meaningful benchmark. *See Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823–24 (8th Cir. 2018).

If the 3M TDFs are evaluated as what they are—as to-retirement funds—then T. Rowe and Fidelity remain inapt through-retirement comparators.[2]

---

[2] Plaintiffs' effort to distinguish *Abel* misses the point. *See Abel v. CMFG Life Ins. Co.*, No. 22-cv-449-wmc, 2024 U.S. Dist. LEXIS 14535, at *13–14 (W.D. Wis. Jan. 26, 2024). *Abel* treated the to/through distinction as a strategy difference that made the proposed TDF comparators inapt. *Id.* T. Rowe and Fidelity avoid that problem only if the Court accepts Plaintiffs' reconstructed "actual" glide path, which it should not for the reasons above.

### 2.      Plaintiffs Cannot Average Away Composition Differences

The Court dismissed the original comparator theory in part because the pleaded materials showed material allocation differences. *Batt*, 2026 U.S. Dist. LEXIS 48639, at *17–20. The FAC attempts to solve that problem by averaging selected comparator families. FAC ¶¶ 144–45, 149–53. That framing avoids the required comparator-specific inquiry: whether each proposed benchmark has like composition with the 3M TDFs. A lawyer-created average suffers from the same defect as an inapt index: it is not an actual investment option the 3M TDFs were designed to track, and Plaintiffs do not plausibly show it reflects like composition with the 3M TDFs. *See Batt*, 2026 U.S. Dist. LEXIS 48639, at *14–15.

Plaintiffs label Defendants' disaggregated allocation comparisons a counsel-prepared "re-cut." Opp. at 11–12. But the comparisons simply present Plaintiffs' own pleaded figures comparator by comparator. That is the proper inquiry: Plaintiffs bring an "investment-by-investment" challenge, and thus must supply a "sound basis for comparison" for each proposed comparator. *See Davis*, 960 F.3d at 484 ("For an investment-by-investment challenge," plaintiffs must plead "a sound basis for comparison—a meaningful benchmark."); *see also Fritton v. Taylor Corp.*, No. 22-cv-00415 (ECT/TNL), 2023 U.S. Dist. LEXIS 145940, at *15 (D. Minn. Aug. 21, 2023) (applying *Davis*).[3]

---

[3] Because the comparisons merely disaggregate the FAC's own figures, they are not extra-pleading evidence. In any event, courts may consider public fund-performance materials central to the complaint at the pleading stage. *See, e.g.*, *Smith v. CommonSpirit Health*, 37

That one-to-one review exposes repeated material gaps that Plaintiffs' five-family average masks. As one illustrative example, the 3M 2030 TDF differs from Putnam by nearly 24 percentage points in total equity and nearly 18 percentage points in fixed income. Mot. at 7–9; Ingraham Decl. Ex. 3. Several later-dated LifePath Dynamic vintages show U.S.-equity gaps exceeding 20 percentage points. *Id.*

Plaintiffs dismiss these gaps as isolated "outlying" cells. Opp. at 18–19. But similar gaps recur across multiple comparators, vintages, and allocation categories. *See* Ingraham Decl. Ex. 3 (the 3M 2025 TDF differs from Voya by 14.13 percentage points in fixed income and from Fidelity by 11.59 points in non-U.S. equity). Those gaps exceed the 9-point bond and 10-point non-U.S. equity differences this Court previously treated as material. *See Batt*, 2026 U.S. Dist. LEXIS 48639, at \*18–20 (noting material dissimilarities where the 3M 2040 TDF Series had 1% bonds and about 45% non-U.S. stocks, while Vanguard 2040 had about 10% bonds and 35% non-U.S. stocks).

Plaintiffs separately invoke Voya as a standalone comparator for the five vintages in which the named Plaintiffs invested. Opp. at 18–20. Even as to those vintages, the allocation allegations do not overcome the other differences relevant to the meaningful benchmark inquiry. *See supra* Section II.A, Comparability Factors Chart (describing Voya as including a blended active/passive investment style and mutual funds vehicle). Nor do Plaintiffs' Voya-specific performance allegations supply a plausible inference of imprudence. *See infra* Section II.D.

---

F.4th 1160, 1168 (6th Cir. 2022) (district court fairly considered updated performance data "because it was central to [the] claim, publicly available, and judicially noticeable").

5

### 3. Plaintiffs' Active Management Label Does Not Make Their Comparators Meaningful

Plaintiffs argue that "all TDFs are actively managed" because all target-date managers make glide-path and allocation decisions. Opp. at 25. But comparability turns on whether the 3M TDFs and the comparator suites are implemented in materially similar ways, including whether the underlying investments are actively or passively managed. *See Phillips v. Cobham Advanced Elec. Sols., Inc.*, No. 23-cv-03785-EKL, 2025 U.S. Dist. LEXIS 184960, at *19–21 (N.D. Cal. Sept. 19, 2025) (rejecting allegations that target-date suites were comparable because all target-date managers make active glide-path and asset-allocation decisions).[4]

The FAC does not bridge this implementation gap. The 3M TDFs are built heavily from index strategies, while Plaintiffs' comparator sets include active and blended active/passive suites. Mot. at 9–10; *see Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1306–07 (D. Minn. 2021) (finding wholly passive and wholly active target-date suites not meaningfully comparable to blended active/passive target-date suite).

### 4. Plaintiffs Cannot Dismiss the CIT Versus Mutual Fund Distinction as a Mere Wrapper

Plaintiffs do not dispute that the 3M TDFs are CITs and that the Fidelity, Voya, and BlackRock Dynamic comparator funds are mutual funds. *See* Mot. at 10–11. They call the

---

[4] Plaintiffs try to distinguish *Phillips* because it did not discuss TDF "building blocks" and the challenged and comparator funds there had different equity allocations. *See* Opp. at 26. But *Phillips* rejected that same generic premise. *See Phillips*, 2025 U.S. Dist. LEXIS 184960, at *19. Nor does that allocation distinction help: the comparator-specific figures here show repeated material allocation gaps. *See supra* Section II.A.2.

distinction a "legal wrapper" and assert that it does not bear on investment strategy, allocation, or risk. Opp. at 27–28. But the FAC itself makes CIT status material. The FAC alleges that, because the 3M TDFs are CITs, participants had "no independent source of information" beyond the 3M TDF Fact Sheets. FAC ¶ 58. The FAC also acknowledges that a fund's so-called "legal wrapper" determines its regulatory obligations and fee structure. FAC ¶ 139 n.20. Plaintiffs cannot rely on CIT status to support their opacity theory while dismissing that same status as immaterial to benchmark comparability.

In *Fritton*, this Court held that a plaintiff cannot plausibly equate a CIT with a mutual fund without alleging "additional material plausibly showing that, in a given case, the legal distinctions make no difference." *Fritton*, 2023 U.S. Dist. LEXIS 145940, at *18–19. Plaintiffs try to distinguish *Fritton* as a fee case and assert that the FAC pleads the "additional material" *Fritton* found missing. Opp. at 27–28. But the meaningful benchmark requirement is not limited to fee cases, and Plaintiffs still do not show that the CIT/mutual-fund distinction makes no difference to benchmark comparability.[5]

### 5.    The LifePath Index Is Not a Meaningful Benchmark

Plaintiffs invoke the LifePath Index, citing allegations that the 3M TDFs were "modeled after" BlackRock LifePath and bore the LifePath name. Opp. at 9–11. But "modeled after" does not mean "designed to track." The FAC itself forecloses that inference. FAC ¶ 135.

---

[5] Plaintiffs cite *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136 (10th Cir. 2023), but it does not help them. *Matney* rejected a categorical rule that CITs cannot be compared to mutual funds; it did not hold that vehicle structure is irrelevant. *Id.* at 1153. Plaintiffs' own pleading makes vehicle structure material.

Plaintiffs respond that an index need not be "[d]esigned to track" a fund to be a meaningful benchmark. Opp. at 10–11. But this Court identified the missing tracking allegation as "important" to the meaningful benchmark inquiry. *Batt*, 2026 U.S. Dist. LEXIS 48639, at *14–15. What Plaintiffs offer instead—common BlackRock lineage and the LifePath name—does not establish comparability. The FAC does not plausibly connect the Index to the 3M TDFs' holdings, asset allocations, or risk characteristics. *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281–82 (8th Cir. 2022).

Plaintiffs next argue that Defendants are estopped from disputing the LifePath Index as a meaningful benchmark because counsel previously referred to the 3M TDFs as the "BlackRock 3M target-date funds." Opp. at 10. That argument conflates BlackRock's role with benchmark comparability. Defendants do not dispute that BlackRock had a role in the 3M TDFs. But counsel's shorthand description is neither a binding judicial admission nor a basis for judicial estoppel. *See Bannister v. Delo*, 100 F.3d 610, 622 n.12 (8th Cir. 1996) (oral-argument statement lacked "sufficient formality or conclusiveness" to constitute a judicial admission) (citation omitted); *see also Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (identifying clear inconsistency, judicial acceptance, and unfair advantage as relevant judicial-estoppel considerations). Nor does the shorthand establish that the 3M TDFs tracked the LifePath Index, shared like composition with it, or were otherwise sufficiently comparable to make the Index a meaningful benchmark. Shared branding does not establish comparability: a "Ford vehicle" could be a commercial-grade F-750 truck or an electric Mustang Mach-E.

8

### 6.    Plaintiffs' Risk Metrics Do Not Supply the Missing Comparability

Plaintiffs offer standard deviation and Sharpe ratios as their answer to the "risk-ratio" deficiency this Court identified. Opp. at 12–18; *Batt*, 2026 U.S. Dist. LEXIS 48639, at *18. But this Court's prior risk-ratio discussion was tied to asset allocation: a shared risk ratio was relevant because it could imply comparable allocations. *Id.* Plaintiffs' standard-deviation and Sharpe-ratio tables do not establish comparable asset allocation. Read comparator by comparator, the FAC's own pleaded allocation figures still show material differences. *See supra* Section II.A.2.

Plaintiffs' one-to-one risk-metric comparisons fare no better. *See* Opp. at 16–18; Nicholson Decl. Ex. A. At most, those comparisons show "some similarity" in risk metrics despite the FAC's alleged allocation differences. *See Meiners*, 898 F.3d at 823. That is not enough. Sharpe ratios incorporate returns—the same performance component Plaintiffs use to allege underperformance—so they do not independently establish benchmark comparability.[6]

### B.    Plaintiffs' Fact Sheet Allegations Do Not Support a Freestanding Imprudence Claim

Plaintiffs argue that the alleged Fact Sheet reporting issues state a prudence claim. Opp. at 34–37. Even accepting Plaintiffs' Fact Sheet allegations, the FAC connects no Fact

---

[6] Plaintiffs' effort to distinguish *Beldock* fails for the same reason. Opp. at 17 n.12. *See Beldock v. Microsoft Corp.*, No. C22-1082-JLR, 2023 U.S. Dist. LEXIS 71233, at *5–6, *8–9 (W.D. Wash. Apr. 24, 2023) (concluding the Sharpe ratio measures investment performance).

Sheet issue to Defendants' selection or retention of the 3M TDFs or to any Plan loss.[7] At most, the FAC points to discrete allegations involving selected 2024 and 2025 Fact Sheets. FAC ¶¶ 70–98, 183. It alleges portfolio-composition anomalies only in the December 2025 Fact Sheets and does not allege that those anomalies appeared in any later Fact Sheet. *Id.* ¶¶ 88–94, 183. Those dated, version-specific allegations cannot support the sweeping inferences Plaintiffs draw from them: a longstanding or systemic "deficient disclosure regime." Opp. at 34–35.

Plaintiffs try to distinguish *Christensen v. Qwest Pension Plan*, 462 F.3d 913, 917–18 & n.2 (8th Cir. 2006), because it was decided at summary judgment and involved benefit estimates rather than Fact Sheets. Opp. at 35–36. But those distinctions do not supply what the FAC lacks. *Christensen* held that a fiduciary may rely on vendor-provided information where it acted prudently in selecting and retaining the vendor and had "no reason to doubt the competence, integrity or responsibility" of that vendor. 462 F.3d at 918. The FAC alleges erroneous Fact Sheet figures in select reporting snapshots, but does not plausibly allege that Defendants had reason to doubt Morningstar or failed to prudently select, retain, or monitor Morningstar or the Fact Sheet process.

Plaintiffs also invoke *Barrett* to characterize the Fact Sheet allegations as direct mismanagement. Opp. at 36 (citing *Barrett*, 112 F.4th at 1138). But *Barrett* rejected an inference of mismanagement where the complaint did not plausibly allege a process failure.

---

[7] Plaintiffs invoke *Varity*, but it involved affirmative misrepresentations about benefit security that induced employees to transfer and lose benefits. *Varity Corp. v. Howe*, 516 U.S. 489, 502–06 (1996). The FAC alleges no comparable deception, participant action, or loss.

*Id.* The FAC has the same problem: it points to allegedly erroneous fields in Morningstar-maintained Fact Sheets, but does not plausibly allege Defendants rubber-stamped Morningstar's work or otherwise abdicated oversight. Plaintiffs' reliance on *Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014), is similarly misplaced. *Tussey* followed a bench trial with concrete findings that fiduciaries failed to monitor recordkeeping costs, assess competitive pricing, leverage the plan's size, and prevent plan assets from subsidizing corporate services. *Id.* at 336–37. Nothing comparable is alleged here.

Plaintiffs further argue that participant reliance is unnecessary. Opp. at 37. That does not eliminate causation: Plaintiffs identify the FAC's alleged $100 million investment loss as the relevant Plan loss. Opp. at 37; FAC ¶ 297. The FAC does not plead that any Fact Sheet error caused that loss or affected any fiduciary retention decision.[8] The Fact Sheet allegations therefore do not state a freestanding prudence claim.

**C.    Plaintiffs' Reconstructed Glide Path Does Not State a Claim for Breach of the Duty to Follow Plan Documents**

Plaintiffs invoke their reconstructed "actual" glide path to justify "through-retirement" comparators, infer a flawed fiduciary process, and support an independent § 1104(a)(1)(D) claim. Opp. at 37. But the reconstruction is a cross-sectional estimate, not a historical glide path. The FAC maps different vintages' September 2024 allocations onto

---

[8] Plaintiffs attempt to distinguish *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1159–62 (N.D. Cal. 2022), as an Article III standing case. Opp. at 37. However Plaintiffs characterize their theory, the FAC must plausibly connect the alleged Fact Sheet errors to the claimed Plan losses. *See Wright v. Medtronic, Inc.*, No. 09-CV-0443 (PJS/AJB), 2011 U.S. Dist. LEXIS 923, at *15–20 (D. Minn. Jan. 5, 2011) (holding that § 1109 permits recovery for a fiduciary misrepresentation only if the loss "result[ed] from" the misrepresentation).

assumed points along a single timeline and uses separate Retirement Portfolio snapshots as proxies for post-retirement points. FAC ¶¶ 104–10. That model depicts different funds at particular moments, not how any vintage progressed over its life cycle. It therefore cannot establish a plan document violation, support an inference of imprudence, or justify otherwise inapt comparators.

Nor does the Investment Fund Summary impose the fixed numerical mandate Plaintiffs assert. Plaintiffs rely on statements that, at the target date, a Portfolio "will have reached its highest allocation to income-oriented investments" and that the Retirement Portfolio's asset-class mix "is intended to remain nearly constant over time." Opp. at 38; FAC ¶¶ 100–11. But the Summary itself describes the LifePath discussion as a "general description," explains that managers "gradually adjust" each Portfolio's mix, and states that allocations "may be subject to change." Ingraham Decl. Ex. 11 at 6–7. Read together, those provisions describe target-date Portfolios that generally become more conservative until merger and a Retirement Portfolio intended to remain relatively stable thereafter, while leaving allocations subject to change. Plaintiffs' contrary reading deletes that express flexibility.

Plaintiffs respond that their original comparators expressly permitted ±10% deviations, while the Summary specifies no numerical tolerance band. Opp. at 39. But silence on a tolerance band does not convert a target into a mandate, especially where allocations "may be subject to change" and Plaintiffs previously called glide paths "not static" and targets "just that, targets." Mot. at 15–16; Ingraham Decl. Ex. 11 at 7.

12

Finally, Plaintiffs invoke *Doll* and *Fritton*, but neither supports treating the glide-path allegations as the "significant wrongdoing" necessary to proceed without a meaningful benchmark. Opp. at 39–40. *Doll* involved alleged violations of express investment-policy and watch-list requirements. *Doll v. Evergy, Inc.*, No. 25-00043-CV-W-SRB, 2025 U.S. Dist. LEXIS 271639, at \*4, \*8–10 (W.D. Mo. Sept. 10, 2025). Here, Plaintiffs identify no comparable mandate—only an approximate reconstruction and targets expressly subject to change. And *Fritton* merely cited the proven fiduciary breaches in *Tussey*; it did not hold that asserting a separate self-dealing theory automatically eliminates the benchmark requirement. *Fritton v. Taylor Corp.*, No. 22-cv-00415 (ECT/TNL), 2022 U.S. Dist. LEXIS 222996, at \*18 & n.4 (D. Minn. Dec. 12, 2022).

### D.    Plaintiffs' Performance Allegations Still Do Not Support an Inference of Imprudence

The Court need not reach performance because the FAC still lacks a meaningful benchmark. But Plaintiffs' performance arguments fail on their own terms too.

First, Plaintiffs contend cumulative-compound figures measured against their comparator average satisfy "the standard this Court already applied." Opp. at 31–32 (citing *Snyder v. UnitedHealth Grp., Inc.*, No. 21-1049 (JRT/BRT), 2021 U.S. Dist. LEXIS 230878, at \*9–10 (D. Minn. Dec. 2, 2021)). But the prior Order did not adopt that test; it addressed the original complaint's 10-year comparisons to the then-pleaded TDF comparators only after assuming Plaintiffs had pleaded a meaningful benchmark. *Batt*, 2026 U.S. Dist. LEXIS 48639, at \*23–24.

Plaintiffs fare no better by invoking "sustained" trailing-period underperformance.

13

Opp. at 31. The Fidelity comparison cannot support that theory because Fidelity remains an inapt comparator. *Id*. at 33; *see supra* Section II.A.1. The other comparator-specific data do not bear out Plaintiffs' sustained-underperformance theory. For instance, the Voya data resemble the moderate underperformance this Court found insufficient when addressing the S&P Index allegations. *Batt*, 2026 U.S. Dist. LEXIS 48639, at *24–25 (finding allegations insufficient where the 3M TDFs underperformed the S&P Indices by 3.69 to 5.03 percentage points over ten years and showed outperformance in more recent three- and five-year comparisons). On a trailing-period basis, no Voya underperformance gap exceeds 4.94 percentage points, and several Voya comparisons show 3M outperformance. Ingraham Decl. Ex. 12. BlackRock Dynamic likewise shows no sustained, substantial underperformance: several comparisons show 3M outperformance, and no underperformance gap exceeds 5.48 percentage points. *Id.* That mixed and moderate performance does not support a plausible inference of imprudence. *Batt*, 2026 U.S. Dist. LEXIS 48639, at *24–25.

### E.   Plaintiffs Have Failed to Adequately Plead Their Prohibited Transaction Claims

#### 1.   Plaintiffs Have Not Plausibly Pled a Transaction Between the Plans and IMC

The FAC identifies no payment to IMC. Its only quantified payment allegation is that the Plans paid 3M—not IMC—at least $1.83 million. FAC ¶ 26. Plaintiffs' Opposition does not contend otherwise.

Plaintiffs instead point to the Intermediate-Term Bond Fund's 0.24% asset-based fee. Opp. at 41. But that aggregate fund-level expense neither identifies IMC as the payee

nor states what, if anything, IMC received. FAC ¶ 26. The cited disclosures therefore show no transfer of Plan assets to IMC.[9]

Plaintiffs also cite the Investment Fund Summary's description of IMC as an "Investment Manager" for the Intermediate-Term Bond Fund. Opp. at 41. But that description identifies only a management role; it identifies no Plan-asset transfer, fee recipient, or amount paid to IMC. *Cunningham* requires plaintiffs to "plausibly allege that a plan fiduciary engaged in a transaction proscribed" by ERISA. *Cunningham v. Cornell Univ.*, 604 U.S. 693, 709 (2025).[10]

### 2.    Plaintiffs Have Not Plausibly Pled Their Self-Dealing Claim

The § 1106(b)(1) claim fails for the same reason: the FAC does not plausibly allege that IMC—or any other fiduciary—dealt with Plan assets in its own interest or for its own account. Plaintiffs assert Defendants "occup[ied] both sides" of a conflicted transaction. Opp. at 42. At most, those allegations identify IMC's corporate affiliation, alleged

---

[9] The Investment Fund Summary describes the Intermediate-Term Bond Fund as a "multi-manager fund" managed by IMC, and lists PIMCO, BlackRock Financial Management, Jennison Associates, and DoubleLine Capital as external investment managers. Ingraham Decl. Ex. 11 at 10. The Annual Fee Disclosure defines "total asset-based fees" as investment-management fees plus other Plan-specific costs. *Id.* Ex. 13 at 3 n.1.

[10] Plaintiffs' authorities are distinguishable. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), involved a revenue-sharing arrangement and an identified recipient. The undisclosed information concerned the amount and reasonableness of the payments, not whether the party in interest was paid. *Id.* at 590, 598, 600–03. *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996), also confirms that § 1106(a) requires a fiduciary-caused transaction involving plan assets. *Id.* at 888–89, 893. It does not permit that transaction to be inferred from affiliate status, a management title, and an aggregate fund-level fee. The FAC pleads no such transaction with IMC.

15

Investment Manager role, and an aggregate fund-level fee. They identify no payment of Plan assets to IMC. FAC ¶ 26.[11]

Plaintiffs' reliance on *Becker v. Wells Fargo & Co.*, No. 20-2016 (DWF/BRT), 2021 U.S. Dist. LEXIS 90207 (D. Minn. May 12, 2021), is misplaced. *Becker* involved allegations that Wells Fargo and its affiliates received fees from identified proprietary funds and that affiliated fiduciaries transferred plan assets to themselves and directed plan revenue to Wells Fargo. *Id.* at \*16–18. Here, the cited disclosures show only an aggregate fund-level expense for a multi-manager fund. They neither identify IMC as a payee nor state what, if anything, IMC received. Ingraham Decl. Ex. 11 at 10; Ex. 13 at 3 n.1.

Nor does the only concrete payment Plaintiffs identify—the $1.83 million paid to 3M, not IMC—support their self-dealing theory. Plaintiffs respond that the Plans' expense-payment provision does not cover a separate Bond Fund fee. Opp. at 43. But that objection assumes the missing premise that IMC was paid from the Bond Fund. Plaintiffs also argue that reimbursement is a fact question and that any 1108 exemption is Defendants' burden. *Id.* Defendants ask the Court to resolve neither issue. Section 4.5 expressly permits Plan assets to pay reasonable Plan expenses or reimburse a Participating Company. Ingraham Decl. Ex. 14–15 § 4.5. The only identified payment—to 3M—is therefore consistent with

---

[11] Plaintiffs attempt to distinguish *Collins v. Ne. Grocery, Inc.*, No. 24-2339-cv, 2025 U.S. App. LEXIS 20979 (2d Cir. Aug. 18, 2025), and *Peeler v. Bayada Home Health Care, Inc.*, No. 1:24-cv-00231-MR, 2026 U.S. Dist. LEXIS 14223 (W.D.N.C. Jan. 27, 2026), as revenue sharing or kickback cases rather than "affiliate-self-dealing." Opp. at 42. But Plaintiffs' theory still depends on the conclusory allegation that IMC received part of the Bond Fund's asset-based fee.

16

the Plan's terms and does not support a plausible inference that IMC received Plan assets.

*See McDonough v. Anoka Cnty.*, 799 F.3d 931, 946 (8th Cir. 2015).

### 3.    Plaintiffs Fail to Plead a Concrete Injury Traceable to Their Prohibited Transaction Claims

*Cunningham* requires dismissal of prohibited-transaction claims that fail to identify an Article III injury. 604 U.S. at 708–09. Plaintiffs now contend that "[t]he § 1106 injury here is the transfer [to IMC] itself." Opp. at 44.[12] But the FAC does not plausibly plead a transfer to IMC. It identifies a payment to 3M, not IMC, and alleges only that IMC received "some portion" of the Bond Fund's aggregate asset-based fee. FAC ¶ 26. Plaintiffs attempt to distinguish *Peeler* by asserting that, unlike there, the FAC pleads a transfer of Plan assets. Opp. at 44. But that assertion merely repeats the FAC's conclusory premise and does not cure the standing problem. *Peeler* dismissed the § 1106(a) claim because the complaint did not plausibly allege a non-speculative account loss. 2026 U.S. Dist. LEXIS 14223, at *37–40; *accord Taylor v. BDO USA, P.C.*, No. 25-10128, 2025 U.S. Dist. LEXIS 162505, at *7–8 (D. Mass. Aug. 21, 2025).

Nor does the FAC plead concrete loss traceable to the alleged IMC transaction. Its only loss allegation is the conclusory assertion that participants incurred over $100 million in damages and lost-opportunity costs "[a]s a direct and proximate result of the[] prohibited transactions." FAC ¶ 297. Yet the FAC connects no alleged IMC payment to the 3M TDFs' alleged underperformance. Plaintiffs cannot borrow Count I's underperformance injury to

---

[12] To the extent Plaintiffs recast Count II around a standalone "transfer itself" injury, the Opposition cannot amend the FAC. *See Al-Saadoon v. Barr*, 973 F.3d 794, 804–05 (8th Cir. 2020).

establish standing for Count II.

Plaintiffs argue that any assets paid to IMC would be "recoverable as disgorgement under § 1109(a)." Opp. at 44. But disgorgement does not substitute for Article III injury. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 200 (2d Cir. 2005). Nor can Plaintiffs solve the standing problem by distinguishing *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020), on the ground that these are defined-contribution Plans. Defined-contribution participants seeking monetary relief must also plead a non-speculative financial loss affecting their individual accounts. *Collins v. Ne. Grocery, Inc.*, 149 F.4th 163, 171 (2d Cir. 2025). Plaintiffs plead no such loss traceable to the alleged IMC transaction. Count II should therefore be dismissed.[13]

### F.       Dismissal Should Be With Prejudice

Plaintiffs ask the Court to delay dismissal for thirty days to seek leave to address any "new or different deficiencies." Opp. at 45 n.22. First, Plaintiffs chose to oppose 3M's Motion to Dismiss the FAC rather than amend again. They should rise or fall with their choice. Second, Count I presents the same deficiency this Court already identified: the FAC still lacks a meaningful benchmark. Plaintiffs also chose to add Count II but failed to plausibly allege a prohibited transaction, self-dealing, or traceable injury. Nor do Plaintiffs identify any proposed amendment that would supply what is missing. Those persistent pleading failures render further amendment futile. *See Fritton*, 2022 U.S. Dist. LEXIS 222996, at *32. Dismissal should be with prejudice.

---

[13] Plaintiffs acknowledge that Count III is derivative and "rises with Counts I and II." Opp. at 3. It therefore fails with those claims.

18

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss

the FAC with prejudice.

DATED: June 23, 2026

*/s/ Rajin S. Olson*
Rajin S. Olson (#0398489)
**THOMPSON HINE LLP**
US Bancorp Center
800 Nicollet Avenue, Suite 2925
Minneapolis, MN 55402
Telephone: (612) 605-5900
Facsimile: (612) 605-5901
Rajin.Olson@ThompsonHine.com

Brian J. Lamb (*admitted pro hac vice*)
Amanda R. Schwaben (*admitted pro hac vice*)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
Brian.Lamb@ThompsonHine.com
Amanda.Schwaben@ThompsonHine.com

Nathaniel W. Ingraham (*admitted pro hac vice*)
**THOMPSON HINE LLP**
1919 M. Street, N.W., Suite 700
Washington, D.C. 20036
Telephone: (202) 331-8800
Facsimile: (202) 331-8330
Nate.Ingraham@ThompsonHine.com

*Attorneys for Defendants*

19